UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
NEW JERSEY CARPENTERS HEALTH FUND, :
NEW JERSEY CARPENTERS VACATION FUND :
And BOILERMAKER BLACKSMITH NATIONAL :
PENSION TRUST, on Behalf of Themselves and All :
Others Similarly Situated, :
                                      Plaintiffs, :
                                                 08 CV 8781 (HB)
        - against - :

RESIDENTIAL CAPITAL, LLC, et al. :

                                  Defendants. :

-----------------------------------------------------------------x    OPINION AND ORDER
NEW JERSEY CARPENTERS VACATION FUND :
And BOILERMAKER BLACKSMITH NATIONAL :
PENSION TRUST, on Behalf of Themselves and All :
Others Similarly Situated, :

                                    Plaintiffs, :
                                                08 CV 5093 (HB)
       - against - :

THE ROYAL BANK OF SCOTLAND GROUP, PLC, :
GREENWICH CAPITAL HOLDINGS, INC., :
GREENWICH CAPITAL ACCEPTANCE, INC., :
GREENWICH CAPITAL FINANCIAL PRODUCTS, :
INC., ROBERT J. MCGINNIS, CAROL P. MATHIS, :
JOSEPH N. WALSH, III, JOHN C. ANDERSON, :
JAMES M. ESPOSITO, RBS SECURITIES, INC., :
f/k/a GREENWICH CAPITAL MARKETS, INC., :
d/b/a RBS GREENWICH CAPITAL, :

                                  Defendants. :
-----------------------------------------------------------------x

**Hon. Harold Baer, Jr., District Judge:**

       Plaintiffs in these purported class action cases allege violations of sections 11, 12(a)(2) and 15 of the Securities Act of 1933, 15 U.S.C. §§ 77k(a), 77*l*(a)(2) (2010). The violations arise from alleged misstatements and omissions contained in the offering documents for certain mortgage-backed securities that Plaintiffs purchased, known as the "RALI Certificates" and the

1

"Harborview Certificates." Plaintiffs, together with certain non-party purchasers of RALI Certificates and Harborview Certificates, now move pursuant to Fed. R. Civ. P. 24 for an order permitting the non-parties to intervene as additional named plaintiffs. Many briefs were submitted on these motions. However, the arguments made with respect to each proposed intervenor in each case are sufficiently similar that I have addressed them collectively, and for the reasons described below, each motion is GRANTED.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Familiarity with the facts underlying the creation and sale of the securities at issue is assumed, and can be obtained by referring to my previous Opinions on the parties' respective motions to dismiss, *New Jersey Carpenters Vacation Fund v. Royal Bank of Scotland Group, PLC*, No. 08 Civ. 5093 (HB), 2010 WL 1172694 (S.D.N.Y. Mar. 26, 2010) and *New Jersey Carpenters Health Fund v. Residential Capital, LLC*, No. 08 Civ. 8781 (HB), 2010 WL 1257528 (S.D.N.Y. Mar. 31, 2010).

The proposed intervenors in 08 Civ. 5093 (the "Harborview case") include (1) Laborers' Pension Fund and Health and Welfare Department of the Construction and General Laborers' District Counsel of Chicago and Vicinity ("Chicago Laborers"); (2) Midwest Operating Engineers Pention Trust Fund ("Midwest OE"); and (3) Iowa Public Employees' Retirement System ("IPERS") (collectively, the "Harborview Intervenors"). The proposed intervenors in 08 Civ. 8781 (the "RALI case") include (1) Midwest OE; (2) IPERS; (3)Police and Fire Retirement System of the City of Detroit ("Detroit PFERS"); (4) Orange county Employees Retirement System ("OCERS"); and (5) Mississippi Public Employees' Retirement System ("MissPERS") (collectively, the "RALI Intervenors", and, together with the Harborview Intervenors, the "Proposed Intervenors").

The RALI Certificates were issued in a series of fifty-nine different offerings from March 2006 to October 2007, and the Harborview Certificates were sold in a series of fifteen different offerings between April 26, 2006 and October 1, 2007. The named plaintiffs did not purchase securities in every single offering, and following the parties' respective motions to dismiss I found that the Plaintiffs had standing to assert only those claims based on the specific offerings in which they had actually purchased securities. As a result, plaintiffs had standing to bring claims arising from two of the fifteen offerings in which Harborview Certificates were sold, and four of the fifty-nine offerings in which RALI Certificates were sold.

