**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------------x
NEW JERSEY CARPENTERS HEALTH FUND,        :
NEW JERSEY CARPENTERS VACATION FUND       :
And BOILERMAKER BLACKSMITH NATIONAL       :
PENSION TRUST, on Behalf of Themselves and All  :
Others Similarly Situated,                 :
                                          :
                        Plaintiffs,       :
                                          :         **08 CV 8781 (HB)**
            - against -                   :
                                          :
RESIDENTIAL CAPITAL, LLC, et al.,         :
                                          :
                        Defendants.       :
                                          :
-----------------------------------------------------------------------x    **OPINION AND ORDER**
NEW JERSEY CARPENTERS VACATION FUND       :
And BOILERMAKER BLACKSMITH NATIONAL       :
PENSION TRUST, on Behalf of Themselves and All  :
Others Similarly Situated,                 :
                                          :
                        Plaintiffs,       :
                                          :         **08 CV 5093 (HB)**
            - against -                   :
                                          :
THE ROYAL BANK OF SCOTLAND GROUP, PLC,    :
et al.,                                   :
                                          :
                        Defendants.       :
-----------------------------------------------------------------------x

**Hon. Harold Baer, Jr., District Judge:**

Plaintiffs in these cases claim violations of sections 11, 12(a)(2) and 15 of the Securities Act of 1933. They allege that the offering documents for securities they purchased were materially misleading. In particular, they contend that the offering documents were misleading as to whether the residential mortgages comprising the securities were built in conformity with proper underwriting guidelines.

The relevant factual background is detailed in two previous opinions on the motions to dismiss, *N.J. Carpenters Health Fund v. Residential Capital, LLC*, No. 08 Civ. 8781 (HB), 2010 WL 1257528, (S.D.N.Y. Mar. 31, 2010) and *N.J. Carpenters Vacation Fund v. Royal Bank of Scot. Group, PLC*, No. 08 Civ. 5093 (HB), 2010 WL 1172694 (S.D.N.Y. Mar. 26, 2010). Familiarity with those opinions is presumed, and I provide only a brief synopsis of subsequent developments. The Harborview and RALI securities that form the bases for the claims asserted in the Consolidated

Amended Complaint were sold in a series of different offerings in 2006 and 2007.  Plaintiffs had not purchased securities in every single offering and, following Defendants' motion to dismiss, the Court sustained only those claims based on offerings in which named plaintiffs had actually purchased securities.  Plaintiffs then identified a number of non-parties who had purchased some of the "dismissed" securities, and sought permission for those non-parties to intervene.  I granted that motion.

New Jersey Carpenters Vacation Fund and Boilermaker Blacksmith National Pension Trust, Plaintiffs in 08 Civ. 5093 (the "Harborview" case), now seek certification of a class defined as follows:

> All persons who purchased Harborview Mortgage Loan Trust, Mortgage Pass-Through Certificates Series 2006-4 ("Harborview Series 2006-4 Bonds") and/or Harborview Mortgage Loan Trust, Mortgage Pass-Through Certificates Series 2007-7 ("Harborview Series 2007-7 Bonds"), pursuant and/or traceable to the registration Statements and accompanying Prospectuses filed with the Securities and Exchange Commission ("SEC") by Greenwich Capital Acceptance, Inc. ("GCA") (Collectively, the "Offering Documents") and who were damaged thereby.

New Jersey Carpenters Health Fund, New Jersey Carpenters Vacation Fund and Boilermaker Blacksmith National Pension Trust, Plaintiffs in 08 Civ. 8781 (the "RALI" case), seek certification of a class defined as follows:

> All persons who purchased RALI Mortgage Asset-Backed Pass-Through Certificates, Series 2006-QO7 ("RALI Series 2006-QO7 Bonds"), RALI Mortgage Asset-Backed Pass-Through Certificates, Series 2007-QS1("RALI Series 2007-QS1 Bonds"), RALI Mortgage Asset-Backed Pass-Through Certificates, Series 2007-QH4 ("RALI Series 2007-QH4 Bonds"), and/or RALI Mortgage Asset-Backed Pass-Through Certificates, Series 2007-QO4 ("RALI Series 2007-QO4 Bonds") (collectively, the "RALI Bonds"), pursuant and/or traeable to the Registration Statements and accompanying Prospectuses filed with the Securities and Exchange Commission ("SEC") by Residential Accredited Loans, Inc. ("RALI"), a subsidiary of Residential Capital, LLC f/k/a Residential Capital Corporation ("RCC") (collectively, the "Offering Documents") and who were damaged thereby.

