UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
                                                                  :
New Jersey Carpenters Health Fund, New Jersey                     :   08-CV-8781 (HB)
Carpenters Vacation Fund and Boilermaker                          :
Blacksmith National Pension Trust, *on Behalf of*                 :   ECF CASE
*Themselves and All Others Similarly Situated*,                   :
                                                                  :
                          Plaintiffs,                             :
                                                                  :
              vs.                                                 :
                                                                  :
Residential Capital, LLC, Residential Funding, LLC,               :
Residential Accredited Loans, Inc., Bruce J. Paradis,             :
Kenneth M. Duncan, Davee L. Olson, Ralph T. Flees,                :
Lisa R. Lundsten, James G. Jones, David M. Bricker,               :
James N. Young, Residential Funding Securities                    :
Corporation d/b/a GMAC RFC Securities, Goldman,                   :
Sachs & Co., RBS Securities, Inc. f/k/a/ Greenwich                :
Capital Markets, Inc. d/b/a RBS Greenwich Capital,                :
Deutsche Bank Securities, Inc., Citigroup Global                  :
Markets, Inc., Credit Suisse Securities (USA) LLC,                :
Bank Of America Corporation *as successor-in-interest*            :
*to* Merrill Lynch, Pierce, Fenner & Smith, Inc., UBS             :
Securities, LLC, JPMorgan Chase, Inc., *as successor-*            :
*in-interest to* Bear, Stearns & Co., Inc., and Morgan            :
Stanley & Co., Inc.,                                              :
                                                                  :
                          Defendants.                             :
------------------------------------------------------------------x

# DEFENDANTS' CONSOLIDATED MEMORANDUM IN OPPOSITION TO PLAINTIFFS' RENEWED REQUEST FOR CLASS CERTIFICATION

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................... ii

TABLE OF ABBREVIATIONS ............................................................................................. iii

I.  INDIVIDUALIZED ISSUES STILL PREDOMINATE ................................................ 2

    A.    Discovery Confirms The Continued Existence Of Individualized Issues Of Knowledge .......................................................................................................... 2

    B.    Delinquency Rates And Rating Agency Announcements Still Give Rise To Individual Issues Regarding Investor Knowledge ............................................. 6

II.  THE PUTATIVE SUBCLASSES ARE STILL NOT COHESIVE ................................ 8

III. A CLASS IS STILL NOT A SUPERIOR WAY TO RESOLVE THE CLAIMS .......... 8

IV. NUMEROSITY CANNOT BE ESTABLISHED ........................................................... 9

## TABLE OF AUTHORITIES

**Cases**                                                                                                                                  **Page(s)**

*Abu Dhabi Commercial Bank v. Morgan Stanley & Co.*,
    269 F.R.D. 252 (S.D.N.Y. 2012) ............................................................................... 10

*Bayridge Volvo Am. Inc. v. Volvo Cars of N. Am. Inc.*,
    2004 WL 1824379 (S.D.N.Y. Aug. 16, 2004) ............................................................ 10

*Bd. of Trs. of AFTRA Ret. Fund v. JPMorgan Chase Bank, N.A.*,
    269 F.R.D. 340 (S.D.N.Y. 2010) ........................................................................... 10 n.18

*Forth Worth Emps.' Ret. Fund v. J.P. Morgan Chase & Co.*,
    2012 WL 1788142 (S.D.N.Y. May 15, 2012) ........................................................ 10 n.19

*In re Beacon Assoc. Litig.*,
    2012 WL 1123728 (S.D.N.Y. Apr. 4, 2012) ............................................................... 10

*In re Wash. Mut. Mortg. Backed Sec. Litig.*,
    276 F.R.D. 658 (W.D. Wash. 2011) ...................................................................... 10 n.19

*Maine State Ret. Sys. v. Countrywide Fin. Corp.*,
    2011 WL 4389689 (C.D. Cal. May 5, 2011) ......................................................... 10 n.19

*Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
    259 F.3d 154 (3d Cir. 2001) ........................................................................................ 3

*Oakley v. Verizon Commc'ns Inc.*,
    2012 WL 335657 (S.D.N.Y. Feb. 1, 2012) .............................................................. 9 n.17

*Plumbers' & Pipefitters' Local #562 Supp. Plan & Trust v. J.P. Morgan Acceptance Corp. I*,
    2012 WL 601448 (E.D.N.Y. Feb. 23, 2012) .......................................................... 10 n.19

