UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
:
NEW JERSEY CARPENTERS HEALTH FUND, :
NEW JERSEY CARPENTERS VACATION FUND :
AND BOILERMAKER BLACKSMITH NATIONAL :
PENSION TRUST, *on Behalf of Themselves and All* :
*Others Similarly Situated*, :
:
                              Plaintiffs, :
:
     v. :
:
RESIDENTIAL CAPITAL, LLC, RESIDENTIAL :
FUNDING, LLC, RESIDENTIAL ACCREDITED : Case No.: 08-CV-8781 (HB)
LOANS, INC., BRUCE J. PARADIS, KENNETH M. :
DUNCAN, DAVEE L. OLSON, RALPH T. FLEES, :
LISA R. LUNDSTEN, JAMES G. JONES, DAVID :
M. BRICKER, JAMES N. YOUNG, RESIDENTIAL :
FUNDING SECURITIES CORPORATION D/B/A :
GMAC RFC SECURITIES, GOLDMAN, SACHS & : **ECF CASE**
CO., RBS SECURITIES, INC. F/K/A/ GREENWICH :
CAPITAL MARKETS, INC. D/B/A RBS : **FILED UNDER SEAL**
GREENWICH CAPITAL, DEUTSCHE BANK :
SECURITIES, INC., CITIGROUP GLOBAL :
MARKETS, INC., CREDIT SUISSE SECURITIES :
(USA) LLC, BANK OF AMERICA CORPORATION :
*AS SUCCESSOR-IN-INTEREST TO* MERRILL :
LYNCH, PIERCE, FENNER & SMITH, INC., UBS :
SECURITIES, LLC, JPMORGAN CHASE, INC., *AS* :
*SUCCESSOR-IN-INTEREST TO* BEAR, STEARNS & :
CO., INC., AND MORGAN STANLEY & CO., INC., :
:
                              Defendants. :
-----------------------------------------------------------------x

**REPLY MEMORANDUM OF LAW IN SUPPORT OF LEAD PLAINTIFF NEW JERSEY CARPENTERS HEALTH FUND, PLAINTIFF NEW JERSEY CARPENTERS VACATION FUND, AND PLAINTIFF BOILERMAKER BLACKSMITH NATIONAL PENSION TRUST'S REVISED MOTION FOR CLASS CERTIFICATION; TO CERTIFY THEM AS CLASS REPRESENTATIVES; AND TO APPOINT COHEN MILSTEIN SELLERS & TOLL PLLC AS CLASS COUNSEL**

# TABLE OF CONTENTS

I. FOLLOWING THE SECOND CIRCUIT'S DIRECTION, THE EXPANDED RECORD AND SHORTENED CLASS PERIODS RESOLVES ALL ISSUES REGARDING PUTATIVE CLASS MEMBER KNOWLEDGE ...................................... 1

II. DEFENDANTS' ARGUMENTS HAVE ALL BEEN REJECTED ................................. 2

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*In re Indymac Mortg.-Backed Sec. Litig.*,
   No. 09 Civ. 4583 (LAK) ................................................................................2, 3, 4, 5

*In re Residential Capital, LLC,*
   No. 12-12020 (Bankr. S.D.N.Y. May 14, 2010) ........................................................5

*N.J. Carpenters Health Fund v. DLJ Mortg. Capital, Inc.*,
   No. 08 Civ. 5653 (PAC), 2011 U.S. Dist. LEXIS 92597 (S.D.N.Y. Aug. 16, 2011) ........3, 4, 5

*N.J. Carpenters Health Fund v. Rali Series 2006-QO1 Trust*,
   Nos. 11-1683-cv, 11-1684-cv, 2012 U.S. App. LEXIS 8675 (2d Cir. Apr. 30, 2012) ..............1

*Ret. Sys. of Miss. v. Goldman Sachs Grp.*, *Inc.*,
   280 F.R.D. 130 (S.D.N.Y. 2012) ...................................................................3, 4

*Ret. Sys. of Miss. v. Merrill Lynch & Co.*,
   277 F.R.D. 97 (S.D.N.Y. Aug. 22, 2011) ..................................................2, 3, 4, 5

