UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
:
NEW JERSEY CARPENTERS HEALTH FUND, NEW :
JERSEY CARPENTERS VACATION FUND AND :
BOILERMAKER BLACKSMITH NATIONAL :
PENSION TRUST, *on Behalf of Themselves and All* :
*Others Similarly Situated*, :
:
                                         Plaintiffs, :
:
   v. :
:
RESIDENTIAL CAPITAL, LLC, RESIDENTIAL :
FUNDING, LLC, RESIDENTIAL ACCREDITED : Case No.: 08-CV-8781 (HB)
LOANS, INC., BRUCE J. PARADIS, KENNETH M. :
DUNCAN, DAVEE L. OLSON, RALPH T. FLEES, :
LISA R. LUNDSTEN, JAMES G. JONES, DAVID M. :
BRICKER, JAMES N. YOUNG, RESIDENTIAL :
FUNDING SECURITIES CORPORATION D/B/A :
GMAC RFC SECURITIES, GOLDMAN, SACHS & : **ECF CASE**
CO., RBS SECURITIES, INC. F/K/A/ GREENWICH :
CAPITAL MARKETS, INC. D/B/A RBS :
GREENWICH CAPITAL, DEUTSCHE BANK :
SECURITIES, INC., CITIGROUP GLOBAL :
MARKETS, INC., CREDIT SUISSE SECURITIES :
(USA) LLC, BANK OF AMERICA CORPORATION :
*AS SUCCESSOR-IN-INTEREST TO* MERRILL :
LYNCH, PIERCE, FENNER & SMITH, INC., UBS :
SECURITIES, LLC, JPMORGAN CHASE, INC., *AS* :
*SUCCESSOR-IN-INTEREST TO* BEAR, STEARNS &
CO., INC., AND MORGAN STANLEY & CO., INC.,

                                       Defendants.

-------------------------------------------------------------------x

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF PLAINTIFFS' RULE 54(b) MOTION FOR RECONSIDERATION OF THE COURT'S MARCH 31, 2010 <u>OPINION AND ORDER</u>**

**TABLE OF CONTENTS**

|  |  | Page |
|---|---|---|
| I. | *GOLDMAN* GIVES PLAINTIFFS' STANDING ON FIFTY-FIVE ADDITIONAL OFFERINGS | 1 |
| | A. The Undisputed Facts: Defendants Concede That At Least Six Offerings Must Return To the Case Under *Goldman* | 1 |
| | B. Defendants Cannot Dispute That All RALI MBS Offerings Shared Common Originators, Misstatements, and Omissions As Required By *Goldman* | 2 |
| |     1. The RALI Offerings Raise the Same Set of Concerns as in *Goldman* | 3 |
| |     2. Two Shelf Registration Statements for the Same Types of MBS Offerings Does Not Trigger a Different "Set of Concerns" | 4 |
| |     3. Changing Risk Disclosures and Differences in Underlying Collateral Provide No Basis for Dismissal Under *Goldman* | 6 |
| II. | NEITHER THE PETITION FOR *CERTIORARI* IN *GOLDMAN* NOR THE BANKRUPTCY OF RESIDENTIAL CAPITAL PROVIDES ANY BASIS FOR A STAY | 8 |
| | A. The Chapter 11 Proceeding Provides No Basis For A Stay | 10 |
| III. | CONCLUSION | 10 |

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Am. Shipping Line, Inc. v. Massan Shipping Indust.*,
  885 F. Supp. 499 (S.D.N.Y. 1995)......................................................................................9

*Arden Way Assocs. v. Boesky*,
  660 F. Supp. 1494 (S.D.N.Y. 1987)....................................................................................9

*In re Bear Stearns Mortg. Pass-Through Certificates Litig.*
  851 F. Supp. 2d 746 (S.D.N.Y. 2012 )................................................................................7

*Consol. Edison Co. v. United States*,
  30 F. Supp. 2d 385 (S.D.N.Y. 1998)...................................................................................9

*Exp.-Imp. Bank of the U.S. v. Hi-Films S.A. de C.V.*,
  No. 09 Civ. 3573 (PGG), 2010 WL 3743826 (S.D.N.Y. Sept. 24, 2010) ...........................9

