```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
NEW JERSEY CARPENTERS HEALTH FUND,           :
NEW JERSEY CARPENTERS VACATION FUND          :
And BOILERMAKER BLACKSMITH NATIONAL          :
PENSION TRUST, on Behalf of Themselves and All :
Others Similarly Situated,                   :
                                             :
                        Plaintiffs,          :
                                             :       08 CV 8781 (HB)
        - against -                          :
                                             :
RESIDENTIAL CAPITAL, LLC, et al.,            :
                                             :
                        Defendants.          :
                                             :
------------------------------------------------------------------------x   OPINION AND ORDER
NEW JERSEY CARPENTERS VACATION FUND          :
And BOILERMAKER BLACKSMITH NATIONAL          :
PENSION TRUST, on Behalf of Themselves and All :
Others Similarly Situated,                   :
                                             :
                        Plaintiffs,          :
                                             :       08 CV 5093 (HB)
        - against -                          :
                                             :
THE ROYAL BANK OF SCOTLAND GROUP, PLC,       :
et al.,                                      :
                                             :
                        Defendants.          :
------------------------------------------------------------------------x
```

**Hon. Harold Baer, Jr., District Judge:**

  Before this Court is a motion submitted by Defendants in two cases, 08 Civ. 5093 (the "Harborview" case) and 08 Civ. 8781 (the "RALI" case) (respectively, "Harborview Defendants" and "RALI Defendants") to dismiss Intervenors' claims under Section 11 of the Securities Act of 1933 (the "1933 Act"), 15 U.S.C. §§ 77k. RALI Defendants also move for a temporary stay of the proceedings. In turn, Plaintiffs in both cases move the Court to reconsider the Court's prior Orders dismissing their claims with respect to offerings they did not purchase and to modify the class definitions adopted in the October 15, 2012 Order. For the reasons set forth below, Defendants' motion to dismiss, RALI Defendants' motion to stay, and Plaintiffs' motion to reconsider are all DENIED. Plaintiffs' application for the modification of class definition in both cases is GRANTED.

1

**Background**

In both cases, Plaintiffs assert claims under Sections 11, 12(a)(2) and 15 of the Securities Act of 1933, 15 U.S.C. §§ 77k, 77*l*(a)(2) & 77o, alleging that Defendants made false and misleading statements in the offering documents of certain mortgage-backed securities ("MBS"). Further background regarding the creation and sale of the securities at issue is available in my prior Opinions, familiarity with which is presumed. *See, e.g., N.J. Carpenters Health Fund v. Residential Capital, LLC*, No. 08 Civ. 8781, 2010 WL 1257528, (S.D.N.Y. Mar. 31, 2010); *N.J. Carpenters Vacation Fund v. Royal Bank of Scot. Group, PLC*, No. 08 Civ. 5093, 2010 WL 1172694 (S.D.N.Y. Mar. 26, 2010). Defendants' present motion to dismiss and Plaintiffs' motion to reconsider arise out of the Court's prior dismissal of certain offerings and permission for intervention.

The RALI Certificates were issued in a series of 59 different offerings in the period between March 2006 to October 2007, while the Harborview Certificates were sold in a series of 15 different offerings between April 26, 2006, and October 1, 2007. Plaintiffs originally asserted claims based on all 59 offerings in the RALI case and all 15 offerings in the Harborview case, even though they had purchased certificates in only some of the offerings. In March 2010, I found that Plaintiffs had standing only with respect to the specific offerings whose certificates they had purchased and dismissed all but the claims based on two Harborview offerings and four RALI offerings. *N.J. Carpenters Vacation Fund v. Royal Bank of Scot. Grp., PLC*, 720 F. Supp. 2d 254, 266 (S.D.N.Y. 2010); *N.J. Carpenters Health Fund v. Residential Capital, LLC*, No. 08 Civ. 8781, 2010 WL 1257528, at *4 (S.D.N.Y. Mar. 31, 2010).