2

Plaintiffs and the Proposed Intervenors (collectively the "Movants") now seek to cure some of the standing problems identified at the motion to dismiss stage by adding plaintiffs who purchased securities in some of the offerings in which the current Plaintiffs purchased none. This would revive a number of the claims that were dismissed for lack of standing. In particular, the RALI Intervenors would represent purchasers on seven currently unrepresented public offerings totaling $7 billion of securities issued by defendant RALI. The Harborview Intervenors would represent purchasers on six currently unrepresented public offerings totaling $14.3 billion of securities issued by defendant Greenwich Capital Acceptance, Inc.

## II. DISCUSSION

### A. Intervention as of right is appropriate.

In order to intervene as of right under Rule 24(a)(2), an applicant must (1) file timely, (2) demonstrate an interest relating to the property or transaction which is the subject of the action, (3) show an impairment of that interest arising from an unfavorable disposition, and (4) have an interest not otherwise protected. *U.S. v. Pitney Bowes, Inc.*, 25 F.3d 66, 69 (2d Cir. 1994). *See also Brennan v. New York City Bd. of Educ.*, 260 F.3d 123, 128-129 (2d. Cir. 2001). The interest must be "direct, substantial, and legally protectable." *Brennan*, 260 F.3d at 129. The test is flexible and courts generally look at all of the factors rather than focusing narrowly on any one of the criteria. *See Tachiona v. Mugabe*, 186 F.Supp.2d 383, 394 (S.D.N.Y. 2002). However, failure to satisfy any one of these requirements is sufficient grounds to deny the application. *See In re Bank of New York Derivative Litig.*, 320 F.3d 291, 300 (2d Cir. 2003); *Butler, Fitzgerald & Potter v. Sequa Corp.*, 250 F.3d 171, 176 (2d Cir.2001). Defendants' principle points of opposition are that the motion was untimely filed and that the Intervenors have no interest relating to the transaction which is the subject of the action.

### 1. Timeliness

Whether an application is timely is a matter left to the district court's discretion. *In re Bank of New York Derivative Litigation*, 320 F.3d 291, 300 (2d Cir. 2003). In making its determination, a district court should consider "(1) how long the applicant had notice of the interest before it made the motion to intervene; (2) prejudice to existing parties resulting from any delay; (3) prejudice to the applicant if the motion is denied; and (4) any unusual circumstances militating for or against a finding of timeliness." *Id.*

How long the applicants had notice. The proposed Intervenors here have ostensibly known of their interest since long before they moved to intervene. At a minimum, they should have known of the interest at the time the amended class action complaints were filed in May 2008, because their alleged damages existed then. At oral argument and in their papers Intervenors argued that they were justified in relying on the plaintiffs to represent their interests, since plaintiffs had initially asserted the claims on which they hope to recover, and precedent, *see In re Countrywide Fin. Corp. Sec. Litig.*, 588 F. Supp. 2d 1132, 1164-65 (C.D. Cal. 2008), suggested that the plaintiffs would have standing to assert claims in connection with all securities offered under a common registration statement. The reasonableness of this belief is supported by Judge Stein's opinion this summer in *In re Citigroup Inc. Bond Litig.*, 08 Civ. 9522 (SHS), -- F.Supp.2d ----, 2010 WL 2772439, at *13-14 (S.D.N.Y. July 12, 2010), which adopted the *Countrywide* position. Indeed, this Court has cast doubt on the proposition that "unnamed class members have a responsibility to ensure that the original plaintiff is an adequate class representative" or that it must investigate a plaintiff's trading records independently to determine whether the plaintiff has standing. *See In re Initial Public Offering Sec. Litig.*, Nos. 21 MC 92SAS, 01 Civ. 9741, 01 Civ. 10899, 2004 WL 3015304, at *5 (S.D.N.Y. Dec. 27, 2005).

Prejudice to the existing parties. The fact that intervention will not cause great prejudice to existing parties supports a conclusion that the motions were timely. Defendants pointed out at oral argument that if the motion is granted it will "turn the schedule on its head", bumping the number of offerings in the Harborview case from two to eight, and in the RALI case adding six new offerings. Intervention would also entail further motion practice and expanded discovery, according to Defendants.

After a fairly detailed analysis I conclude that the proposed claims add no new legal theories and share a strong factual nexus with the existing claims, and their addition will not delay the proceedings. Discovery is ongoing and can certainly absorb the extra burden. Since the claims that would be added are essentially more of the same, they do not present much in the way of new material to consider in connection with the class certification motions. Finally, with respect to the motion to dismiss, according to Defendants' papers and oral argument, the Defendants' theory is that plaintiffs who purchased securities on the aftermarket, as opposed to at an initial public offering, have no standing to bring section 12 claims. This appears to be the law, but Plaintiffs argue that this does not prevent their bringing section 11 claims, nor does it undermine

4

their case for intervention nor even class certification. In any case the issue does not appear to be complex and could be briefed on an expedited basis.