Plaintiffs also move to be appointed class representatives, and for appointment of class counsel.  For the reasons that follow, the motions are DENIED.

### DISCUSSION

To qualify for class certification, Plaintiffs must prove that the putative class meets the four threshold requirements of Rule 23(a); if those requirements are satisfied, a district court may grant

2

certification if the class is maintainable under at least one of the subsections of Rule 23(b).  *See Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc.*, 546 F.3d 196, 202 (2d Cir. 2008).  A plaintiff must satisfy the requirements of Rule 23 by a "preponderance of the evidence." *Id.*  Courts must engage in a "rigorous analysis" to determine whether a plaintiff has met this burden.  *In re Initial Pub. Offering Sec. Litig.*, 471 F.3d 24, 36 (2d Cir. 2006).

## I.  RULE 23(a) REQUIREMENTS

To satisfy Rule 23(a), Plaintiffs must prove four elements by a preponderance of the evidence: (1) numerosity, (2) commonality, (3) typicality, and (4) adequate representation.  *See* Fed. R. Civ. P. 23(a).  Each element will be addressed in turn.

### A.  <u>Numerosity</u>

Numerosity requires that the proposed class be so large that joinder of individual members would be "inconvenient or difficult."  *J.P. Morgan Chase Cash Balance Litig.*, 242 F.R.D. 265, 272 (S.D.N.Y. 2007).  In the Second Circuit a proposed class of 40 members presumptively satisfies numerosity.  *See, e.g.*, *Consol. Rail Corp. v. Town of Hyde* Park, 47 F.3d 473, 483 (2d Cir. 1995).

Harborview's proposed class includes, at a conservative estimate, at least 64 unique purchasers of Harborview Series 2006-4 and at least 101 unique purchasers of Harborview Series 2007-7. Harborview Ferri Rep. ¶¶ 17, 69.  RALI's proposed class includes over 600 unique entities that purchased the RALI bonds during the relevant period.  *See* Ferri Rebuttal Rep. ¶¶ 11; 60-63.

Harborview Defendants argue that each Lead Plaintiff may only represent purchasers of those tranches each Lead Plaintiff purchased; Plaintiffs have failed to identify numbers of proposed class members by tranche and have therefore not shown numerosity.  Similarly, the RALI Defendants argue that numerosity is not satisfied as to each tranche of each offering.  Neither group of Defendants provides authority for such a requirement, and since Plaintiffs in both cases can point to identifiable—indeed named—members of the proposed classes, the Defendants have failed to overcome the presumption of numerosity.

The RALI Defendants contend that the class members' sophistication and resources defeats numerosity.  This argument is unavailing, particularly in light of recent precedent finding no problem with numerosity where five of the 76 purported class members had suffered approximately 80% of the total alleged losses.  *See Bd. of Trs. of the AFTRA Ret. Fund v. JPMorgan Chase Bank, N.A.*, 269 F.R.D. 340, 342 (S.D.N.Y. 2010).  Defendants have failed to overcome the presumption of numerosity.

### B.  <u>Commonality</u>

Neither the Harborview Defendants nor the RALI Defendants challenge this prong, and Plaintiffs easily demonstrate that their claims share common questions of both law and fact with absent class members.  *See J.P. Morgan Chase*, 242 F.R.D. at 272.

### C. **Adequacy**

Adequacy demands that "the representative parties will fairly and adequately protect the interests of the class." *AFTRA Ret. Fund.*, 269 F.R.D. at 345; Fed. R. Civ. P. 23(a)(4).  A district court must inquire whether "1) plaintiff's interests are antagonistic to the interest of other members of the class and 2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation." *In re Flag Telecomm. Holdings, Ltd. Secs. Litig.*, 574 F.3d 29, 35 (2d Cir. 2009).  "In order to defeat a motion for certification [any conflict of interest] must be fundamental." *Id.*

### 1. *The Harborview case*

Harborview Plaintiffs assert that they have no conflict with the proposed class members, as they have each purchased a series of securities whose purchasers they purport to represent, and there are no conflicts between purchasers of different securities.  The Harborview Plaintiffs' counsel is committed to the litigation and has significant experience handling class actions.