*U.S. Fidelity & Guar. Co. v. Madison Fin. Corp.*,
    2002 WL 31731020 (S.D.N.Y. Dec. 4, 2002) ........................................................ 10 n.17

*Wal-Mart Stores, Inc. v. Dukes*,
    131 S. Ct. 2541 (2011) ............................................................................................. 1-2

**Rules**

Fed. R. Civ. Pro. 23 ............................................................................................................. 8, 9

# TABLE OF ABBREVIATIONS

| ABBREVIATION | DESCRIPTION | RECORD LOCATION* |
|---|---|---|
| 2010 Lipps Decl. | Declaration of Jeffrey A. Lipps in Support of Defendants' Consolidated Memorandum in Opposition to Plaintiffs' Motion for Class Certification, Dated October 15, 2010, and Filed in This Action | N/A |
| 2012 Fatale Decl. | Declaration of Alfred L. Fatale III in Support of Defendants' Consolidated Memorandum in Opposition to Plaintiffs' Renewed Request for Class Certification, Dated August 6, 2012 | N/A |
| 2006-QO7 Pro. Supp. | Prospectus Supplement for the RALI Mortgage Asset-Backed Pass-Through Certificates Series 2006-QO7, Dated September 29, 2006 | 2010 Lipps Decl. Ex. 9 |
| 2d Cir. Op. | United States Court of Appeals for the Second Circuit's Summary Order, Dated April 30, 2012 | Ex. 2 |
| Carroll Decl. | Declaration of John T. Carroll, Dated August 3, 2012 | N/A |
| Carroll Ex. | Exhibits Annexed to Declaration of John T. Carroll, Dated August 3, 2012 | N/A |
| Carroll Tr. | Excerpts of the Transcript from the Deposition of John T. Carroll, Rule 30(b)(6) Witness for UBS Securities, LLC, Dated June 13, 2012 | Ex. 5 |
| Getchis Tr. | Excerpts of the Transcript from the Deposition of John Getchis, Rule 30(b)(6) Witness for Ally Securities, LLC, Dated June 21, 2012 | Ex. 6 |
| Laufenberg Tr. | Excerpts of the Transcript from the Deposition of George Laufenberg, N.J. Carpenters Funds' Representative, Dated October 7, 2010 | Ex. 20 |
| Op. | Opinion and Order of the Honorable Harold Baer, Jr., Denying Plaintiffs' Motion for Class Certification, Dated January 18, 2011 | Ex. 1 |

---

\* The documents listed herein are attached to the accompanying Declaration of Alfred L. Fatale III, dated August 6, 2012, unless otherwise noted.

| | | |
|---|---|---|
| Opp. | Consolidated Memorandum in Opposition to Plaintiffs' Motion for Class Certification, Dated October 15, 2010, and Filed in This Action | N/A |
| Rodriguez Tr. | Excerpts of the Transcript from the Deposition of Mario Rodriguez, Boilermaker Blacksmith National Pension Trust's Representative, Dated September 23, 2010 | Ex. 21 |
| SAC | Consolidated Second Amended Securities Class Action Complaint, Dated January 3, 2011, and Filed in This Action | N/A |
| Supp. Opp. | Defendants' Consolidated Supplemental Memorandum in Further Support of Their Opposition to Plaintiffs' Motion for Class Certification in the RALI Action, Dated January 3, 2011, and Filed in This Action | N/A |
| Vohra Decl. | Declaration of Chetan Vohra, Dated August 3, 2012 | N/A |
| Vohra Ex. | Exhibits Annexed to Declaration of Chetan Vohra, Dated August 3, 2012 | N/A |
| Vohra Tr. | Excerpts of the Transcript from the Deposition of Chetan Vohra, Rule 30(b)(6) Witness for Citigroup Global Markets Inc., Dated June 22, 2012 | Ex. 7 |
| Walter Decl. | Declaration of Scott Walter, Dated August 3, 2012 | N/A |
| Walter Ex. | Exhibits Annexed to Declaration of Scott Walter, Dated August 3, 2012 | N/A |
| Walter Tr. | Excerpts of the Transcript from the Deposition of Scott Walter, Rule 30(b)(6) Witness for Goldman, Sachs & Co., Dated June 27, 2012 | Ex. 8 |