*Tsereteli v. Residential Asset Securitization Trust 2006-A-8,*
   No. 08 Civ. 10637 (LAK), 2012 U.S. Dist. LEXIS 91017 (S.D.N.Y. June 29, 2012) ..........3, 4

## I. FOLLOWING THE SECOND CIRCUIT'S DIRECTION, THE EXPANDED RECORD AND SHORTENED CLASS PERIODS RESOLVES ALL ISSUES REGARDING PUTATIVE CLASS MEMBER KNOWLEDGE

The Second Circuit affirmed the denial of certification "without prejudice to further motion practice" because it found that the record as to class member knowledge was "limited" and because a more circumscribed class period might well resolve the impediments to certification.[1] Lead Plaintiffs' Revised Motion for Certification followed both directions of the Circuit.

The record was expanded to confirm that no class member knew of the underwriting deficiencies in the RALI 2006-Q07 ("QO7"), RALI 2007-QS1 ("QS1"), RALI 2007-QO4 ("QO4"), and RALI 2007-QH4 ("QH4") (the "Offerings") collateral that rendered the underwriting statements false. First, it encompassed the more than 500,000 pages of documents Defendants produced *after* Plaintiffs' moved for class certification[2] in response to, *inter alia*, Plaintiffs' requests for all communications with Q07, QS1, QO4, and QH4 investors and all documents relating to the underwriting of the loans securitized in the Offerings.[3] The record was also expanded via Defendants' document and deposition subpoenas to absent class members in 2012.[4]



---

[1] *See N.J. Carpenters Health Fund v. Rali Series 2006-QO1 Trust*, Nos. 11-1683-cv, 11-1684-cv, 2012 U.S. App. LEXIS 8675, at *8-10, 12 (2d Cir. Apr. 30, 2012).

[2] Defendants did not complete their production (of over 500,000 pages or 40,000 documents) until after oral argument. Indeed as of August 16, 2010, when Plaintiffs filed for class certification, Defendants had produced a grand total of 10 documents (0.5% of the total they would produce). Exhibit 1 to the Supplemental Eisenkraft Declaration lists the dates of Defendants' Production of Responsive Documents.

[3] *See* Plaintiff's First Sets of Requests for Production. A copy of the Requests for Production is attached to the Supplemental Eisenkraft Declaration as Exhibit 3.

[4] These subpoenas called for, *inter alia*, all documents concerning the RALI Offerings and their purchases.

[6] These same documents confirmed that no class member had access to the Q07, QS1, QO4, or QH4 loan files—the only source from which knowledge of the underwriting misstatements could be independently derived, confirming that no disclosure of the underwriting defects could have even indirectly occurred. *See* Pl. Br. at 9.

1

For each Offering, Plaintiffs then deposed a 30(b)(6) witness from each of the four defendant investment banks regarding all information and Documents regarding the Certificates, Offerings or Loans provided or made available to Purchasers prior to their purchase.

The Second Circuit's suggestion was also adopted by shortening class periods. Though downgrades create common issues[8], in an abundance of caution, the class period for each Offering sub-class only includes purchasers who bought ***prior*** to the first material downgrade in each Offering – before any indication that faulty underwriting impacted bond performance.

## II. DEFENDANTS' ARGUMENTS HAVE ALL BEEN REJECTED

---

[7] Defendants fault Plaintiffs for not taking more depositions in the 60 day discovery window granted by the Court and insinuate that, by not doing so, Plaintiffs somehow did not comply with the Second Circuit's directions. (Def. Br. at 2 n.2). Nothing could be further from the truth. No additional non-party discovery was needed because Defendants' production of more than 500,000 pages (***after*** Plaintiffs moved for class certification) included "all communications with investors" concerning each of the RALI Offerings and loans and expanded the record sufficiently to reveal the absence of class member "knowledge" of the misstatements. Further, instead of using the 60 day discovery window to confirm this with a few absent class members, Plaintiffs used the time to take 30(b)(6) depositions of the Underwriter Defendants for each of the four Offerings

[8] *See In re Indymac Mortg.-Backed Sec. Litig.*, No. 09 Civ. 4583 (LAK), slip op. (S.D.N.Y. Aug. 17, 2012) (publicly available documents lead to issues of common proof); *Pub. Emps.' Ret. Sys. of Miss. v. Merrill Lynch & Co.*, 277 F.R.D. 97, 119 (S.D.N.Y. Aug. 22, 2011) ("to the extent Defendants argue that actual knowledge can be inferred from the slew of newspaper articles and public reports they have submitted to the Court, this again is an issue subject to generalized proof").