*Fort Worth Emps.' Ret. Fund v. J.P. Morgan Chase & Co.*,
  No. 09-cv-3701 (JPO) (S.D.N.Y. Nov. 29, 2012) ..............................................................9

*In re Lamictal Direct Purchaser Antitrust Litig.*
  No. 12-995 (WHW), 2012 WL 5267081 (D.N.J. Oct. 23, 2012) .......................................8

*Landis v. N. Am. Co.*,
  299 U.S. 248 (1936)............................................................................................................8

*Moeller v. Bradford Cnty.*,
  No. 3:CV-05-0334, 2007 WL 431889 (M.D. Pa. Feb. 5, 2007).........................................8

*NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*,
  693 F.3d 145 (2d Cir. 2012)...................................................................................... *passim*

*N.J. Carpenters Vacation Fund v. Royal Bank of Scot. Grp., PLC*,
  720 F. Supp. 2d 254 (S.D.N.Y. 2010).................................................................................7

*Nken v. Holder*
  556 U.S. 418 (2009)............................................................................................................8

*Ortega v. Reno*,
  No. 99-CIV-4512 HB DFE, 2000 WL 1877075 (S.D.N.Y. Dec. 27, 2000).....................10

*Plumbers' & Pipefitters' Local No. 562 Supplemental Plan & Trust v. J.P. Morgan
  Acceptance Corp. I*,
  No. 08-cv-01713(ERK)(WDW), 2012 WL 4053716 (E.D.N.Y. Sept. 14, 2012) ..............1

*Ret. Fund. v. J.P. Morgan Chase & Co.*,
    No. 09-cv-3701 (JPO) (S.D.N.Y. Nov. 29, 2012) ...................................................................9

*Sierra Rutile, Ltd. v. Katz,*
    937 F.2d 743 (2d Cir. 1991) ....................................................................................................8

*Teachers Ins. & Annuity Ass'n v. Butler*,
    803 F.2d 61 (2d Cir. 1986)....................................................................................................10

I.  *GOLDMAN* **GIVES PLAINTIFFS' STANDING ON FIFTY-FIVE ADDITIONAL OFFERINGS**

   A. **The Undisputed Facts:  Defendants Concede That At Least Six Offerings Must Return To the Case Under *Goldman***

Contrary to Defendants' contention that reconsideration is not warranted, as discussed at length in Plaintiffs' opening brief, the Second Circuit's decision in *NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*, 693 F.3d 145 (2d Cir. 2012) ("*Goldman*") constitutes a fundamental change in controlling law on standing in mortgage-backed securities ("MBS") class actions exactly like this one that requires reconsideration of the Court's decision on the motion to dismiss.  *See* Pls. Op. Br.[2] at 9-10.[3]  Defendants recognize this when they do not dispute that Plaintiffs had standing to assert claims on behalf of investors in seven of the previously dismissed offerings: RALI 2006-QS8, RALI 2006-Q05, RALI 2006-QS7, RALI 2006-QS15, RALI 2007-QH5, RALI 2007-QH6, and RALI 2007-QS5.  *See* Ex. 1 (chart listing Defendants' challenges to each of the Offerings at issue).[4]  Therefore, at the very least, binding Second Circuit precedent requires that these eight Offerings be reinstated.  The only disputes here are: (1) whether *Goldman* mandates that the other offerings be restored to the case as well and (2) whether this Court should stay this case in light of the pending petition for *certiorari* to the Supreme Court and pending bankruptcy of certain defendants.

---

[1]  "Pls. Op. Br." refers to the Memorandum of Law in Support of Lead Plaintiff's Rule 54(b) Motion for Reconsideration of this Court's March 31, 2010 Ruling on Defendants' Motion to Dismiss Based on an Intervening Change in Controlling Law (ECF No. 193).

[2]  "Pls. Op. Br." refers to the Memorandum of Law in Support of Lead Plaintiff's Rule 54(b) Motion for Reconsideration of this Court's March 31, 2010 Ruling on Defendants' Motion to Dismiss Based on an Intervening Change in Controlling Law (ECF No. 193).