Approximately four months later, in July 2010, Laborers' Pension Fund and Health and Welfare Department of the Construction and General Laborers' District Counsel, Midwest Operating Engineers Pension Trust Fund, and Iowa Public Employees' Retirement System (collectively, "Harborview Intervenors") filed motions to intervene in the Harborview case under Fed. R. Civ. P. 24, asserting claims based on six Harborview offerings which had been dismissed. Similarly, in the RALI case, Iowa Public Employees Retirement System, Midwest Operating Engineers Pension Trust Fund, Orange County Employees Retirement System, and Police and Fire Retirement System of the City of Detroit (collectively, "RALI Intervenors") filed motions to intervene based on six dismissed offerings.[1]

I granted these motions to intervene in December 2010, which effectively revived the claims based on some of the dismissed offerings. *N.J. Carpenters Health Fund v. Residential Capital, LLC*, Nos. 08 Civ. 8781 & 08 Civ. 5093, 2010 WL 5222127, at *7 (S.D.N.Y. Dec. 22, 2010). At that time, I declined to rule on whether Intervenors' claims were time-barred and invited Defendants to

---

[1] Mississippi Public Employees' Retirement System also filed a motion to intervene, but it was subsequently dismissed from the action. *See N.J. Carpenters Health Fund v. Residential Capital, LLC*, Nos. 08 Civ. 8781 & 08 Civ. 5093, 2011 WL 2020260 (S.D.N.Y. May 19, 2011).

raise those challenges upon the resolution of the class certification process. *Id*. at *6. The complaints in both cases were subsequently consolidated and amended in January 2011 to name Intervenors also as Plaintiffs.

I denied class certification in both cases in an Opinion and Order of January 18, 2011, but permitted Plaintiffs to submit an amended motion following the Second Circuit's Summary Order affirming my denial of certification. *N.J. Carpenters Health Fund v. Residential Capital, LLC*, 272 F.R.D. 160 (S.D.N.Y. 2011), *aff'd*, 477 Fed.Appx. 809 (2d Cir. 2012). Persuaded by Plaintiffs' amended motion that narrowed the class and expanded the record, I ultimately granted class certification in both cases but further narrowed Plaintiffs' proposed class to purchasers who bought the security on the date of offering directly from the issuers. *N.J. Carpenters Health Fund v. Residential Capital, LLC*, Nos. 08 Civ. 8781 & 08 Civ. 5093, 2012 WL 4865174 (S.D.N.Y. Oct. 15, 2012). Raising their concerns about the workability of the new class definitions, Plaintiffs moved to modify in a letter motion on October 22, 2012, and I invited the parties in both cases to propose new definitions limited to the purchase timing issue. The proposed class definitions are also considered below.

## Discussion
### A. Defendants' Motion to Dismiss Intervenors' Section 11 Claims

The relevant portion of Section 13 of the 1933 Act reads as follows: "In no event shall any action be brought to enforce a liability created under [Section 11] of this title more than three years after the security was bona fide offered to the public . . . ." 15 U.S.C. § 77m. In both cases, the parties do not dispute that the motions to intervene were filed in July 2010, more than three years after the alleged offering dates in 2006 or early 2007. It is also not disputed that the claims regarding the offerings at issue were asserted either in the initial complaints, filed in May 2008 in the Harborview Case and in September 2008 in the RALI Case, or in the First Amended Complaints filed in May 2009, even though they were dismissed on standing grounds. Rather, Plaintiffs argue that Intervenors' claims are not time-barred because either the tolling principle set forth in *American Pipe & Construction Co. v. Utah*, 414 U.S. 538 (1974) or the relation back provision in Fed. R. Civ. P. 15(c) applies, while Defendants urge the Court to hold that neither is inapplicable because Section 13 is a statute of repose. Because I find that *American Pipe* applies for the reasons set forth below, I need not reach the relation back issue.

In *American Pipe*, the Supreme Court considered the relationship between a statute of limitations and Fed. R. Civ. P. 23 and held that "the commencement of the original class suit tolls the running of the statute for all purported members of the class who make timely motions to intervene after the court has found the suit inappropriate for class action status." 414 U.S. at 553. On the other hand, Defendants are correct that Section 13 is a statute of repose where the "equitable tolling doctrine" does not apply "[b]ecause the purpose of the 3-year limitation is clearly to serve as