Finally, and most importantly, Defendants have been on notice of the claims that would be added since the beginning of the action, and could no more have anticipated that they would have been dismissed on standing grounds than the plaintiffs or Intervenors. Given this notice and the factors above that mitigate the potential delay, the addition of the claims would not greatly prejudice Defendants. Litigation in the Federal Court is not a game of "gotcha" but rather its goal is to try cases on their merits.

Prejudice to the applicant. In contrast, failure to add the claims will work significant prejudice to the Intervenors. As they noted at oral argument, it is likely that a new action would be barred by applicable statutes of limitation and repose, and even if that procedural hurdle was met, prosecuting the action independently would cause significant duplicative work that could be saved by adding them to the current action.

### 2. The Intervenors' interest

The Intervenors have demonstrated an interest relating to transactions that are the subject of this action, that interest would be impaired by an unfavorable disposition, and it is not otherwise protected. Defendants' central thesis in opposition to intervention is that the intervenors have no interest relating to the claims in this action. They base this argument on the fact that, with one exception, Intervenors purchased securities in offerings that were excised by the Court's March 2010 Orders on Defendants' motions to dismiss. Thus, the offerings in which Intervenors have an interest are no longer the subject of this litigation.

This argument is problematic because it would read the rule to require an interest *in* the property or transaction that is the subject of the action. Indeed, at oral argument counsel for the Harborview defendants confirmed their position that "[Rule 24(a)] speaks in terms of interests in property or transactions that are currently the subject of the action." Tr. at 22:17-19. In fact the language requires a movant merely to claim "an interest *relating to* the property or transaction that is the subject of the action." Fed. R. Civ. P. 24(a)(2) (emphasis added). The interest asserted need not even be a property interest. *See Brennan*, 260 F.3d at 130 ("Rule 24(a)(2) requires not a property interest but, rather, an interest relating to the property or transaction which is the subject of the action."). Moreover, courts have made clear that "to satisfy Rule 24(a)(2), the interest . . . must be based on a right which belongs to the proposed intervenor

5

rather than an existing party to the suit." *Diduck v. Kaszycki & Sons Contractors, Inc.*, 149 F.R.D. 55, 58 (S.D.N.Y. 1993); *In re Penn Central Commercial Paper Litigation*, 62 F.R.D. 341, 346 (S.D.N.Y. 1974). This precludes an interpretation as narrow as Defendants would have it.

Here, the Intervenors have a direct interest in the action because their claims "arise out of the same transaction and occurrence that is the subject of the instant case." *See Mortgage Lenders Network, Inc. v. Rosenblum*, 218 F.R.D. 381, 384 (E.D.N.Y. 2003). Harborview Intervenors collectively purchased a total of $47 million of Harborview securities in six currently unrepresented Harborview offerings. The RALI Intervenors collectively purchased $31.1 million of RALI securities in seven currently unrepresented offerings. The offerings were made pursuant to offering documents that were common to the offerings in which existing plaintiffs purchased the securities that give rise to their existing claims. While Intervenors may not have an interest in the property that is the subject of the action as it now stands, they certainly have a 'direct, substantial and legally protectable" interest "relating to the . . . transaction that is the subject of the instant action." *See Brennan*, 260 F.3d at 130.

The Intervenors' interest will be impaired by any disposition of this action that includes findings that affect their claims. Any disposition on the merits would inevitably affect their claims since they arise from the same course of conduct and assert the same legal theories as the current plaintiffs . Since this Court dismissed from the action claims based on the offerings in which the Intervenors purchased securities, the Intervenors' interests will go unprotected if they are not allowed to intervene. No party has the same interest in prosecuting violations with respect to the particular offerings in which Intervenors purchased securities, and ruling that they could not intervene would in all likelihood preclude any other entity from later asserting the same claims on statutory time-limits grounds.

### B. <u>The underlying claims are not time-barred.</u>

While intervention is appropriate under the Federal Rules, Defendants have pointed out that the claims sought to be revived are now time-barred by the applicable statute of limitations, 15 U.S.C. § 77m. Movants respond that the statutory period was either tolled under principles of *American Pipe* or is made timely under the relation back doctrine of Fed. R. Civ. P. 15(c).