Harborview Defendants contend that the adequacy prong has not been met, and specifically that the Harborview Plaintiffs are not educated about the allegations in the case or relevant fact issues. In particular, they point out that Harborview Plaintiffs' representatives at deposition made it clear that they had not read the pleadings and other case documents.  Additionally, they argue that the Harborview Plaintiffs have little control over proposed class counsel, who has been making unilateral decisions throughout the course of this litigation.

I decline to find that Harborview Plaintiffs' alleged lack of knowledge of allegations of securities violations is sufficient to establish a "fundamental" conflict.  They showed knowledge of the general characteristics of mortgage-backed securities, the Harborview securities in particular, and their fiduciary responsibility as class representatives.  *See, e.g.*, Rodriguez Dep. 135 *et seq.*; Laufenberg Dep. 112 *et seq.*  In this circuit, general knowledge is sufficient to show adequacy.  *See In re Prestige Brands Holdings, Inc.*, 05 Civ. 6924 (CLB), 2007 WL 2585088, *4 (S.D.N.Y. Sept. 4, 2007) (citing *Baffa v. Donaldson, Lufkin & Jenrette Secs. Corp.,* 222 F.3d 52, 62 (2d Cir.2000)).

The bare contention that Lead Counsel Cohen Milstein has been making unilateral decisions provides no basis for defeating class certification.  That firm has thus far prosecuted this action in an able manner, and is well-qualified to continue as class counsel based on its forty-plus years experience with securities and other class action representation.  *See* Rehns Harborview Decl. Ex. D.

### 2. *The RALI case*

RALI Defendants argue that conflicts arise from a number of differences between putative class members.  The most salient argument relates to the differences in the damages to which putative class members may be entitled.  It is settled that in the class certification analysis generally, differences in damages are not dispositive.  *See, e.g.*, *Seijas v. Republic of Arg.*, 606 F.3d 53, 38 (2d

Cir. 2010).

Additionally, Defendants claim purchasers of the more senior certificates will be in conflict with purchasers of subordinate certificates; purchasers who sold their certificates after receiving all the principal and interest due them would conflict with purchasers who continue to hold their certificates; those who purchased earlier will conflict with those who purchased later and thus arguably had more knowledge; and pension funds will conflict with institutional investors, who may not wish to advance certain arguments or theories. *See* Def. Mem. Opp. Mot. Class Cert., 21-22. These claims are largely conjectural, premised as they are on conflicts that may arise, as opposed to actual existing conflicts. Even assuming, without finding, that some conflicts exist, RALI Defendants have not shown that they are "fundamental." *Flag*, 574 F.3d at 35. Nor do the potential variances in legal theories asserted—if indeed there are any—suggest the type of conflict that would preclude class certification. Indeed, in *Flag* the Second Circuit found no fundamental conflict where some class members asserted 1933 Act claims and others asserted 1934 Act claims and would thus need to show loss causation. *See id.*

### D. **Typicality**

The typicality prong requires that "each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability." *Flag*, 574 F.3d at 35. "Typicality refers to the nature of the claim of the class representatives, and not to the specific facts from which the claim arose or relief is sought. *In re WRT Energy Secs. Litig.*, No. 96 Civ. 3610 (JFK), 2006 WL 2020947, *3 (S.D.N.Y. Jul. 13, 2006) (quoting *Dura-Bilt Corp. v. Chase Manhattan Corp.*, 89 F.R.D. 87, 99 (S.D.N.Y. 1981)). Courts in this circuit have held that "the typicality requirement is not demanding." *E.g., In re Prestige Brands Holdings, Inc.*, 2007 WL 2585088, *3.

#### 1. *The Harborview case*

The Harborview Defendants argue that differences between certificates from different offerings, as well as differences between tranches within each offering, are sufficient to defeat a finding of typicality.

##### a. *Different offerings need not defeat typicality*

Harborview Defendants argue that there can be no typicality as to class members who purchased certificates in the different offerings, i.e. the 2006-5 and 2007-7 series, because each series (1) was issued by different trusts; (2) was issued under different prospectus supplements; (3) was backed by different loan pools; and (4) the different loan pools were issued by different originators subject to different underwriting guidelines. However, there is one Lead Plaintiff for each offering and that is sufficient to establish typicality. *See Flag*, 574 F.3d at 36-37 (certifying a single class including both 1933 Act and 1934 Act claims); *Hevesi v. Citigroup, Inc.*, 366 F.3d 70, 82 (2d Cir. 2004) ("[I]t is inevitable that, in some cases, the lead plaintiff will not have standing to sue on every claim."); *In*

*re Dreyfus Aggressive Growth Mut. Fund Litig.*, No. 98 Civ. 4318 (HB), 2000 U.S. Dist. LEXIS 13469, at *13-14 (S.D.N.Y. Sep. 19, 2000) ("Courts have repeatedly certified classes where the class representatives had not invested in all of the subject securities.")