The Second Circuit has affirmed, in all respects, this Court's prior conclusion that this action is not appropriate for class certification. This Court held that, given the disparate information possessed by highly sophisticated putative class members concerning the Certificates and their collateral, the proprietary analytics employed by those institutions in assessing that collateral, and the necessarily changing degrees of knowledge throughout the class period, individual questions of "knowledge" would likely overwhelm any mundane "common question." *See* Op. at 9-12; *see also* 2d Cir. Op. at 5.[1] On remand, this Court gave Plaintiffs the opportunity to propose something "new and different." They have not done so. Plaintiffs merely propose subclasses that include nearly all of the very institutional investors previously identified — and rejected — as putative class members. Moreover, the proposed subclasses still range between five and 15 months post-offering such that the same delinquency rates and ratings warnings, which doomed certification before, still fall within the Plaintiffs' new proposed subclass periods. *See* 2012 Fatale Decl. Ex. 3. Subdividing does not remedy any of the fundamental impediments to class certification. To the contrary, the discovery that has taken place only further confirms that substantial questions of individual putative class members' knowledge would overwhelm the trial of this matter, regardless of dividing the original problems into sub-problems.

In affirming this Court's denial of class certification, the Second Circuit rejected Plaintiffs' attempt to shift to Defendants the burden to establish knowledge or any other "merits" defense at this stage. 2d Cir. Op. at 6. Rather, the Second Circuit concurred with Defendants that the Court must ask at this juncture the practical question: whether individual inquiries "might be necessary" at trial, and weigh those against common ones. *Id.* at 7. The Second Circuit's decision closely follows the Supreme Court's decision in *Wal-Mart*, where the Court recognized that "[w]hat matters to class certification ... is not the raising common 'questions' —

---

[1] This brief only addresses the differences — or the lack of difference — between Plaintiffs' proposed subclasses and the proposed class that this Court previously declined to certify. The legal standards for assessing whether Plaintiffs have met their burden to certify a class are set forth in this Court's prior Order and Defendants' prior briefing, the relevant portions of which are incorporated by reference.

1

even in droves — but, rather the capacity of a classwide proceeding to generate common *answers apt to drive the resolution of the litigation*." 131 S. Ct. 2541, 2551 (2011) (emphasis added). Here, the record is now even stronger that important questions of knowledge have no common answers and will need to be resolved through countless mini-trials, still rendering class action treatment inappropriate. *See* 2d Cir. Op. at 7 (affirming "that [the] knowledge defense would require extensive individual proceedings").

This Court also denied class certification on cohesiveness and superiority grounds, reasoning that a putative class consisting of conflicted, non-cohesive, and highly sophisticated investors — each with its own incentive and capability to bring individual actions — was not appropriate. Op. at 12-13. Nothing about Plaintiffs' proposed subclasses, each of which includes a nearly identical collection of the same institutional investors as before, remedies these shortcomings. Instead, Plaintiffs' subdivision creates additional reasons against certification, such as the subclasses' failure to satisfy the numerosity requirement. There is nothing "new and different," and Plaintiffs once again have failed to meet their certification burden.

## I.  INDIVIDUALIZED ISSUES STILL PREDOMINATE

### A.  Discovery Confirms The Continued Existence Of Individualized Issues Of Knowledge[2]

***Individually Negotiated Transactions.*** Plaintiffs again pretend that the Certificates are no different from a garden variety public offering of common equity securities, which in appropriate cases are treated on a classwide basis. The Certificates, however, are nothing like common equity securities offered by prospectus to the general public on a "take it, or leave it" basis. *See* Op. at 11-12. Rather, the record confirms that the Certificates were tailored and sold to highly sophisticated investors in response to specific investor requirements. The terms for

---

[2] The Second Circuit noted that this Court's prior decision might have been different with the "benefit of discovery of absent potential class members' records." 2d Cir. Op. at 7. Although Plaintiffs had months to conduct this discovery, they chose not to. The reason Plaintiffs ignored the Second Circuit's instruction is clear. Prior to filing this brief, Defendants themselves sought discovery from absent class members. The discovery Defendants obtained in the limited time available confirms that absent class members did in fact have highly varying degrees of knowledge related to the Offerings.