Since the expanded record and shortened class period confirm that there were no "differing levels of knowledge regarding" the underwriting misstatements, much less the required showing that such evidence "outweigh common issues," *Indymac*, slip op. at 22-23, Defendants' are forced to rely on arguments that have been repeatedly rejected as legally insufficient.[9]

First, Defendants assert that the class cannot be certified because the RALI securities were "tailored and sold to highly sophisticated investors in response to specific investor requirements." Def. Br. at 2. This Court found, that even if the securities were "tailored and sold to highly sophisticated investors in individually negotiated transactions," that fact does defeat predominance since it does not disclose the misstatements at issue. *Goldman*, 280 F.R.D. at 137.[10] Second, Defendants argument that class members knew of underwriting misstatements because investors "requested different information," Def. Br. at 3-4, must fail because the fact that investors "requested," for example, that publicly available data[11] be run through a model to predict future performance provides investors no information about the underwriting misstatements and therefore cannot interfere with class certification. *See Indymac*, slip op. at 22-23.[12]

---

[9] *See Indymac,* slip op. (Aug. 17, 2012) (Kaplan, J.); *Tsereteli v. Residential Asset Securitization Trust 2006-A-8,* No. 08 Civ. 10637 (LAK), 2012 U.S. Dist. LEXIS 91017 (S.D.N.Y. June 29, 2012) (Kaplan, J.): *Pub. Emps.' Ret. Sys. of Miss. v. Goldman Sachs Grp., Inc.*, 280 F.R.D. 130 (S.D.N.Y. 2012) (Baer, J.): *Merrill Lynch*, 277 F.R.D. 97 (Rakoff, J.); *N.J. Carpenters Health Fund v. DLJ Mortg. Capital, Inc*., No. 08 Civ. 5653 (PAC), 2011 U.S. Dist. LEXIS 92597 (S.D.N.Y. Aug. 16, 2011) (Crotty, J.).

[10] Defendants' related argument that individually negotiated post-offering transactions interfere with class certification is baseless, as every purchase of a bond or other fixed income security is traded over the counter and thus is "individually negotiated" between seller and purchaser. This fact has not precluded the certification of five identically traded mortgage backed securities class actions recently certified in this district, *see* n.9 above.

[redacted]

Similarly, Defendants' argument that certification must be denied because investors had "varying degrees of knowledge about underwriting practices" and unspecified "face-to-face meetings with originators," Def. Br. at 5, was rejected in *Goldman* because, again, they do not disclose misstatements related to the Offerings or loans at issue. . *Goldman*, 280 F.R.D. at 137-138.[13] Defendants' argument that delinquency rates and rating announcements interfere with class certification, *see* Def. Br. at 6-7, is both legally and factually flawed[14] and has been rejected by every court that considered the issue, including this Court.[15]

Defendants' arguments regarding "cohesiveness," Def. Br. at 8, that the sophistication of class members and the presence of defendants in other MBS cases and investment advisers in the class interfere with class certification have all been rejected. Predominance cannot be defeated based on the sophistication of class members even where they invested "billions" of dollars in mortgage backed securities with knowledge of the "degradation of underwriting standards generally," *Tsereteli*, 2012 U.S. Dist. LEXIS 91017, at *33-34, 38, or where the class "includes leading players in the MBS markets that had knowledge of the lending practices of mortgage originators and knew about . . . underwriting practices." *Merrill Lynch*, 277 F.R.D. at 116-19.[16]

---

[13] Similarly, Judge Rakoff granted certification despite the argument that "the putative class here includes leading players in the MBS markets that had knowledge of the lending practices of mortgage originators and knew about problems with . . . inflated ratings, and loan underwriting practices." *Merrill Lynch*, 277 F.R.D. at 116-119.