[3]  The significance of this change in the law has already been recognized by Judge Korman who *sua sponte* altered his previous order dismissing certain MBS offerings on standing grounds and asked for the parties to identify which offerings were appropriate to bring back in that case under *Goldman*. *Plumbers' & Pipefitters' Local No. 562 Supplemental Plan & Trust v. J.P. Morgan Acceptance Corp. I*, No. 08-cv-01713(ERK)(WDW), 2012 WL 4053716 (E.D.N.Y. Sept. 14, 2012).  Identical considerations apply here and reconsideration should be granted.  Defendants cite to Judge Kaplan's orders in *In re Lehman Bros.,* No. 09-MD-2017, slip op. at 1 and *In re IndyMac*, No. 09-CV-4583, slip op. at 1, Defs. Br. at 14, to support their argument that reconsideration should not be granted.  However, Judge Kaplan's order provides no support for denying reconsideration here as it simply temporarily denied those motions for reconsideration without prejudice to renew at a later date after the Supreme Court acts on the *Goldman certiorari* petition.

[4]  Ex. __ refers to Exhibits to the Eisenkraft Declaration in Support of Plaintiffs' Motion For Reconsideration.

### B. Defendants Cannot Dispute That All RALI MBS Offerings Shared Common Originators, Misstatements, and Omissions As Required By *Goldman*

Defendants do not dispute that all fifty-nine Offerings in this case shared common originators for the underlying mortgage collateral. Pls. Op. Br. at 6-8. Indeed, Homecomings Financial alone originated loans in no fewer than fifty-seven offerings. *Id.* Nor do Defendants dispute that the offering documents in this Action all contained similar misrepresentations and omissions regarding the Defendants' disregard of underwriting guidelines. *Id.* at 9. On these facts alone, standing for all dismissed Offerings is appropriate.

*Goldman* is clear on the paramount importance of both these factors as it held that the commonality of originators and the similarity of the misrepresentations and omissions created the underlying basis for "class standing." *Goldman* 693 F.3d at 148-149. ("We hold that plaintiff has class standing to assert the claims of purchasers of certificates backed by mortgages originated by the same lenders that originated the mortgages backing plaintiff's certificates, because such claims implicate 'the same set of concerns' as plaintiff's claims."). The "same set of concerns" depends upon "the nature and content of the specific misrepresentation alleged." *Id.* at 162. Those factors are precisely what Plaintiffs have presented on this motion and nothing more is necessary to establish Plaintiffs standing to represent similarly situated investors in the fifty-five offerings previously dismissed. Those Offerings should be reinstated to the case without delay.

In an attempt to blunt *Goldman*, Defendants' opposition presents several arguments which ignore *Goldman*'s holding, distort liability standards under Section 11, or improperly dispute factual allegations. In short, Defendants' argue, without any authority, that the determination of standing under *Goldman*, requires the Court to consider which of the Defendants underwrote the Offering, what risk disclosures may have appeared in certain Offering Documents, the timing of the Offerings issued pursuant to the Shelf Registration Statements, and the underlying collateral for each offering. Those considerations are beyond the Second Circuit's holding in *Goldman* and irrelevant to *Goldman*'s analysis.

2

### 1. The RALI Offerings Raise the Same Set of Concerns as in *Goldman*

Defendants challenge Plaintiffs' ability to represent 24 Offerings under *Goldman*, premised solely on the fact that some of the additional offerings involve a group of underwriters different from those who participated in the offerings in which Plaintiffs purchased.[5] Defs. Br. at 15-16; Ex. 1. In doing so, Defendants try to create a requirement for class standing that *Goldman* did not recognize and the Second Circuit did not adopt: that there must be "the same limited group of affiliated defendants," *id.*, in order to establish standing. In fact, nowhere in *Goldman* did the court suggest that Plaintiffs' standing across multiple offerings was tied to a requirement that there be a limited group of affiliated Defendants.[6] The principles for establishing the standing of a class representative to represent other investors in an MBS class action are clear: i) the presence of common originators across offerings; and ii) the existence of common misrepresentations and omissions in the offering documents. *Goldman* 693 F.3d at 163-64. Both of those criteria are clearly met here, and the presence of some different underwriters does not change the result that these offerings belong in the case.[7]

As set forth in Plaintiffs' opening brief at pages 6-8, there are common originators across all RALI MBS offerings, including 57 offerings in which Homecomings was an originator. Defendants have not disputed that fact nor have they disputed the principle that the commonality of originators provides the necessary link across offerings. *See Goldman*, 693 F.3d at 163.