3

a cutoff." *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson*, 501 U.S. 350, 363 (1991). "Unlike a statute of limitations, a statute of repose is not a limitation of a plaintiff's remedy, but rather defines the right involved in terms of the time allowed to bring suit." *P. Stolz Family P'ship L.P. v. Daum*, 355 F.3d 92, 102 (2d Cir. 2004). As a result, "a statute of repose begins to run without interruption once the necessary triggering event has occurred, even if equitable considerations would warrant tolling or even if the plaintiff has not yet, or could not yet have, discovered that she has a cause of action." *Id.* at 102-103. Nonetheless, I am persuaded that *American Pipe* is applicable. The tolling principle established in that case is based on Fed. R. Civ. P. 23 rather than on equitable considerations and is therefore a legal, rather than an equitable, form of tolling. I also note that this is the majority view among the district courts in this Circuit. *See In re Smith Barney Transfer Agent Litig.*, No. 05 Civ. 7583, 2012 WL 3339098, at *5 (S.D.N.Y. Aug. 15, 2012); *In re Bear Stearns Mortg. Pass-Through Certificates Litig.*, 851 F. Supp. 2d 746, 767 (S.D.N.Y. 2012); *Int'l Fund Mgmt. S.A. v. Citigroup Inc.*, 822 F. Supp. 2d 368, 380 (S.D.N.Y. 2011); *In re Morgan Stanley Mortg. Pass–Through Certificates Litig.*, 810 F .Supp.2d 650, 667 (S.D.N.Y. 2011); *Plumbers' & Pipefitters' Local No. 562 Supplemental Plan & Trust v. J.P. Morgan Acceptance Corp. I*, No. 08 Civ. 1713, 2011 WL 6182090, at *5 (E.D.N.Y. Dec. 13, 2011).

In the absence of any discussion about *American Pipe* or Rule 23 in *Lampf* and *Stolz*, I have compared the tolling principles that were discussed there and rejected, with that of *American Pipe*. In *Lampf*, the issue before the Supreme Court was whether "the doctrine of equitable tolling . . . . where the party injured by the fraud remains in ignorance of it without any fault or want of diligence or care on his part" would be applicable to Section 13, and the Court held otherwise. 501 U.S. at 363 (internal quotation marks and citations omitted). Similarly, the inquiry before the Second Circuit in *Stolz* was whether "a potential plaintiff might, through no lack of diligence on her part, find herself without any recourse for an injury that, if it had occurred earlier, would have been remediable," and the Circuit concluded that "such a possibility may not be inconsistent with the purpose of a statute of repose." 355 F.3d at 103. In my view, these cases do not foreclose the tolling permitted in *American Pipe*. Rather, *American Pipe* as noted is related to Rule 23, and the key concern is that "[a] contrary rule allowing participation only by those potential members of the class who had earlier filed motions to intervene in the suit would deprive Rule 23 class actions of the efficiency and economy of litigation which is a principal purpose of the procedure." 414 U.S. at 553. This analysis is consistent with the approach adopted by the Tenth Circuit in *Joseph v. Wiles*, 223 F.3d 1155, 1166-67 (10th Cir. 2000) ("Equitable tolling is appropriate where, for example, the claimant has filed a defective pleading during the statutory period or where the plaintiff has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass. In contrast, the tolling [under *American Pipe*] is the legal tolling that occurs any time an action is commenced and class certification is pending.").

I am not unaware of a contrary position adopted in three cogent district court opinions which hold that *American Pipe* is a form of equitable tolling. *Footbridge Ltd. Trust v. Countrywide Fin. Corp.*, 770 F. Supp. 2d 618, 626 (S.D.N.Y. 2011). *Accord In re Lehman Bros. Sec. & Erisa Litig.*, 800 F. Supp. 2d 477, 482 (S.D.N.Y. 2011); *In re IndyMac Mortgage-Backed Sec. Litig.*, 793 F. Supp. 2d 637, 646 (S.D.N.Y. 2011). Nonetheless, in the absence of any specific guidance on the relationship between Rule 23 and statutes of repose, I find the deductive approach based on various snippets from Supreme Court and Second Circuit opinions[2]—and the conclusion that the tolling principle derived from Rule 23 must be equitable because it is judicially created—less satisfactory and informative than the inductive approach comparing the specific tolling principles discussed in *Lampf* and *Stolz* with that of *American Pipe*. As even the district courts that disagree acknowledge, "many of the policy considerations present in *American Pipe* would support tolling of a statute of repose." *Footbridge*, 770 F. Supp. 2d at 627. The view that *American Pipe* does not apply to Section 13 directly undermines both the aspirations and operations of Rule 23; in a securities case, the risk that potential class members would flood the courts is particularly serious, since class certification is a lengthy, uncertain process. Nor would applying *American Pipe* be contrary to the purpose of the repose period that "the right to initiate suit against a defendant be within a legislatively determined time period," *Stoltz*, 355 F.3d at 102, since Intervenors' claims were already brought against Defendants within the three-year repose period when the Amended Complaints were filed. "Indeed, in this sense, application of the *American Pipe* tolling doctrine to cases such as this one does not involve 'tolling' at all . . . . [because the plaintiff] has effectively been a party to an action against the defendants since a class action covering him was requested but never denied." *Joseph*, 223 F.3d at 1168; *see also In re WorldCom Sec. Litig.*, 496 F.3d 245, 255 (2d Cir. 2007) ("The theoretical basis on which American Pipe rests is the notion that class members are treated as parties to the class action until and unless they received notice thereof and chose not to continue.") (internal quotation marks and citations omitted).