Under *American Pipe*, "commencement of a class action tolls the applicable statute of limitations as to all members of the class." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 176 n. 13 (1974) (*quoting American Pipe & Constr. V. Utah*, 414 U.S. 538, 553 (1974)). "Several

courts have held that *American Pipe* is appropriately applied to motions to intervene or amended complaints filed to substitute a proper class representative with standing prior to a [final] decision on class certification." *CalPERS v. Chubb*, No. 00 Civ. 632 (GEB), 2002 WL 33934282, at *29 (D.N.J. June 26, 2002) *aff'd*, 394 F.3d 126 (3d Cir. 2004) (allowing plaintiffs to cure standing problems for one set of securities giving rise to the claims). This Court has held that "tolling the applicable statute of limitations . . . where class counsel mistakenly believed that [lead plaintiff] had standing to assert his claims, and no prejudice to the defendants will result from allowing the substitution of qualified lead plaintiffs, best satisfies the goals of *American Pipe*." *In re Initial Public Offering Sec. Litig*, No. 21 MC 92SAS, 01 Civ. 9741, 01 Civ. 10899 (SAS), 2004 WL 3015304, at *4-6 (S.D.N.Y. Dec. 27, 2004). *See also In re National Australia Bank*, No. 03 Civ. 6537, 2006 WL 3844463, at *5 (S.D.N.Y. Nov. 8, 2006) (noting that whether a motion for class certification has been denied based on the lead plaintiff's lack of standing, or lead plaintiff is otherwise deemed inadequate on a motion to dismiss, the "statute of limitations remains tolled for an intervening potential class member to continue the class action."). While these cases can be procedurally distinguished from the present motion to intervene, they both suggest that a plaintiff may be added to cure standing defects in certain situations.

On the other hand, a number of district court opinions within the Second Circuit support the proposition that a limitations period is not tolled where the original plaintiff lacked standing. *See, e.g., Kruse v. Wells Fargo Home Mortg., Inc.*, No. 02 Civ. 3089 (ILG) 2006 WL 12125 (E.D.N.Y. May 3, 2006) (intervention is not "the proper mechanism by which plaintiffs can resuscitate a suit in which the original named plaintiffs never had standing to sue."); *In re Colonial Ltd. P'ship Litig.*, 854 F. Supp. 64, 82 (D. Conn. 1994) ("[I]f the original plaintiffs lacked standing to bring their claims in the first place, the filing of a class action complaint does not toll the statute of limitations for other members for the purported class."); *In re Crazy Eddie Sec. Litiig.*, 747 F. Supp. 2d 850, 856 (E.D.N.Y. 1990 (class action complaint did not toll statute of limitations on claims for which the original putative class representatives lacked standing to sue.").

While these opinions too can be procedurally distinguished, a number of relevant opinions have been issued since completion of the briefing in this case. Those opinions provide further support for the conclusion that principles of *American Pipe* tolling do not apply to Securities Act claims that were otherwise untimely because the original class action plaintiff lacked standing to

7

assert claims relating to the securities at issue. In particular, this Court recently concluded that "the *American Pipe* rule should not apply where the plaintiff that brought the dismissed claim was found by the court to lack standing... In short, where a Plaintiff lacks standing – there is no case... And if there is no case, there can be no tolling." *New Jersey Carpenters Health Fund v. DLJ Mortgage Capital, Inc. et al.*, No. 08 Civ. 5653 (PAC), *slip op.* at 4 (S.D.N.Y. Dec. 15, 2010) (internal citations omitted). *See also In re Wells Fargo Mortgage-Backed Certificates Litig.*, No. 09 Civ. 1376, 2010 WL 4117477 (N.D. Cal. Oct. 19, 2010) (ruling against application of *American Pipe* principles because the proposed plaintiffs had no reason to rely on the earlier filing of claims which were later dismissed); *Boilermakers National Annuity Trust Fund v. WaMu Mortg. Pass Through Certificates Series Ari*, No. 09 Civ. 37 (W.D. Wash. Sep. 28, 2010). *DLJ Mortgage Capital* is distinguishable from the present case on the grounds that the claims sought to be added were *not* alleged in the initial complaint, whereas here Defendants were on notice of the claims since the beginning. I find this a key factor mitigating any unfair prejudice Defendants here would suffer by addition of the Intervenors' claims.

As with the *American Pipe* issue, arguments for and against application of the relation back doctrine are equally difficult. That doctrine is appealing in the present case because the result of the proposed intervention is easily analogized to an amendment for which relation back would be appropriate. At the same time, relation back typically applies in the Rule 15 amendment context, and its benefits inure to parties, not non-party proposed intervenors. *See DLJ Mortgage Capital*, No. 08 Civ. 5653 (PAC), *slip op.* at 4-5. Neither principles of *American Pipe* tolling nor the relation back doctrine offer well-trod ground for a decision either way.