### b. Different tranches need not defeat typicality

Harborview Defendants next argue that there can be no typicality for class members who purchased different tranches of certificates, even within the same series. Specifically, Harborview Defendants argue that each different tranche is comprised of different loan groups, has different payment priorities, different loss protections, and different risk profiles. In attempting to show that these issues are relevant to the claims alleged, Harborview Defendants argue that they entail differences with respect to the misstatements or omissions alleged for each tranche, the knowledge of each proposed class member, the materiality of the misstatements or omissions, and the damages suffered by holders of different tranches.

The heart of Plaintiffs' claims under sections 11 and 12 of the Securities Act is that the offering documents were materially misleading as to whether the underlying loans were originated in compliance with underwriting guidelines.[1] Plaintiffs show that the four loan groups comprising the relevant securities were originated under identical loan underwriting guidelines, and by the same four principal loan originators. *See* Harborview Pl. Reply Mem. Supp. Class Cert. at 4-5; Turner Decl. Exs. B S-80-86; C S-35. The alleged disregard for those guidelines thus impacted all proposed class members in the same manner, irrespective of which tranche they purchased. The question whether the offering documents were materially misleading will be answered the same way regardless of the varying knowledge levels, risk levels, and loss levels of purchasers of different tranches. The nature of Plaintiffs' claims, if not the specific facts from which they arise, is typical of the class. *WRT Energy Secs. Litig.*, 2006 WL 2020947, *3.

### 2. Special claims with respect to Harborview Plaintiff Boilermaker

Harborview Defendants specifically attack the typicality and adequacy of Harborview Plaintiff Boilermaker, which purchased shares of the Harborview Series 2007-7 offering. Their challenge focuses on the argument that Boilermaker lacks standing to bring certain of the claims asserted, and is thus subject to unique defenses that are not typical of the proposed class.

---

[1] Section 11 requires that (1) plaintiff purchased a registered security either from the issuer or in the aftermarket; (2) Defendants participated in the offering in a manner sufficient to give rise to liability under section 11 and; (3) the registration statement "contained an untrue statement of a material fact or omitted to state a material fact required to be stated therein or necessary to make the statements therein not misleading." 15 U.S.C. § 77k(a); *In re Morgan Stanley Info. Fund Secs. Litig.*, 592 F.3d 347, 358-59 (2d Cir. 2010). Section 12(a)(2) is similar but applies "where the securities at issue were sold using prospectuses or oral communications that contain material misstatements or omissions." 15 U.S.C. § 77*l*(a)(2). The analysis of claims made pursuant to section 11 and section 12(a)(2) is essentially the same. *See, e.g., Landmen Partners Inc. v. Blackstone Group, L.P.*, 659 F. Supp. 2d 532, 539 n.6 (S.D.N.Y. 2009). Section 15, 15 U.S.C. § 77*o*, provides for "control person" liability, and requires that a plaintiff show (1) a primary violation of the Securities Act and (2) "control" by the defendant. *See Rombach v. Chang*, 355 F.3d 164, 78 (2d Cir. 2004).

First, Harborview Defendants point out that section 12(a)(2) of the Securities Act of 1933 applies only to purchases made from an initial public offering; Boilermaker lacks standing, they argue, because it purchased its securities on the aftermarket, and not at the initial public offering. *See N.J. Carpenters Health Fund v. DLJ Mortg. Capital, Inc.*, No. 08 Civ. 5653, 2010 WL 1473288, at *4 (S.D.N.Y. Mar. 29, 2010) (allegations that a plaintiff purchased certificates "pursuant and traceable to the Offering Documents" are "insufficient to assert standing for Section 12 claims.").

A single class can contain plaintiffs who have section 11 claims and section 12(a)(2) claims where the same course of conduct gives rise to liability under both sections. Thus, Boilermaker can represent class members with section 12(a)(2) claims despite the fact that it only has section 11 claims, and Defendants' argument to the contrary has been rejected by this Circuit and this District. *See, e.g.*, *Hevesi v. Citigroup, Inc.*, 366 F.3d 70, 82 (2d Cir. 2004) ("[I]t is inevitable that, in some cases, the lead plaintiff will not have standing to sue on every claim."); *In re Dreyfus Aggressive Growth Mut. Fund Litig.*, No. 98 Civ. 4318 (HB), 2000 U.S. Dist. LEXIS 13469, at *13-14 (S.D.N.Y. Sep. 19, 2000) ("Courts have repeatedly certified classes where the class representatives had not invested in all of the subject securities.").