2

these Offerings resulted from individualized negotiations that varied based on each investor's individualized knowledge, appetite for risk, and assessment of the market.[3] Potential investors focused on a wide range of diverse information, as discussed below, in addition to the base information provided in the Offering Documents when negotiating these transactions.

Moreover, post-offering transactions (which are included in the proposed subclasses) were likewise individually negotiated between each seller and purchaser, based on the evolving market and informational dynamics, given the absence of any established and liquid market for the Certificates. *See* Supp. Opp. at 5. Such investor- and transaction-specific determinations are not suitable for class treatment. *See Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 187 (3d Cir. 2001) (need for trade-by-trade inquiries meant "individual issues overwhelmed common questions"). In other words, investors necessarily held different degrees of knowledge through their own negotiations, sources of information, and evolving market dynamics, regardless of when those transactions occurred.

***Investors Requested Different Information.*** Discovery has further demonstrated that potential investors asked varying and disparate individualized questions about the Certificates and underlying collateral — both prior to and after the issuance of the Certificates. *See* Walter Ex. 10 (█████████████████████████████████████████████████████████████████). For example, multiple investors requested collateral stratifications or "strats," which analyzed the mortgage collateral in a variety of ways.[4] Other investors requested stress tests for the collateral's expected performance under various interest rate scenarios.[5] Most importantly, various investors made different requests regarding the results of Defendants' due diligence examination of the mortgage

---

[3] *See* Vohra Decl. ¶ 6 (describing the process of "reverse inquiry" and attaching example investor correspondence); Carroll Decl. ¶ 6 (same); Walter Decl. ¶ 7 (same).
[4] *See* Vohra Decl. ¶ 11 (attaching several different samples of proprietary stratification requests performed at the direction of potential purchasers); Carroll Decl. ¶ 11 (same); Walter Decl. ¶ 12 (same).
[5] *See* Vohra Decl. ¶ 12; Carroll Decl. ¶ 12; Walter Decl. ¶ 13; *see also* 2012 Fatale Decl. Ex. 4 (████████████████████████████████████████████████████████████████).

pools.[6]  Some investors (but not all) even *requested origination information,* [7] Indeed, ███ . Getchis Tr. 26:25-27:6. Importantly, here ███ Vohra Tr. 28:21-23.  For example, ███ Getchis Tr. 37:9-20 (emphasis added).

Plaintiffs will undoubtedly argue that no investor was knowingly provided material, non-public information.  This is a red herring.  The important point is that troves of information were available to all potential purchasers, but *only some investors accessed some but not all* of that information, and those that did, *accessed different information.*  These facts regarding investor knowledge will all need to be developed on a purchaser-by-purchaser basis, rendering the case unsuitable for class treatment.

***Investors Applied Their Own Analytics.***  The record has grown even stronger in showing that many potential investors combined the information they received with their own assumptions concerning projected losses, as well as their ███ Walter Tr. 51:5-52:11; *see also* 2012 Fatale Decl. Ex. 9 (███

---

[6]  Carroll Tr. 15:8-13, 29:7-24, 30:8-24 (███); Getchis Tr. 26:25-27:7, 28:15-17, 29:21-25, 31:4-9 (███); Vohra Tr. 11:25-12:4, 17:18-22 (███); Walter Tr. 26:19-21 ███; *see also, e.g.,* Carroll Ex. 20 (███); Carroll Ex. 9 (███); Vohra Ex. 7 ███).

[7]  *See* Carroll Ex. 19 (███); *see also* Vohra Ex. 9 ███; Walter Ex. 7 (███).

4

███████████████████████████). Thus, each purchaser necessarily based its investment decisions on the different sets of information that each possessed and utilized.[8]

***Some Investors Were Intimately Aware Of Origination Practices.*** Additional discovery also underscores the already robust record that investors possessed varying degrees of knowledge about underwriting practices through their in-depth pre-investment research, which included their own face-to-face meetings with originators.[9] Putative class members who obtained such information directly from originators undoubtedly possessed vastly different knowledge about that subject matter than investors who did not.[10] Indeed, based on their knowledge, some potential investors declined to purchase the Certificates for individual reasons, including the identity of the issuer or the type of mortgages that served as the collateral.[11] For this Court to evaluate which investors obtained additional originator-specific information, what that information was, and when it was obtained would again require countless mini-trials.