[14] This argument is factually flawed as, for three of the four Offerings (2006-Q07, 2007-QS1, and 2007-QH4) the class period cuts off **before** any downgrade takes place. For the 2007-QO4 Offering, the November 16, 2007 downgrade included in the class period is minor, as S&P only drops one tranche from A to A- and a second from BBB+ to BB+, which certainly would not make investors aware of the misstatements. In addition, as discussed above, this was a public revelation and thus would only create common issues for the Class. Of course, as each subclass involved entirely separate offerings, collateral and ratings, "knowledge" from downgrades in one offering cannot not inform investors in the other offerings and subclasses where no downgrades occurred.

[15] As Judge Kaplan recently held, "none of these occurrences provided 'any explanation for why the Certificate's collateral was performing poorly, let alone reveal any connection between poor performance and the abandonment of underwriting practices outlined in the complaint.'" *Tsereteli*, 2012 U.S. Dist. LEXIS 91017, at *38-39 (delinquency reports, ratings downgrades, and trustee reports during the class period do not interfere with class certification). *See also Indymac*, slip op. (publicly available documents lead to issues of common proof); *DLJ*, 2011 U.S. Dist. LEXIS 92597, at *3-4 (rising delinquency and default rates, trustee reports and news reports do not raise individualized issue of knowledge); *Goldman*, 280 F.R.D. at 139 (differences in publicly available information over time does not create individualized issue sufficient to defeat certification); *Merrill Lynch*, 277 F.R.D. at 119 ("to the extent Defendants argue that actual knowledge can be inferred from the slew of newspaper articles and public reports they have submitted to the Court, this again is an issue subject to generalized proof").

[16] *See also Goldman*, 280 F.R.D. at 137 (sophistication insufficient create individualized issue); *DLJ.*, 2011 U.S. Dist. LEXIS 92597, at *21-22 (same).

As to the presence of defendants in other MBS cases in the class, this has nothing to do with knowledge of the misstatements here. Judge Rakoff recently held that "[a]lthough Defendants note that some members of the class, including Morgan Stanley Co., have been sued in connection with their own MBS offerings, this is irrelevant to the Offerings at issue in this case."[17] *Id.* at 118 (emphasis omitted). As to investment advisors, their presence is routine in MBS class actions and does not interfere with certification. *See, e.g., id.* at 116-19 (noting presence of money management units of UBS, WAMCO, Goldman, PIMCO, and JP Morgan when certifying the class).

Defendants' argument regarding superiority is factually meritless.[18] Once the individualized issue of knowledge is eliminated, a class action is superior, a conclusion reached by all MBS class certification decisions in this District. *See supra* at n.9. Defendants' numerosity argument is refuted by the numbers[19] which, as a matter of law, are sufficient for each subclass.[20]

For all the foregoing reasons, the class should be certified.

---

[17] Judge Kaplan also held that lawsuits against putative class members "indicate, at best, that a few prospective class members previously were alleged to have disregarded their own underwriting guidelines" and does not create an individualized issue of knowledge. *Indymac*, slip op. at 25 (emphasis omitted). This Court and Judge Kaplan (in another case) reached the same conclusion when certifying MBS classes which included (either as class members or investment managers to class managers) large banks like UBS, Goldman Sachs, and JP Morgan that are also defendants in other MBS lawsuits. It is highly likely that they also appeared in *DLJ*, but like all the cases, that record is under seal and unlike the other cases, Judge Crotty did not discuss the names of any putative class members in his decision. The logic of these rulings is confirmed by the expanded record here which confirmed that no member of the class, including banks that underwrote unrelated MBS offerings, received nonpublic information about information the RALI Offerings.