---

[5] Plaintiffs purchased in various offerings in which UBS, Citigroup, Goldman Sachs & Co., GMAC/RFC Securities, Lehman Brothers and Deutsche Bank AG ("DB") served as underwriters. *See* Pls. Op. Br. at 6; FAC ¶¶ 27-28. However, Defendants challenge whether Plaintiffs purchased from DB on the offering and seek to have six offerings dismissed that DB underwrote asserting that Plaintiffs' claim was time-barred. Defs. Br. at 15 n.6. Regardless of the resolution of the statute of repose issue, under *Goldman*, Lead Plaintiff had standing when the Action was filed.

[6] Although the Second Circuit noted that the same group of defendants was involved in the issuance of the misleading offering documents, the standing analysis was not dependent on that fact but, rather, was driven by the common originators and similar misleading statements in each of the offerings. *Goldman* 693 F.3d at 163-64. Indeed, here, virtually all the Defendants are the same in each offering with only some variation as to the underwriter and, all Defendants regardless of the offering, participated in disseminating offering documents with the same or similar misrepresentations and omissions relating to common originators.

[7] Defendants also challenge standing on two offerings underwritten by Lehman for no reason other than it was a different underwriter. They do not dispute that one of the named plaintiffs purchased in a Lehman offering. Pls. Op. Br. at 6.

("differences in the identity of the originators backing the Certificates matters for the purposes of assessing whether those claims raise the same set of concerns.").

Also, the "same sets of concerns" which "depend on the nature and content of the specific misrepresentations alleged" have been demonstrated here. Defendants do not dispute the FAC's allegations of "similar or identical" false and misleading statements and omitted facts for all 59 offerings in the case – including those in both Registration Statements and the Prospectus Supplements. FAC ¶¶ 205-32. Despite Defendants' arguments to the contrary, Defs. Br. at 15-16, *Goldman* sets no requirement that the identity of the underwriter must be considered in the standing analysis, or that all underwriters for all offerings must be identical.

Defendants' further argument that there is no class standing because no Plaintiff purchased directly from certain of the underwriters must be rejected as it is both an incorrect reading of *Goldman,* and improperly imposes a privity requirement on Section 11 claims which otherwise does not exist. First, in *Goldman,* the Second Circuit clearly rejected any notion that there had to be a purchaser in every offering in order to have class standing against a group of Section 11 defendants. That was the reason for the appeal in the first instance in *Goldman* as plaintiffs did not buy in all the offerings, yet *Goldman* confers standing on plaintiffs whether they bought in a particular relevant offering or not.

Second, Section 11 liability is simply premised on an investor having purchased the security pursuant to the misleading registration statement at issue, imposing liability on a broad swath of participants in the offering. *Goldman* 693 F.3d at 156. Unlike Section 12, there is no privity requirement to establish liability under Section 11. *Id. Goldman* simply establishes that in an MBS class action involving multiple defendants, Plaintiff can represent class members who purchased in other offerings (which may or may not include other underwriters) so long as there are identical or similar misrepresentations and omissions.

### 2. Two Shelf Registration Statements for the Same Types of MBS Offerings Does Not Trigger a Different "Set of Concerns"

Defendants' argument that the presence of two Shelf Registration Statements in the case alters the class standing analysis under *Goldman*, Defs. Br. at 16-18, also fails as the two Registration Statements at issue contain identical misleading misstatements and omissions and Plaintiffs bought securities under **both** Registration Statements. Once again, Defendants ignore *Goldman* and premise their argument on an underwriter centric approach, suggesting that purchases made by Plaintiffs in offerings under the 2007 Registration Statement from RFSC[8] does not give them "class standing to assert claims against RFSC" for offerings it underwrote on the 2006 Registration Statement.[9] *Id.* at 17. This argument misses the point. First, it ignores the fact that certain Plaintiffs did, indisputably, purchase MBS issued under the 2006 Registration Statement, Pls. Op. Br. at 6, and otherwise satisfy the *Goldman* criteria. Thus, based on the commonality of originators and similarity of misstatements and omissions, Plaintiffs have standing to bring claims for all 42 offerings under the 2006 Registration Statement.