In my view, *American Pipe* also addresses many of Defendants' arguments against its application to Section 13. This is so notwithstanding a clear theoretical distinction between a statute of repose and a statute of limitations; the two, as we will all agree, share many characteristics and policy goals. *See*, *e.g.*, *Stolz*, 355 F.3d 92 at 102-104 (remarking that "[i]n theory, at least, the legislative bar to subsequent action is absolute [in a statute of repose]" but also observing that "[i]n

---

[2] These opinions rely on the Second Circuit's quotation of a secondary source in *Stolz* for the proposition that "[i]n *theory, at least,* the legislative bar to subsequent action is absolute, subject to legislatively created exceptions . . . set forth in the statute of repose," 355 F.3d at 102 (quoting Calvin W. Corman, Limitation of Actions, § 1.1, at 4-5 (1991)) (emphasis added), and the non-binding and passing characterization by the Supreme Court and the Second Circuit of *American Pipe* tolling as "equitable," *see*, *e.g.*, *Young v. United States*, 535 U.S. 43, 49 (2002) (citing *American Pipe* in a string of citations following the proposition, "It is hornbook law that limitations periods are customarily subject to 'equitable tolling.'"); *Veltri v. Bldg. Serv. 32B-J Pension Fund*, 393 F.3d 318, 322-23 (2d Cir. 2004) (citing *American Pipe* after the proposition that "equitable tolling has been held appropriate where plaintiff filed and served defective papers before the expiration of the statutory period").

principle, by limiting the substantive or procedural rights of plaintiffs, all statutes of limitation or repose always tend to cut against the remedial results that plaintiffs might otherwise enjoy"). For instance, although Defendants here draw the Court's attention to the statutory language of Section 13, "in no event," the Supreme Court faced even stronger statutory language in *American Pipe*, which provided that any action outside the four-year period "shall be forever barred." *Id*. at 541, n.2. Defendants argue too that judicial expansion of a substantive right by applying *American Pipe* would violate the Rules Enabling Act and the legislative intent, but *American Pipe* rejected a similar argument that "the federal courts are powerless to extend the limitation period beyond the period set by Congress because that period is a 'substantive' element of the right conferred" and went on to affirm the federal courts' power to toll "under certain circumstances not inconsistent with the legislative purpose." *Id*. at 556, 559. For those reasons, I do not dismiss Intervenors' claims.

**B. Plaintiffs' Motion for Reconsideration**

"The major grounds justifying reconsideration are an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992) (citation and internal quotation marks omitted). A district court "enjoys considerable discretion in granting or denying the motion" and such motion should be "sparingly" granted. 11 C. Wright, A. Miller & E. Cooper, Federal Practice & Procedure § 2810.1 (3d ed.).

Plaintiffs move the Court to reconsider the Court's orders in March 2010 dismissing their claims related to certain offerings based on lack of standing, contending that the Second Circuit's opinion issued on September 6, 2012 constitutes a significant intervening change in controlling law. In *NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co*., the Second Circuit held that a plaintiff "has class standing to assert the claims of purchasers of certificates backed by mortgages originated by the same lenders that originated the mortgages backing plaintiff's certificates . . . ." 693 F.3d 145, 148-49 (2d Cir. 2012) ("*NECA*"). This opinion creates a circuit split with the First Circuit's opinion in *Plumbers' Union Local No. 12 Pension Fund v. Nomura Asset Acceptance Corp.*, 632 F.3d 762 (1st Cir. 2011), and a petition for a writ of certiorari was filed on October 26, 2012.