I find the better basis for decision suggested by the growing consensus among district courts in this circuit that, where the answer to standing challenges could depend upon the outcome of a class certification motion, such challenges may be deferred until after a decision on class certification. *See Blessing v. Sirius XM Radio Inc.*, No. 09 Civ. 10035 (HB), 2010 WL 4642607, *3 (S.D.N.Y. Nov. 17, 2010) (collecting cases); *Pietra v. RREEF Am., L.L.C.*, No. 09 Civ. 7439 (JGK), --- F. Supp. 2d ---, 2010 WL 3629597, at *n. 1 (S.D.N.Y. Sep. 16, 2010) (same). That principle is generally applied on a motion to dismiss for lack of standing and has not been argued previously in this case. Nonetheless it is applicable here because the result that it calls for is equally achievable by allowing intervention. Defendants here will retain their rights to bring standing challenges upon resolution of the class certification process, and those

challenges are more properly resolved at that point when the full scope of parties can be ascertained. *See Pietra*, No. 09 Civ. 7439 (JGK), 2010 WL 3629597, at *n. 1 (allowing claims to continue in anticipation of class certification decision despite fact that original plaintiffs allegedly had not purchased them and therefore lacked standing to sue on them). My conclusion is in large part supported by the fact that, as noted above, the Defendants will not suffer the unfair prejudice that the statute of limitations endeavors to avoid because, once again, they have been on notice of the claims Intervenors will bring since the filing of the Amended Complaint.

### III. CONCLUSION

For the foregoing reasons, the motions to intervene are GRANTED. In view of the re-introduction to the lawsuit of those offerings in which the Intervenors' purchased certificates, the parties are directed to submit a joint proposed order setting a new deadline for the completion of discovery as well as a deadline for briefing any motion to dismiss the Intervenors' claims that Defendants may wish to bring. Any such motion may be supported by memoranda submitted on a joint basis by all parties in each case not to exceed five pages for the collective moving parties, five pages for the collective opposing parties, and three pages for any reply, and fully briefed and in Chambers no or before February 14, 2010. Further briefing on the issue of class certification is unnecessary because the Intervenors' claims merely relate to more offerings of the same certificates currently in the lawsuit, and further argumentation on whether class certification would be appropriate as to those specific offerings would be redundant.

The Clerk of the Court is instructed close the relevant motions (08cv8781 Docket Entry Nos. 74; 84; 91; and 98) (08cv5093 Docket Entry Nos. 102 and 116).

**SO ORDERED**
December 2̶1̶, 2010
**New York, New York**

Hon. Harold Baer, Jr.
U.S.D.J.

9

challenges are more properly resolved at that point when the full scope of parties can be ascertained. *See Pietra*, No. 09 Civ. 7439 (JGK), 2010 WL 3629597, at *n. 1 (allowing claims to continue in anticipation of class certification decision despite fact that original plaintiffs allegedly had not purchased them and therefore lacked standing to sue on them). My conclusion is in large part supported by the fact that, as noted above, the Defendants will not suffer the unfair prejudice that the statute of limitations endeavors to avoid because, once again, they have been on notice of the claims Intervenors will bring since the filing of the Amended Complaint.

### III. CONCLUSION

For the foregoing reasons, the motions to intervene are GRANTED. In view of the re-introduction to the lawsuit of those offerings in which the Intervenors' purchased certificates, the parties are directed to submit a joint proposed order setting a new deadline for the completion of discovery as well as a deadline for briefing any motion to dismiss the Intervenors' claims that Defendants may wish to bring. Any such motion may be supported by memoranda submitted on a joint basis by all parties in each case not to exceed five pages for the collective moving parties, five pages for the collective opposing parties, and three pages for any reply, and fully briefed and in Chambers no or before February 14, 2010. Further briefing on the issue of class certification is unnecessary because the Intervenors' claims merely relate to more offerings of the same certificates currently in the lawsuit, and further argumentation on whether class certification would be appropriate as to those specific offerings would be redundant.

The Clerk of the Court is instructed close the relevant motions (08cv8781 Docket Entry Nos. 74; 84; 91; and 98) (08cv5093 Docket Entry Nos. 102 and 116).

**SO ORDERED**
December 21, 2010
**New York, New York**

Hon. Harold Baer, Jr.
U.S.D.J.

9