Second, Harborview Defendants argue that Boilermaker has no standing because it suffered no injury in fact: it received all monthly payments, and the decline in market value of its shares did not cause injury. In some situations, section 12(a)(2) damages can be sufficiently alleged based on market value decline. *See N.J. Carpenters Health Fund v. DLJ Mortg. Capital*, 2010 WL 1473288, *5. That is not so where the injured party was warned in advance. *See NECA-IBEW Health & Welfare Fund, et al. v. Goldman Sachs & Co., et al.*, No. 08 Civ. 10783 (MDC), 2010 WL 4054149, at *3-4 (S.D.N.Y. Oct. 14, 2010) (holding that plaintiffs could not claim injury based on an alleged decline in secondary market trading prices where the offering documents explicitly warned that the certificates "might not be resalable" and markets "might not be liquid."). Here, purchasers of the Harborview certificates were warned, albeit buried at page 157 of the Prospectus Supplement for Series 2006-4, Decl. of Alan C. Turner Opp. Class Cert., Ex. B at S-157, and page 22 of the Prospectus Supplement for Series 2007-7. *Id.*, Ex. C at S-22.

While this is helpful to Harborview Defendants, it is not determinative. Even if, as Defendants claim, many putative class members suffered no injury, such an infirmity would not defeat typicality in light of the fact that a showing of the "typicality requirement is not demanding." *In re Prestige Brands*, 2007 WL 2585088, *3.

### 3. *The RALI case*

The RALI Defendants argue that each offering involves different offering documents with unique disclosures, different risk attributes, and different underlying mortgage pools. However, Rule 23(a) requires merely that "each class member's claim arises from the same course of events

and each class member makes similar legal arguments to prove the defendant's liability." *Flag*, 574 F.3d at 35. The underwriting guidelines section of each Prospectus Supplement was identical and all mortgages in all offerings were originated pursuant to the same identical underwriting criteria. Ferri Rebuttal Rep. ¶ 7, 12-17. Defendants' expert concedes that the mortgages underlying all four offerings were substantially the same as measured by key underwriting metrics. Reply Aff. Ex. C, Sanders Dep. 41-43. Since the central issue in this lawsuit is the alleged "disregard of underwriting guidelines," *N.J. Carpenters Health Fund v. Residential Capital, LLC*, No. 09 Civ. 8781 (HB), 2010 WL 1257528, *8 (S.D.N.Y. Mar. 31, 2010), there can be little doubt that the RALI Plaintiffs are typical of the putative class.

The RALI Defendants argue that the degree of knowledge or lack thereof is sufficient to defeat the RALI Plaintiffs' typicality. As discussed below, it is uncontroverted that investors' knowledge levels will vary depending on their level of sophistication and the timing of their purchase. Such variance invites unique defenses. Should we keep our eye on the ball, we see that such variances are insufficient to defeat typicality because the nature of the claims that Plaintiffs must prove remains unchanged. *WRT Energy Secs. Litig.*, 2006 WL 2020947, *3. Moreover, this Court has rejected the argument that typicality is defeated where some class members purchased before disclosures and others purchased after. *See, e.g.*, *In re Am. Int'l Group, Inc. Secs. Litig.*, 265 F.R.D. 157, 169 (S.D.N.Y. 2010).

The RALI Defendants' arguments about different damages across tranches is also unavailing. While the amount may differ, the harm alleged resulted from the same course of conduct that violated the same sections of the securities laws for all tranches and all offerings. *See Flag*, 574 F.3d at 35. Even senior tranches were affected by market decline. *See* Sanders Dep. 58:4-20. The fact that some tranches have ceased receiving payments does not present a conflict defeating typicality because "it is well-established that the fact that damages may have to be ascertained on an individual basis is not sufficient to defeat class certification." *Seijas v. Republic of Arg.*, 606 F.3d 53, 38 (2d Cir. 2010). *See also WRT Energy Secs. Litig.*, 2006 WL 2020947, *3 ("The proper inquiry is whether other members of the class have the same or similar injury, whether the action is based on conduct not special or unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.") (quoting *Dura-Bilt Corp. v. Chase Manhattan Corp.*, 89 F.R.D. 87, 99 (S.D.N.Y. 1981)).