***Investors Reviewed Post-Offering Materials.*** The record has also grown regarding the review of post-offering materials by aftermarket purchasers regarding performance reports. *See infra* § I.B.; *see also* Carroll Tr. 48:20-23; Vohra Ex. 1 (███████████████████████████████████████); 2012 Fatale Decl. Ex. 10 (█████████████████████████████████████████████); *Id.* Ex. 11

---

[8]   *See* Carroll Ex. 6 (███████████████████████████████████████████████████████); Carroll Ex. 17 (█████████████████████████████████████); Walter Ex. 15 (same); Walter Tr. 51:2-52:12 (█████████████████████████████████████████████).

[9]   *See, e.g.*, Vohra Decl. ¶ 8; Carroll Decl. ¶ 8; Walter Decl. ¶ 9.

[10]   The prospectus supplements disclosed that "the mortgage loans were generally originated in accordance with or in a manner generally consistent with the underwriting standards," that "a mortgage loan may be considered to comply with the underwriting standards ... even if one or more specific criteria included in the underwriting standards were not satisfied, if other factors positively compensated for the criteria that were not satisfied," and thus deviations from guidelines would occur. *See e.g.*, 2006-QO7 Pro. Supp. S-57 to S-58. Moreover, the prospectus supplements disclosed that the mortgages "may experience greater rates of delinquency, foreclosure and loss than mortgage loans required to satisfy more stringent underwriting standards." *Id.* at S-57.

[11]   *See e.g.*, Walter Decl. ¶ 8 (███████████████████); Walter Ex. 8 (███████████████████████████████████████████████████████).

5

▉ (▉). In fact, some investors only purchased once delinquency rates were established.[12] In sum, discovery has reaffirmed that issues of individualized knowledge still defeat predominance.

  B. Delinquency Rates And Rating Agency Announcements Still Give Rise To Individual Issues Regarding Investor Knowledge

In addition to the individualized elements of investor knowledge outlined above, the Second Circuit also affirmed this Court's denial of class certification because "the cumbersome class definition[]" without temporal limitations "further tipped the balance away from common issues." 2d Cir. Op. at 7-8. Plaintiffs' proposed subclasses add more layers of burden without solving that issue — the proposed subclasses span between five and 15 months and encompass periods marked by rapidly-changing market information regarding both increased delinquency rates and sequential rating agencies' warnings. These are the very disclosures that Plaintiffs claim are "evidence" that Defendants made misstatements regarding origination guidelines. *See* SAC ¶¶ 66-69 (alleging that "skyrocket[ing]" delinquency rates within *four or six months* after the Offerings "*evidences ... borrower misrepresentations*" and "*could only have occurred as a result of systemic failures to abide by the underwriting guidelines ... and as a result of inadequate due diligence ... in monitoring compliance with those guidelines*") (emphasis added); *see also* 2d Cir. Op. at 8 (finding such "public information could constitute circumstantial evidence of individual purchaser knowledge").[13] Yet this alleged "evidence" was flowing into the market to varying and different degrees at different times during the proposed subclass periods. *See* SAC ¶ 69. With various investors having different exposure to different "evidence" of the very misstatements alleged, this case cannot possibly be tried as a class action, much less as multiple mini-class actions.

---

[12] *See* Walter Ex. 8 (▉ ▉); Walter Ex. 1 (same). Moreover, investors continued to ask Offering- and collateral-specific questions beyond the information contained in the initial Offering Documents. *See* Walter Exs. 2, 13-14 (▉).

[13] *See* Op. at 12 (holding that a class period including aftermarket purchasers is inappropriate since those investors "would be privy to information about increasing delinquency and foreclosure rates" and "those issues predominate over the common issues identified by the Plaintiffs").

For example, during each proposed subclass period, delinquency rates reached between 2.11% and 4.26% during the first four months and between 3.99% and 5.61% during the first six months. *See* 2012 Fatale Decl. Ex. 12. By the end of each subclass period, those rates reached 5.01% for RALI 2007-QH4, 8.88% for RALI 2007-QO4, 9.49% for RALI 2007-QS1, and 15.02% for RALI 2006-QO7. *Id.* According to Plaintiffs' own Complaint, these delinquency rates and their progression confirm differing levels of knowledge among investors at various times. *See* 2d Cir. Op. at 4.