[18] First, Defendants have cited no cases where individual class members have brought securities act cases regarding the securities at issue in this case. Whether or not they brought other cases involving other MBS is irrelevant for superiority purposes. As to the $8.7 billion ResCap settlement referred to by Defendants – that settlement specifically *excludes* section 11 claims and so is also irrelevant for superiority purposes. *See* Ex. 10 to the Affidavit of James Whitlinger at § 7.03 *In re Residential Capital, LLC,* No. 12-12020 (Bankr. S.D.N.Y. May 14, 2010), available at http://www.kccllc.net/documents/1212020/1212020120514000000000045.pdf (excluding "direct claims for securities fraud or other disclosure-related claims arising from the purchase or sale of Securities" from settlement).

[19] ▮▮▮▮▮▮▮▮▮▮ *See Indymac,* slip op. at 10-11 (certifying MBS class where 8 of 10 Offering subclasses had more than 40 investors, one had 39 investors, and one had 22 investors, as it "would be impractical to deny certification on the basis that two of the offerings in question did not meet the 40-member presumption level").

[20] The "tranche" argument raised by Defendants was rejected by this Court in its earlier decision.

5

| | |
|---|---|
| Dated: New York, New York<br>August 22, 2012 | Respectfully submitted,<br><br>**COHEN MILSTEIN SELLERS & TOLL PLLC**<br><br>/s/ Michael Eisenkraft<br>_____<br>Joel P. Laitman (JL-8177)<br>Christopher Lometti (CL-9124)<br>Richard A. Speirs (RS-8872)<br>Michael B. Eisenkraft (ME-6974)<br>Daniel B. Rehns (DR-5506)<br>Kenneth M. Rehns (KR-9822)<br>88 Pine Street, 14th Floor<br>New York, New York  10005<br>Telephone:  (212) 838-7797<br><br>Steven J. Toll<br>Joshua S. Devore<br>S. Douglas Bunch (SB-3028)<br>1100 New York Avenue, N.W.<br>West Tower, Suite 500<br>Washington, DC  20005<br>Telephone:  (202) 408-4600<br><br>*Attorneys for Named Plaintiffs* |

# CERTIFICATE OF SERVICE

I, Michael B. Eisenkraft, counsel for Lead Plaintiff New Jersey Carpenters Health Fund, Plaintiff New Jersey Carpenters Vacation Fund, and Plaintiff Boilermaker Blacksmith National Pension Trust, hereby certify that on August 22, 2012, I caused the Reply Memorandum of Law in Support of Lead Plaintiff New Jersey Carpenters Health Fund, Plaintiff New Jersey Carpenters Vacation Fund, and Plaintiff Boilermaker Blacksmith National Pension Trust's Revised Motion for Class Certification; to Certify them as Class Representatives; and to Appoint Cohen Milstein Sellers & Toll PLLC as Class Counsel, to be filed under seal by having it hand-delivered to Room 270, Records Management Unit/Sealed Documents, at 500 Pearl Street pursuant to the rules of the Southern District of New York and sent a copy of such by overnight delivery to the following:

David E. Potter
LAZARE POTTER & GIACOVAS LLP
950 Third Avenue
New York, New York 10022
Telephone: (212) 758-9300
Fax: (212) 888-0919
dpotter@lpgllp.com

Matthew Solum
Kirkland & Ellis LLP
601 Lexington Avenue
New York, New York 10022
Tel: (212) 446-4800
Fax: (212) 446-4900

Jeffrey S. Powell
Daniel T. Donovan
Patrick M. Bryan
655 Fifteenth Street, N.W.
Washington, D.C. 20005
Attorneys for the Defendant Residential Funding Securities Corporation d/b/a GMAC RFC Securities

William G. McGuinness
william.mcguinness@friedfrank.com
Stephanie J. Goldstein

stephanie.goldstein@friedfrank.com
FRIED, FRANK, HARRIS, SHRIVER & JACOBSON LLP
One New York Plaza
New York, New York 10004
Telephone: (212) 859-8000

Attorneys for Defendants Goldman, Sachs & Co., Citigroup Global Markets, Inc. and UBS Securities, LLC

Jeffrey Lipps
lipps@carpenterlipps.com
280 Plaza, Suite 1300
280 North High Street
Columbus, Ohio 43215
Phone: (614) 365-4100
Fax: (614) 365-9145
Attorneys for the Individual RALI Defendants

/s/ Michael Eisenkraft
_____
Michael B. Eisenkraft