Second, recognizing that the two Registration Statements are identical, Defendants instead argue that because *Goldman* involved only one registration statement, the existence of two in this case requires denial of Plaintiffs' motion.[10] However, not only are the misrepresentations and omissions in the Registration Statements identical for purposes of the *Goldman* analysis, but at least one of the named Plaintiffs purchased on an Offering issued under each Registration Statement.[11] Pls. Op. Br. at 6. Thus, Plaintiffs have standing for each set of

---

[8]   Defendants do not dispute that these purchases give Plaintiffs standing on the 2007 Registration Statement.

[9]   Defendants make the same argument as to Goldman Sachs. Defs. Br. at 18. However, as Defendants concede, Def. Br. at 18 n. 8, one of the Intervenor-Plaintiffs purchased on the 2006 Registration Statement (as did other Intervenor Plaintiffs) which is sufficient to confer standing.

[10]   The Second Circuit's decision in *Goldman* calls into question Judge Cedarbaum's decision (which Defendants rely on) not to take as a related case another MBS class action involving a different registration statement. Judge Cedarbaum did not consider the *Goldman* factors in rendering that decision. *See* Defs. Br. at 17; *Pub. Emps. Ret. Sys. of Miss. v. Goldman Sachs Grp. Inc.,* No. 09-cv-1110 (S.D.N.Y.).

[11]   To the extent certain Underwriter Defendants do not believe there is a claim against them in particular because the named Plaintiff did not purchase directly from them, this does not alter the fact that Plaintiffs otherwise have standing on the Offerings under Section 11 and *Goldman*. Any Defendant can move for summary judgment if they feel it is appropriate.

offerings under the separate Registration Statements as the document in which the misrepresentation appears does not raise "fundamentally different concerns."[12]

Moreover, Plaintiffs' purchases in offerings underwritten by Goldman and RFCS pursuant to the 2006 Registration Statement implicates the same originators and same set of concerns as purchases made by class members in the offerings issued pursuant to the 2007 Registration Statement (and vice versa). Not only were the originators common to those two Registration Statements, but the critical misrepresentations and omissions were also *identical* in both Registration Statements. Defendants' argument that different offering documents precludes class standing was specifically rejected in *Goldman*:

> The fact that those [identical] representations appeared in separate Offering Documents . . . does not by itself raise "a number of fundamentally different concerns,". . . because the location of the representations has no effect on a given purchaser's assertion that the representation was misleading. . . ."

*Goldman,* 693 F.3d at 162-63 (citation omitted).

### 3. Changing Risk Disclosures and Differences in Underlying Collateral Provide No Basis for Dismissal Under *Goldman*

Defendants' remaining arguments against Plaintiffs' standing are unsupportable and irrelevant to the standing assessment. Simply put, the Second Circuit in *Goldman* concerned itself with providing a guiding set of principles to determine standing of a class representative to represent other MBS investors. Unfortunately for Defendants, those principles do not consider risk disclosures, differences in the underlying collateral, or differences in origination guidelines relevant to the standing inquiry. *See id.* at 148-49.

Thus, the mere existence of certain different risk disclosures in later issued Prospectus Supplements, (Defs. Br. at 18-19), is simply not a standing issue and outside the guidance provided by *Goldman*. In fact, *Goldman* **rejected** Defendants' argument as the disclosures in the

---

[12] Defendants similarly argue, Def. Br. at 16, n.7, that one named Plaintiff, Boilermaker Blacksmith National Pension Trust ("Boilermakers"), is not a member of the subclass so there is no standing for other offerings underwritten by RFCS and UBS. Besides again wrongly arguing the lack of standing is premised on who the underwriter is, standing did in fact exist based on *Goldman* and the Boilermakers' purchase at the time of the court's decision on the motion to dismiss. What may happen on the class motion currently under reconsideration, is irrelevant to this motion which involves reconsideration of a motion to dismiss.

various Prospectus Supplements (in that case) varied significantly amongst the different Offerings, with later Prospectus Supplements including additional warnings.