At this point in time, the Court denies Plaintiffs' motion for reconsideration without prejudice to its renewal either after the Supreme Court denies the petition, or if the writ is granted, after the Supreme Court decides the case. If Plaintiffs' motions are granted, the scope of the cases could change radically; the Harborview case could involve up to fourteen offerings rather than two, while the RALI case could involve up to 59 instead of four offerings. Furthermore, there are some factual distinctions between *NECA* and the two cases before me. For instance, in the Harborview case, some of the dismissed offerings share originators through Intervenors, rather than Plaintiffs.

6

In the *RALI* case, the 55 offerings were underwritten by ten different underwriters, and only some of these underwriters underwrote the certificates purchased by Plaintiffs. While I do not comment on their significance at this time, these differences further suggest that it would be prudent to consider Plaintiffs' motion at a later time.

**C. Class Definition**

My opinion and order dated October 15, 2012, granted Plaintiffs' amended motion to certify a class action but narrowed the class definitions in both cases to "purchasers who bought the security on the date of the offering directly from the issuers." 2012 WL 4865174, at *1. This definition was based on the Second Circuit's description of Plaintiffs' representation at the oral argument that "'most of' or 'ninety percent' of the purchasers of each security bought on the date of issue directly from the issuers," and my objective was to carve out a class that was "more readily identifiable, [and] more homogenous." 477 Fed.Appx. at 813-14. Unfortunately, Plaintiffs' Counsel informed me in a letter of October 22, 2012, that such a class definition could result in a class with no members because all of the Harborview and RALI Offerings were "firm commitment" underwritings, where the underwriter purchases the entire offering from the issuer in order to sell to investors. Furthermore, because the initial distribution of the securities did not always occur on the date of the offerings, the application of the current definition could exclude certain initial purchasers. Clearly, I did not intend this result. My goal was to further narrow, rather than to destroy, Plaintiffs' proposed class definitions.

Having reviewed the parties' proposals, I adopt Plaintiffs' proposal and modify the class definition in both cases as follows: initial purchasers who bought the securities directly from the underwriters or their agents no later than ten trading days after the offering date. This modification takes into account the fact that the Offerings were "firm commitment" underwritings. The ten-day period responds to the purchase timing issue without destroying the class by setting a strict temporal limit that ends prior to any downgrade or delinquency reports showing increased default rates.

I disagree with RALI and Harborview Defendants that the requirement of adequate representation is no longer met with respect to certain offerings—namely the RALI 2007-Q04 and Harborview 2007-7 Certificates—because Lead Plaintiff Boilmaker Trust purchased these certificates outside the ten-day period. The requirement of adequacy is satisfied when "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). A district court must inquire whether "1) plaintiff's interests are antagonistic to the interest of other members of the class and 2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation." *In re Flag Telecomm. Holdings, Ltd. Secs. Litig.*, 574 F.3d 29, 35 (2d Cir. 2009). "In order to defeat a motion for certification [any conflict of interest] must be fundamental." *Id.* I already found that the adequacy prong was satisfied in my prior Opinion, 272 F.R.D. at 164-5, and see no reason why I should change this analysis. In the Harborview case, the other Lead

Plaintiff New Jersey Carpenters Vacation Fund falls within the modified class definition, and in the RALI case, Lead Plaintiffs New Jersey Carpenters Fund and New Jersey Carpenters Vacation Fund both remain. Neither RALI Defendants nor Harborview Defendants identify any potential conflicts of interests that suggest that the other Lead Plaintiff(s) would inadequately represent those who purchased the RALI 2007-Q04 and Harborview 2007-7 Certificates. For the same reasons, I also disagree with RALI Defendants who argue that the numerosity requirement is not satisfied because under the modified class definition, the purchasers of RALI 2007-Q04 and 2007-QH4 Certificates both number less than 40. The class as whole has more than 100 members and therefore easily satisfies the 40-member presumption. *See, e.g., Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995).

## Conclusion

I have considered the parties' remaining arguments and find them to be without merit. Defendants' motion to dismiss, RALI Defendants' motion to stay, and Plaintiffs' motion to reconsider are all DENIED. Plaintiffs' application for the modification of class definition in both cases is GRANTED. The Clerk of the Court is instructed to close the two motions and remove them from my docket. As per my email, I anticipate your new pretrial scheduling orders by Monday noon.

**SO ORDERED**
**January 3, 2013**
**New York, New York**

**Hon. Harold Baer, Jr.**
**U.S.D.J.**

8