I am likewise not persuaded by RALI Defendants' remaining arguments concerning the lack of a model for assessing class-wide damages and the allegedly differing levels of materiality of the alleged misstatements or omissions. While the lack of a comprehensive damage model could certainly point to underlying differences defeating typicality, Rule 23 imposes no such express obligation, and in this context, "[the plain language of section 11(e) prescribes the method of calculating damages … and the statutory scheme requires courts to apply the prescribed formula in

every section 11 case." *McMahan & Co. v. Wherehouse Entm't*, 65 F.3d 1044, 1048 (2d Cir. 1995).

The argument about materiality conflates the questions of whether the misstatements mislead and whether they had an impact on damages. *See* RALI Def. Mem. Opp. Class Certification 15 ("deviations from underwriting standards would have a far greater and more immediate impact on the subordinated classes"). This merely rehashes the rejected arguments as to differences in damages. It fails to account for the very basic rule that the materiality of a misstatement or omission under the Securities Act provisions alleged here is judged against an objective standard, *Flag*, 574 F.3d at 35, and RALI Plaintiffs allege the same exact misstatements and omissions are misleading as they pertain to each tranche of each offering. *See, e.g.* RALI Reply Mem. Supp. Class Certification 7.

Finally, RALI Defendants point out that section 12(a)(2) claims may not be premised on secondary market purchases. Again, the fact that Plaintiffs may be out of luck here neither defeats class certification nor requires a special sub-class where, as here, "the same course of conduct [gives] rise to liability under both Section 11 and Section 12(a)(2)." *In re Prestige Brands Holdings, Inc.*, 05 Civ. 6924 (CLB), 2007 WL 2585088, *5 (S.D.N.Y. Sept. 4, 2007).

### 4. *Conclusion as to typicality*

Despite the differences pointed out by the Defendants , I am satisfied that the Plaintiffs are typical of the proposed class with respect to the claims they must prove. *In re Prestige Brands Holdings, Inc.*, 2007 WL 2585088, *3.

## II. RULE 23(b)(3) REQUIREMENTS

Notwithstanding the foregoing, Plaintiffs have failed to meet their burden with respect to the issues of predominance and superiority, and those issues ultimately defeat Plaintiffs' motion. If the requirements of Rule 23(a) are satisfied, a court "may then consider granting class certification where it 'finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.'" *Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc.*, 546 F.3d 196, 202 (2d Cir. 2008) (quoting Fed. R. Civ. P. 23(b)(3). Thus, to be certified as a Rule 23(b)(3) class, Plaintiffs bear the burden of proving two elements: predominance and superiority.

### A. **Predominance**

"Class-wide issues predominate if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof." *UFCW Local 1776 v. Eli Lilly and Co.*, 620 F.3d 121, 131 (2d Cir. 2010).

At oral argument and in supplemental briefing, Defendants made Rule 23(b)(3) the center of their arguments. They asserted among other things that certain purchasers had knowledge that the

loan originators were "loosening and lowering" underwriting guidelines.  This presents a serious challenge to class certification because it provides for unique defenses that require a great deal of individualized evidence.   "[S]ection 11 provides a cause of action for 'any person acquiring' a security issued pursuant to a materially false registration statement unless the purchaser knew about the false statement at the time of acquisition."  *DeMaria v.* Anderson, 318 F.3d 170, 175 (2d Cir. 2003).  Where a defendant shows that broad knowledge of the alleged wrongful conduct existed "throughout the community of market participants . . . this widespread knowledge [] would precipitate individual inquiries as to the knowledge of each member of the class," and defeat the predominance of common issues under Rule 23(b)(3).  *In re Initial Pub. Offering Secs. Litig.*, 471 F.3d 24, 44 (2d Cir. 2006).

> 1.  *The Harborview case*

I am persuaded by Harborview Defendants' contention that different putative class members have different levels of knowledge regarding the underwriting guidelines and practices based on their respective levels of sophistication and time of purchase.