Similarly, the Complaint cites the rating agencies' July 2007 public announcements regarding model revisions and downgrades as "evidence" of the Defendants' putative misstatements.[14] Yet, these July 2007 announcements fall squarely within every one of Plaintiffs' newly proposed subclass periods, adding yet another distinction in investor knowledge. Moreover, during Plaintiffs' subclass periods, tranches in the RALI 2007-QO4 Offering were either put on credit watch or downgraded by the rating agencies. *See* 2012 Fatale Decl. Ex. 13.

In sum, Plaintiffs' proposed subclasses solve none of the obstacles that defeated their previous attempt to define a class. The subclass periods for each Offering still include all of the sophisticated investors that purchased Certificates with varying levels of knowledge concerning rising delinquency rates, rating agency warnings, and downgrades. While these allegations have no bearing on supposed liability at this time because the merits of the action are not presently before the Court, they are fatal to class certification. Under Plaintiffs' own theory of the case, each putative class member necessarily possessed a different level of knowledge. Accordingly, certification should be denied. *See* 2d Cir. Op. at 8 ("because of the differences in purchase timing, the chosen class definition also removed the possibility that the knowledge defense could be adjudicated on a class basis").

---

[14] *See* SAC ¶¶ 88-90 (alleging that the rating agencies announced model revisions because "the performance of the underlying collateral 'called into question' the accuracy of loan data" and because of purportedly "aggressive underwriting" practices in originating the mortgage collateral).

7

## II. THE PUTATIVE SUBCLASSES ARE STILL NOT COHESIVE

As the Second Circuit made clear, questions of cohesiveness inform both Rule 23's predominance and superiority requirements. 2d Cir. Op. at 8-9. Moreover, this Court correctly denied class certification on cohesiveness grounds where, as the Second Circuit held, "differently situated class members *might* have competing interests in controlling the litigation." *Id.* at 9 (emphasis added). In reaching this determination, the Court noted three key factors establishing that the "putative class members [were] not 'sufficiently cohesive to warrant adjudication by representation'" (Op. at 13), all of which are unaltered in any respect by the proposed subclasses:

- Nearly all of the hedge funds, mutual funds, and other highly sophisticated investors that the Court found to be "deeply involved in and profited from residential mortgage backed securities and other structured-finance products" remain in the proposed subclasses. *Id.; see also* Supp. Opp. at 6. Indeed, discovery has confirmed that some putative class members suffered no loss from their purchases of the Certificates. *See* 2012 Fatale Decl. Ex. 14. Further, in denying class certification, the Court cited statements made by putative class members reflecting their sophisticated and divergent approaches to MBS investing. *See* Op. at 13. The evidence of these statements still stands. An updated chart reflecting the miniscule changes between Plaintiffs' proposed subclasses and the class definition that this Court previously rejected is submitted with this motion. *See* 2012 Fatale Decl. Ex. 15.

- The putative subclasses are still defined to include ▌▌▌▌▌▌▌▌▌▌▌▌▌. *See id.* Ex. 17. Moreover, the proposed subclasses contain (i) defendants in other MBS litigations (*e.g.*, ▌▌▌▌▌▌▌▌▌▌▌▌▌) involving similar allegations, and (ii) ▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌). *See id.* Exs. 16, 17, 19; *see also* Supp. Opp. at 6. Thus, such putative class members have legal interests conflicting with others in the proposed subclasses.

- Plaintiffs' subclasses still include ▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌.[15]

In short, Plaintiffs' proposed subclasses do nothing to address the lack of cohesiveness in the class and denial of class certification is warranted for this reason as well.

## III. A CLASS IS STILL NOT A SUPERIOR WAY TO RESOLVE THE CLAIMS

This Court also denied certification on superiority grounds. This decision was based on

---

[15] ▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌ *See* Laufenberg Tr. 140:7-142:10; Rodriguez Tr. 145:10-15; *cf.* 2012 Fatale Decl. Ex. 15 at 26-27.

8

the need to hear significant individualized evidence on investor knowledge and damages, as well as the fact that the proposed class "consist[ed] of large, institutional and sophisticated investors with the financial resources and incentive to pursue their own claims." Op. at 12. As exhibits 16 through 19 of the 2012 Fatale Declaration illustrate, the proposed subclasses have done nothing to alter the makeup of the putative class and nothing to alter this Court's prior conclusion.