For instance, the GSAA 2007-10 Prospectus Supplement contained risk disclosures not contained in the GSAA 2007-3 Prospectus Supplement, including the disclosure that "[i]n recent months, in response to increased delinquencies and losses with respect to mortgage loans, many mortgage loan originators have implemented more conservative underwriting criteria for loans, particularly in the subprime, Alt-A and other nonprime sectors." *Compare* Ex. 2 at S-22 (GSAA 2007-10 Prospectus Supplement) with Ex. 3 (GSAA 2007-3 Prospectus Supplement). If this risk disclosure had no bearing on class standing in *Goldman*, the minor, irrelevant addition cited to by Defendants in the instant case certainly could not.

Further, as this and other courts have held, these so-called risk disclosures do not change the nature of the misrepresentations and omissions regarding the disregard of underwriting guidelines as required by *Goldman*.[13] As *Goldman* clearly focuses on the link among common misrepresentations and omissions, these so-called risk disclosures do nothing to negate Plaintiffs' standing to represent other MBS investors.

Defendants further suggest that standing cannot be found because the securities sold in the Offerings were backed by "vastly different types of mortgages" using different underwriting guidelines over an expansive period of time. Defs. Br. at 3-4. This argument misses the point. In fact, the Second Circuit's decision in *Goldman* illustrates the baselessness of Defendants' argument. Goldman allowed five previously dismissed offerings into the *Goldman* case. As reflected in Exhibit 4, the seven total offerings in *Goldman* contained different types of collateral including home equity loans, Alt-A mortgages, fixed rate mortgages and variable rate loans all with varying underwriting guidelines. *Id.* Moreover, those offerings occurred over a period of 8

---

[13] *See N.J. Carpenters Vacation Fund v. Royal Bank of Scot. Grp., PLC*, 720 F. Supp. 2d 254, 267-69 (S.D.N.Y. 2010) (Baer, J.) (discussing how the risk disclosures "did not indicate … that mortgage originators like Countrywide would disregard even the most minimum of the stated guidelines" and rejecting a defense based on adequate disclosures); *In re Bear Stearns Mortg. Pass-Through Certificates Litig.*, 851 F. Supp. 2d 746, 768-69 (S.D.N.Y. 2012 ) ("[n]o language in the Offering Documents disclosed" disregard of underwriting standards, among other things).

months, negating any suggestion that *Goldman* requires some temporal limit when considering the question of standing. In short, these facts emphasize further that the two paramount criteria in assessing standing are the link created by common originators and the similarity of misrepresentations and omissions in the relevant offering documents.

## II. NEITHER THE PETITION FOR *CERTIORARI* IN *GOLDMAN* NOR THE BANKRUPTCY OF RESIDENTIAL CAPITAL PROVIDES ANY BASIS FOR A STAY

Defendants are asking this Court to disregard recent, binding Second Circuit precedent and stay this case, which has been ongoing since 2008, because of the mathematically tiny[14] possibility that the Supreme Court could grant review of *Goldman*.

According to long-established Supreme Court rulings, cases should rarely be stayed, even when the proponent shows clear hardship. "Only in **rare circumstances** will a litigant in one cause be compelled to stand aside while a litigant in another settles the rule of law that will define the rights of both." *Landis v. N. Am. Co.*, 299 U.S. 248, 255 (1936) (emphasis added).[15] As set forth below, Defendants failed to carry their "heavy burden" of showing that such an action is necessary when Plaintiffs will unquestionably be harmed by the imposition of a stay. As such, their request should be denied. When considering whether to stay proceedings, a district court may consider the following factors:

> (1) the private interests of the plaintiffs in proceeding expeditiously with the civil litigation as balanced against the prejudice to the plaintiffs if delayed; (2) the private interests of and burden on the defendants; (3) the interests of the courts;