> a.  *Different levels of sophistication indicate different levels of knowledge*

To start with, Defendants have mustered a good deal of documentary evidence imputing knowledge to Western Asset Management Company ("WAMCO"), which was Plaintiff Boilermaker's investment advisor and had complete discretion over its investments.  WAMCO's corporate representative testified that it was regular practice for its analysts to meet with mortgage originators, including the largest originator of loans comprising the securities at issue in this litigation.  Decl. Jason R. Meltzer Opp. Mot. Class Cert. ("Meltzer Decl."), Ex. A at 35-37.  WAMCO's objective in these meetings was "to understand what their underwriting guidelines were. . . and also get a sense for how their businesses were doing . . . understand what their procedures were in servicing loans and [try to learn] about any changes to the underwriting guidelines."  *Id.*, Ex. A at 35-36.  In addition, WAMCO "would have wanted to understand" whether originators made "any exceptions to their underwriting guidelines." *Id.*, Ex. A at 37.   When WAMCO purchased the 2007-7 certificates, it knew that loans could be originated with exceptions to underwriting guidelines, and it knew that such loans posed increased the risk of delinquencies and heightened losses.  *See id.*, Ex. A at 131:20-132:10.   Additionally, WAMCO issued reports, produced during discovery, that make clear it had at least some awareness of the risk or type of conduct that is targeted in this lawsuit.  *See Id.*, Ex. G at 1 ("Western Asset has closely followed the subprime market since its inception and has been concerned about the deteriorating underwriting standards over the past few years."); *id.*, Ex. G at 3 ("[M]any lenders, especially subprime lenders, began expanding their underwriting guidelines to relax down payment and income requirements. [] As an active participant in the residential mortgage market for more than 25 years, Western Asset was aware of these trends through our frequent dialogue with loan brokers, lenders, and other

industry professionals."); *id.*, Ex. H at 1 ("As the subprime market has grown substantially over the last several years, lax underwriting standards . . . have allowed many borrowers to purchase homes that they can not afford.").

In addition, many putative class members are sophisticated investors with significant experience in asset-backed securities markets. *See* Ferri Rebuttal Rep. Exs. 7, 8. Among them, JPMorgan is alleged to have had knowledge regarding originators' systematic disregard of underwriting guidelines in another lawsuit brought by Intervenor-Plaintiff Iowa Public Employees' Retirement System ("IPERS"). Meltzer Decl., Ex. D. For Plaintiffs to take the position in this litigation that JPMorgan had no such knowledge would, to say the least, present unique issues. Blackrock Management, Ellington Management Group, and Fortress Investment Group each tout their expertise in mortgage backed securities. *Id.* Freddie Mac and Fannie Mae were extensively involved in the structuring of the 2006-4 and 2007-7 offerings at issue in the Harborview case, including in the review and selection of the loans that backed the certificates. *Id.*, Ex. F. Government sponsored entities including Freddie and Fannie issued trillions of dollars of residential mortgage backed securities and this gives rise to a reasonably reliable inference that they possessed at least some knowledge of underwriting practices. *See* Torous Rep. Ex. 18.

      *b.   Different times of purchase indicate different levels of knowledge.*

Additionally, putative class members have different levels of knowledge because they purchased the Harborview certificates at different times, and thus had the benefit of different levels of information about the lending practices relevant to investment in mortgage backed securities. *See* Meltzer Decl., Ex. J. This Court recently suggested, albeit in an opinion addressing claims under section 10(b) of the 1934 Exchange Act, that differences in purchase dates may work against a finding of commonality or predominance. *See In re IMAX Secs. Litig.*, No. 06 Civ. 6128 (NRB), 2010 WL 5185076, at *18 (Dec. 22, 2010).

In this case different levels of knowledge can be imputed to investors who purchased at different times because throughout the relevant period more and more information became publicly available, including reports of government actions or investigations, analysts reports, news items and raw data. This information cast increasing levels of doubt on whether the loans comprising mortgage backed securities were originated in conformity with appropriate guidelines and risk analyses. *See* Meltzer Decl., Ex. J.

      2. *The RALI case*

The RALI Defendants make similar arguments, asserting that the elements of liability that Plantiffs must satisfy "will require the Court to conduct mini-trials for each of the putative class members." RALI Def. Mem. Opp. Class Cert. at 23. Like the Harborview Defendants, the RALI Defendants argue persuasively that individualized issues of knowledge predominate. They contend that "unlike the typical securities class action, this putative class is comprised entirely of a narrow

and identifiable group of sophisticated investors." RALI Def. Suppl. Mem. Opp. Class Cert. at 3. Plaintiffs' expert report confirms this. *See* Ferri Rep. ¶¶ 76, 81. Many of these investors were steeped in the mortgage-backed securities market and purchased hundreds of millions of dollars of RALI certificates. RALI Def. Suppl. Mem. Opp. Class Cert. at 3; Fatale Decl. Ex. 4. Like the putative Harborview class, the background of many RALI purchasers makes clear that relevant individual issues exist concerning the level of knowledge possessed by different putative class members.