Defendants previously submitted examples of numerous similar MBS cases pursued individually by putative members of this class, as well as legions of other individual MBS cases being pursued by other institutional investors. *See* 2010 Lipps Decl. Exs. 33-34; Opp. at 24 n.17. Indeed, since this Court's denial of certification, scores of additional individual MBS actions have been filed (*see* 2012 Fatale Decl. Ex. 22), several of which have been brought against this action's "RALI" defendants (*see id.* Ex. 23). Such actions clearly illustrate that putative class members possess the ability to bring individual actions if they so wish.

Lastly, as part of the ResCap bankruptcy, several putative class members (or affiliates) are pursuing settlement of their claims against the ResCap debtor defendants in this case. *See id.* Ex. 24. The proposed settlement provides for an $8.7 billion allowed claim to cover allegations that ResCap breached its representations and warranties in connection with 392 MBS offerings (including those in this case). These putative class members include ███████ ███████████████████████████, further illustrating that the subclasses consist of large, sophisticated institutions with the financial resources and incentives to pursue their own claims and obtain relief to which they believe they are entitled.[16] Accordingly, this Court should once again deny class certification for lack of superiority.

## IV. NUMEROSITY CANNOT BE ESTABLISHED

Under Rule 23(c)(5), each subclass is "treated as a class" and thus Plaintiffs must establish numerosity as to each.[17] Plaintiffs have flatly refused to provide the identity of the

---

[16]  ███████████████████████████████████ Chapter 11 plan for the ResCap debtors which provides no recovery for securities claims against the ResCap debtors and for a third party injunction protecting Ally Securities from liability for the claims covered by this action. *See* 2012 Fatale Decl. Ex. 25.

[17]  *See, e.g., Oakley v. Verizon Commc'ns Inc.*, 2012 WL 335657, at *13 (S.D.N.Y. Feb. 1, 2012) ("Although Plaintiffs also seek certification of two subclasses, they do not analyze independently why those subclasses meet the

9

putative class members of each subclass, stating instead that the number of members will be apparent based on trading data produced in discovery. A conservative review of that data (applying Plaintiffs' subclass periods and excluding Defendants and their affiliates) reveals that the RALI 2006-QO7, RALI 2007-QS1, RALI 2007-QO4, and RALI 2007-QH4 subclasses contain ▮▮▮▮▮▮▮▮ putative members, respectively. *Id.* Exs. 16-19.

The RALI 2007-QH4 subclass of a mere ▮ members fails to meet the numerosity requirement as a matter of well-settled legal precedent. *See, e.g., Bayridge Volvo Am. Inc. v. Volvo Cars of N. Am. Inc.*, 2004 WL 1824379, at *3 (S.D.N.Y. Aug. 16, 2004) (declining to certify class of "at most 27" members). As for the remaining Offerings, "the ultimate issue is whether the class is too large to make joinder practicable." *Abu Dhabi Commercial Bank v. Morgan Stanley & Co.*, 269 F.R.D. 252, 255 (S.D.N.Y. 2010). Here, joinder is practicable in light of "relevant considerations" such as the "financial resources of class members [and] the ability of claimants to institute individual suits." *In re Beacon Assoc. Litig.*, 2012 WL 1123728, at *6 (S.D.N.Y. Apr. 4, 2012); *see also* Op. at 12 (finding "[m]any of [the putative class members] ... purchased hundreds of millions of dollars of RALI certificates").[18]

Finally, several courts recently found that different tranches of MBS are unique and have held that it is impermissible to treat them alike.[19] Here, the proposed subclasses are improperly drawn because they aggregate purchasers of each separate and unique tranche, as the accompanying charts demonstrate. 2012 Fatale Decl. Exs. 26-29. Specifically, on a tranche-by-tranche basis, all but ▮ tranches at issue had fewer than 40 investors trading during the subclass periods — well below the presumptive threshold for certification.

For the foregoing reasons, Plaintiffs' second request for certification should be denied.

---

Rule 23 requirements. For that reason alone, the subclasses cannot be certified."); *U.S. Fidelity & Guar. Co. v. Madison Fin. Corp.*, 2002 WL 31731020, at *5 (S.D.N.Y. Dec. 4, 2002) (same).

[18]   *Bd. of Trs. of AFTRA Ret. Fund v. JPMorgan Chase Bank, N.A.*, 269 F.R.D. 340, 342 (S.D.N.Y. 2010) (Op. at 3), is inapposite, because, in that case the defendant conceded certification as to all but five class members.