---

[14] The tiny odds of the Supreme Court granting *certioriari*, and reversing the Second Circuit's decision provide an additional reason not to stay this case. In denying the request for a stay in *In re Lamictal Direct Purchaser Antitrust Litigation*, No. 12-995 (WHW), 2012 WL 5267081, at *2 (D.N.J. Oct. 23, 2012), the Supreme Court noted it "receives approximately 10,000 petitions for review and hears only about 75-80 cases," therefore the "possibility that the Supreme Court will grant certiorari and alter the legal framework" is "remote at this juncture." If stays were granted merely based on Supreme Court petitions and speculation about what the Supreme Court might do, there would be a "needless backlog of cases … in light of the possibility that the Supreme Court, some day, may issue a future decision which might affect the outcome." *Moeller v. Bradford Cnty.*, No. 3:CV-05-0334, 2007 WL 431889, at *2 (M.D. Pa. Feb. 5, 2007) (denying stay request).

[15] *See also Nken v. Holder*, 556 U.S. 418, 433-34 (2009) ("[t]he party requesting a stay bears the burden of showing that the circumstances justify an exercise of that discretion") (citing *Landis*, 299 U.S. at 255)); *Sierra Rutile, Ltd. v. Katz*, 937 F.2d 743, 750 (2d Cir. 1991) ("the movant bears a heavy burden of showing necessity for the stay").

8

(4) the interests of persons not parties to the civil litigation; and (5) the public interest.

*Exp.-Imp. Bank of the U.S. v. Hi-Films S.A. de C.V.*, No. 09 Civ. 3573 (PGG), 2010 WL 3743826, at * 11 (S.D.N.Y. Sept. 24, 2010). The court balances these factors "with the central focus of avoiding prejudice." *Consol. Edison Co. v. United States*, 30 F. Supp. 2d 385, 389 (S.D.N.Y. 1998). All these factors support Plaintiffs moving forward with their claims. Plaintiffs brought suit in May of 2008 and a stay would be substantially prejudicial to Plaintiffs. In addition to the financial hardship of having to postpone any recovery, the memories of witnesses continue to fade, additional evidence may be lost as mortgage originating businesses have failed and, as yet, there have no substantive depositions taken in this case.[16] In this case, justice delayed could well be justice denied, which certainly would go against the public interest.[17]

As the case will certainly go forward at least in part based on the Offerings already in the case regardless of what occurs in *Goldman*, staying the case would not conserve judicial resources; it would only delay and prolong the expenditure of those resources.[18] Moreover, even if the Supreme Court did grant review and even if it did reverse *Goldman*, that would have no impact on the already-certified classes in this case. All these factors are probably why no Court in this Circuit has granted petitions to stay in light of the certiorari petition in *Goldman*. *See, e.g.,* Order, *Fort Worth Emps.' Ret. Fund. v. J.P. Morgan Chase & Co.*, No. 09-cv-3701 (JPO) (S.D.N.Y. Nov. 29, 2012) (denying, in mortgage-backed securities case, "Defendants' motion for a temporary stay pending Supreme Court review of the Second Circuit's ruling" in *Goldman*

---

[16] *See, e.g., Exp.-Imp. Bank*, 2010 WL 3743826, at *12 (plaintiffs have "strong interest" in proceeding with litigation); *Am. Shipping Line, Inc. v. Massan Shipping Indust.*, 885 F. Supp. 499, 503 (S.D.N.Y. 1995) ("In all cases, a delay in the proceedings creates the danger that evidence may be lost.").

[17] *See Arden Way Assocs. v. Boesky*, 660 F. Supp. 1494, 1500 (S.D.N.Y. 1987) (denying motion to stay and noting that "the public interest in the integrity of securities markets militates in favor of the efficient and expeditious prosecution of these civil litigations").

[18] As a general rule: "a court's interest is usually best served by discouraging motions to stay. . . . Courts have an interest in managing their cases and efficiently resolving litigation." *Exp.-Imp. Bank*, 201WL 3743826, at *13. This case is no exception.