This conclusion is confirmed by the fact that, as in Harborview, the putative RALI class consists of investors who purchased RALI certificates at different times relative to material disclosures; later purchasers would have been privy to information about increasing delinquency and foreclosure rates, as well as key ratings downgrades. *See* RALI Def. Mem. Opp. Class Cert. at 11. The proposed class would therefore include investors with different levels of knowledge, and in this case those issues predominate over the common issues identified by the Plaintiffs. *See In re Initial Pub. Offering Secs. Litig.*, 471 F.3d 24, 44 (2d Cir. 2006).

3. *Conclusion as to predominance*

Together these facts illustrate sufficient differences in the knowledge of putative class members for me to conclude that individual issues predominate. The fact that putative class members purchased securities at different dates relative to different disclosure events may not defeat typicality. *See In re Am. Int'l Group, Inc. Secs. Litig.*, 265 F.R.D. 157, 169 (S.D.N.Y. 2010). However, here it demonstrates that the proposed class would include investors with different levels of knowledge, and that such individual issues predominate. *See In re Initial Pub. Offering Secs. Litig.*, 471 F.3d 24, 44 (2d Cir. 2006).

**C. Superiority**

To determine whether class treatment is the superior form of adjudication, a court may consider (1) the interest of the class members in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation already commenced by or against class members; (3) the desirability of concentrating the litigation in a particular forum; and (4) difficulties likely to be encountered in the management of a class action. *See* Fed. R. Civ. P. 23(b)(3). Class treatment is particularly appropriate where it allows large groups of claimants to bundle into a single action common claims that are too small to pursue individually. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 615, 617 (1997); *Noble v. 93 Univ. Place Corp.*, 224 F.R.D. 330, 346 (S.D.N.Y. 2004) (noting that class treatment is appropriate in "negative value cases," where the individual interest of each class member's interest in the litigation is less than the cost to maintain an individual action). That purpose is not served where, as here, the proposed class consists of large, institutional and sophisticated investors with the financial resources and incentive to pursue their own claims. *See* Ferri Rep. ¶¶ 76, 81; Ferri Rebuttal Rep. Exs. 7, 8.

Moreover, addressing all claims as part of the same class would present obstacles to the management of the litigation. Were I to certify the proposed classes the Court would have to hear significant individualized evidence on, among other things, each purchaser's knowledge and damages. The necessity of hearing all this individualized evidence defeats the requisite superiority of class treatment. *See* Fed. R. Civ. P. 23(b)(3)(D).

Finally, the putative class members are not "sufficiently cohesive to warrant adjudication by representation." *Amchem Prods.*, 521 U.S. at 623. For instance, the putative RALI class would include Alliance Bernstein, the New Jersey Carptenters Funds' investment advisor who was terminated for performance reasons, as well as WAMCO, who Boilermaker considered suing for breach of fiduciary duty. *See* RALI Def. Suppl. Mem. Opp. Class Cert. at 5-6. The putative RALI class would include entities that are defendants in the Harborview case. *Id.* at 6. In addition to pension funds, the classes as proposed would include hedge funds and mutual funds, which were deeply involved in and profited from residential mortgage backed securities and other structured-finance products. *See id.*; Fatale Decl. Ex. 4. Given these various levels of involvement and the high stakes in the subject matter of the lawsuit, individual class members would have competing interests in controlling the prosecution of the action, further eroding the superiority of class treatment. *See* Fed. R. Civ. P. 23(b)(3)(A); *Amchem*, 521 U.S. at 616.

### CONCLUSION

Plaintiffs have not met their burden of showing, by a preponderance of the evidence, that all the Rule 23 requirements have been satisfied. Ultimately, the individualized issues presented by the putative class members in both the RALI and Harborview cases predominate, and class treatment is not superior. The motions for class certification is therefore DENIED. As a result I need not consider whether to appoint Lead Plaintiffs as class representatives, nor whether to appoint Cohen Milstein Sellers & Toll PLLC as class counsel.

The Clerk of the Court is instructed close the relevant motions and remove them from my docket.

**SO ORDERED**
**January 1️⃣, 2011**
**New York, New York**

**Hon. Harold Baer, Jr.**
**U.S.D.J.**