[19]   *See Plumbers' & Pipefitters' Local #562 Supp. Plan & Trust v. J.P. Morgan Acceptance Corp. I*, 2012 WL 601448, at *7 (E.D.N.Y. Feb. 23, 2012); *Maine State Ret. Sys. v. Countrywide Fin. Corp.*, 2011 WL 4389689, at *5 (C.D. Cal. May 5, 2011); *In re Wash. Mut. Mortg. Backed Sec. Litig.*, 276 F.R.D. 658, 663 (W.D. Wash. 2011); *cf. Fort Worth Emps.' Ret. Fund v. J.P. Morgan Chase & Co.*, 2012 WL 1788142, at *15-16 (S.D.N.Y. May 15, 2012) ("the differences among the tranches may affect the class certification").

Dated: New York, New York
August 6, 2012

KIRKLAND & ELLIS LLP

_____
Matthew Solum

601 Lexington Avenue
New York, New York 10022
Tel: (212) 446-4800
Fax: (212) 446-4900
matthew.solum@kirkland.com

Jeffrey S. Powell
Daniel T. Donovan
Patrick M. Bryan

655 Fifteenth Street, N.W.
Washington, D.C. 20005
Tel: (202) 879-5285
Fax: (202) 879-5200
jeff.powell@kirkland.com
daniel.donovan@kirkland.com
patrick.bryan@kirkland.com

*Attorneys for Defendant Residential Funding Securities Corporation d/b/a GMAC RFC Securities*

CARPENTER, LIPPS & LELAND LLP

_____
Jeffrey A. Lipps (admitted pro hac vice)
Jennifer A.L. Battle (N.Y. Bar 3895315)

280 Plaza, Suite 1300
280 North High Street
Columbus, Ohio 43215
Tel: (614) 365-4100
Fax: (614) 365-9145
lipps@carpenterlipps.com

FRIED, FRANK, HARRIS, SHRIVER
& JACOBSON LLP

_____
William G. McGuinness
David B. Hennes
Alfred L. Fatale III

One New York Plaza
New York, New York 10004
Telephone: (212) 859-8000
Fax: (212) 859-4000
william.mcguinness@friedfrank.com

*Attorneys for Defendants Citigroup Global Markets Inc., Goldman, Sachs & Co., and UBS Securities, LLC*

11

LAZARE POTTER & GIACOVAS LLP

David E. Potter
950 Third Avenue
New York, New York 10022
Telephone: (212) 758-9300
Fax: (212) 888-0919
dpotter@lpgllp.com

*Attorneys for Bruce J. Paradis, Kenneth M. Duncan, Davee L. Olson, Ralph T. Flees, Lisa R. Lundsten, James G. Jones, David M. Bricker, and James N. Young*

8650351

## CERTIFICATE OF SERVICE

I certify under penalty of perjury pursuant to 28 U.S.C. § 1746 that on August 6, 2012, I caused to be served upon the following, by FedEx overnight delivery, postage prepaid, a true copy of the attached Defendants' Consolidated Memorandum in Opposition to Plaintiffs' Renewed Request for Class Certification:

Joel Laitman, Esq.
Cohen Milstein Sellers & Toll P.L.L.C.
88 Pine Street
14th Floor
New York, NY 10005

Robin Zwerling, Esq.
Zwerling, Schachter & Zwerling, LLP
41 Madison Avenue
New York, NY 10010

*Attorneys for Plaintiffs*

Jeffrey A. Lipps, Esq.
Carpenter, Lipps & Leland LLP
280 Plaza, Suite 1300
280 North High Street
Columbus, Ohio 43215

Matthew Solum, Esq.
Kirkland & Ellis LLP
601 Lexington Avenue
New York, New York 10022

*Attorneys for Defendant Residential Funding Securities Corporation d/b/a/ GMAC RFC Securities*

David E. Potter, Esq.
Lazare Potter & Giacovas LLP
950 Third Avenue
New York, New York 10022

*Attorneys for Bruce J. Paradis, Kenneth M. Duncan, Davee L. Olson, Ralph T. Flees, Lisa R. Lundsten, James G. Jones, David M. Bricker, and James N. Young*

Dated:   New York, New York
         August 6, 2012

_____
Chelsea Hall

8703245.1