"without prejudice to renewal if the Supreme Court either grants the petition for certiorari or issues a Call for the Views of the Solicitor General.").[19]

### A. The Chapter 11 Proceeding Provides No Basis For A Stay

In addition to relying on speculation that a petition for *certiorari* **might** be granted by the Supreme Court in the *Goldman* case, Defendants also argue that a complete stay is warranted by Residential Capital's pending bankruptcy proceeding. This argument is without merit. First, the temporary stay agreed to in the Chapter 11 proceeding that Defendants' reference, Defs. Br. at 11-12, was extended to certain non-debtor related entities only through January 31, 2013 and is limited in scope.[20] This action has continued to proceed under the terms of the Stipulation, but will expire by its own terms in a few weeks. Second, the Underwriter Defendants' principal support for this argument, that the bankruptcy stay limits their ability to take discovery of entities related to the debtor is illusory. Given the current posture of this case, the temporary stay will likely expire by the time discovery in this case begins on any additional offerings and, in any event, will have no bearing on further class certification proceedings. Finally, the law is clear that a bankruptcy stay applicable to one defendant does not stay pending litigation against the remaining defendants.[21] Because neither the Chapter 11 proceeding nor the Stipulation provides a valid basis for staying this case, Defendants' motion should be denied.

### III. CONCLUSION

For the reasons stated here the Court should grant Plaintiffs' Motion for Reconsideration and reinstate those claims related to the fifty-five previously dismissed offerings.

---

[19] Even the decisions by Judge Kaplan, cited by Defendants in support of their argument, did not stay the entire action – instead, they merely postponed the reconsideration motion until the Supreme Court decides the certiorari questions. Defendants can only point to a single case – *Ortega v. Reno*, No. 99-CIV-4512 HB DFE, 2000 WL 1877075 (S.D.N.Y. Dec. 27, 2000) where a ruling was delayed where a petition for writ of certiorari was pending before that Supreme Court – and that case involved completely different facts and potential prejudice then the instant case, as the stay was entered in favor of an individual who was seeking a stay of his deportation.

[20] The Stipulation providing for a partial stay to non-debtor affiliates, attached here as Ex. 5, is not a complete stay and allows certain aspects of this case to continue, including class certification proceedings.

[21] *Teachers Ins. & Annuity Ass'n v. Butler*, 803 F.2d 61, 67 (2d Cir. 1986) (automatic stay does not extend to non-debtor defendants).

Dated: New York, New York

December 14, 2012

        Respectfully submitted,

        **COHEN MILSTEIN SELLERS & TOLL PLLC**

        By:/s/ Joel P. Laitman
        Joel P. Laitman (JL-8177)
        Christopher Lometti (CL-9124)
        Richard A. Speirs (RS-8872)
        Michael B. Eisenkraft (ME-6974)
        Daniel B. Rehns (DR-5506)
        Kenneth M. Rehns (KR-9822)
        88 Pine Street, 14th Floor
        New York, New York 10005
        Telephone: (212) 838-7797
        Facsimile: (212) 838-7745
        *jlaitman@cohenmilstein.com*
        *clometti@cohenmilstein.com*
        *rspeirs@cohenmilstein.com*
        *meisenkraft@cohenmilstein.com*
        *drehns@cohenmilstein.com*
        *krehns@cohenmilstein.com*

        Steven J. Toll
        Joshua S. Devore
        S. Douglas Bunch
        1100 New York Avenue, NW
        West Tower, Suite 500
        Washington, DC 20005
        Telephone: (202) 408-4600
        Facsimile: (202) 408-4699
        stoll@cohenmilstein.com
        jdevore@cohenmilstein.com
        dbunch@cohenmilstein.com
        *Attorneys for Lead Plaintiff New Jersey Carpenters Health Fund*

# **CERTIFICATE OF SERVICE**

I, Michael B. Eisenkraft, counsel for Plaintiffs, hereby certify that on December 14, 2012, I caused the above Reply Memorandum Of Law In Further Support Of Plaintiffs' Rule 54(B) Motion For Reconsideration Of The Court's March 31, 2010 Opinion And Order to be filed and served by filing it on this Court's Electronic Filing System and sent an additional copy via electronic mail to Defendants' Counsel.

/s/ Michael Eisenkraft
Michael B. Eisenkraft

1664471.1