**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| New Jersey Carpenters Health Fund, *et al.*, | No. 08-cv-8781 (KPF) |
| Plaintiffs, | |
| v. | |
| Residential Capital, LLC, *et al.*, | |
| Defendants. | |

**LEAD PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION FOR (I) CERTIFICATION OF THE UNDERWRITER CLASS FOR PURPOSES OF SETTLEMENT, (II) PRELIMINARY APPROVAL OF THE UNDERWRITER SETTLEMENT; (III) APPROVAL OF NOTICE TO THE UNDERWRITER AND RESCAP CLASSES AND (IV) SCHEDULING OF FINAL SETTLEMENT APPROVAL HEARING**

## **TABLE OF CONTENTS**

I.   INTRODUCTION .................................................................................................... 1

II.  BACKGROUND OF THE LITIGATION .............................................................. 6
     A.   First Motion to Dismiss Ruling Limiting the Case to Four RALI Offerings.......... 7
     B.   Motions By Other Institutional Plaintiffs To Intervene ................................. 7
     C.   District Court Denies Class Certification ...................................................... 8
     D.   Denial Of Class Certification Affirmed By Second Circuit, But Further
          Motion Practice Permitted .............................................................................. 9
     E.   ResCap Defendants File For Bankruptcy ....................................................... 9
     F.   Certification of a Truncated Class Granted ................................................. 10
     G.   Second Motion to Dismiss (Intervenor Claims) Denied And Modification
          of Class Granted ........................................................................................... 10
     H.   Defendants Rule 23(f) Petitions Denied ...................................................... 11
     I.   Motion For Reconsideration Expanding Case to 14 Offerings Granted .............. 11
     J.   Judge Baer Preliminarily Approves $100 Million Settlement with ResCap
          Defendants .................................................................................................... 12
     K.   Additional Motions to Modify Class Filed .................................................. 12
     L.   Class Definition Modified ............................................................................ 12
     M.   Third Rule 23(f) Petition Fully Briefed and Decided .................................. 13
     N.   Fact Discovery Completed ........................................................................... 13
     O.   Expert Discovery Completed ....................................................................... 13
     P.   Summary Judgment and *Daubert* Motions Filed ......................................... 14

III. SETTLEMENT NEGOTIATIONS ..................................................................... 14
     A.   Plan of Allocation ........................................................................................ 14

IV.  ARGUMENT ........................................................................................................ 15
     A.   The Proposed Settlement Warrants Preliminary Approval.......................... 15
     B.   Notice to the Class Should Be Approved ..................................................... 19
     C.   Certification of the Class for Settlement Purposes is Appropriate .................... 20
          1.   The Class Satisfies the Requirements of Rule 23(a) ................................ 21
               a.   Numerosity .................................................................................... 21
               b.   Commonality .................................................................................. 22
               c.   Typicality ....................................................................................... 22
               d.   Adequate Representation ............................................................... 23
          2.   The Class Representatives' Claims Satisfy the Prerequisites of
               Rule 23(b)(3) ............................................................................................ 23
               a.   Common Legal and Factual Questions Predominate ..................... 23
               b.   A Class Action is Superior to Other Methods of
                    Adjudication ................................................................................... 24

1968337.1

V.    PROPOSED SCHEDULE OF EVENTS..................................................................... 25

VI.   CONCLUSION............................................................................................................ 25

**1968337.1**

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES

*In re Am. Int'l Grp. Inc. Sec. Litig.*,
   689 F.3d 229 (2d Cir. 2012)......................................................................................21

*Amchem Prods., Inc. v. Windsor*,
   521 U.S. 591 (1997)..................................................................................21, 24, 25

*Consol. Rail Corp. v. Town of Hyde Park*,
   47 F.3d 473 (2d Cir. 1995).........................................................................................22

*D'Amato v. Deutsche Bank*,
   236 F.3d 78 (2d Cir. 2001).........................................................................................17

*Denney v. Deutsche Bank AG*,
   443 F.3d 253 (2d Cir. 2006).......................................................................................21

*In re Enron Corp. Sec.*,
   MDL No. 1446, 2008 U.S. Dist. LEXIS 84656 (S.D. Tex. Sept. 8, 2008)..............14

*In re Flag Telecomm. Holdings, Ltd. Sec. Litig.*,
   574 F.3d 29 (2d Cir. 2009).........................................................................................23

*In re Giant Interactive Grp., Inc., Sec. Litig.*,
   279 F.R.D. 151 (S.D.N.Y. 2011) ...............................................................................19

*In re Global Crossing Sec. & ERISA Litig.*,
   225 F.R.D. 436 (S.D.N.Y. 2004) .........................................................................17, 20

*In re IndyMac Mortgage-Backed Sec. Litig.*,
   No. 09 Civ. 04583 ................................................................................................4, 12

*In re Initial Pub. Offering Sec. Litig.*,
   226 F.R.D. 186 (S.D.N.Y. 2005) ...............................................................................16

*In re Initial Pub. Offering Sec. Litig.*,
   243 F.R.D. 79 (S.D.N.Y. 2007) .................................................................................17

*In re Interpublic Sec. Litig.*,
   Nos. 02 Civ. 6527 (DLC), 03 Civ. 1194 (DLC), 2004 WL 2397190 (S.D.N.Y.
   Oct. 26, 2004) ...........................................................................................................16

*In re Lehman Bros. Mortgage-Backed Sec. Litig.*,
No. 08-cv-6762, 09MD2017 (LAK) (S.D.N.Y.) ....................................................15

*Maine State Ret. Sys. v. Countrywide Fin. Corp.*,
No. 10-cv-00302-MRP (C.D. Cal.)........................................................................15

*In re Marsh & McLennan Cos. Sec. Litig.*,
No. 04 Civ. 8144 (CM), 2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009)............................19, 21

*N.J. Carpenters Health Fund v. Residential Capital, LLC*,
Nos. 08 Civ. 5093 (HB), 08 Civ. 8781(HB), 2013 U.S. Dist. LEXIS 180913
(S.D.N.Y. Dec. 27, 2013) ....................................................................22, 23, 24

*N.J. Carpenters Vacation Fund v. Royal Bank of Scotland Grp., PLC*,
No. 08 Civ. 5093 .............................................................................................4

*N.J. Carpenters Vacation Fund v. Royal Bank of Scotland Grp., PLC*,
No. 08 Civ. 5093 (Dkt 282, S.D.N.Y. Nov. 4, 2014) ..........................................15

*In re NASDAQ Market-Makers Antitrust Litig.*,
176 F.R.D. 99 (S.D.N.Y. 1997) ...........................................................................17

*NECA-IBEW Health & Welfare Fund v. Goldman, Sachs & Co.*,
693 F.3d 145 (2d Cir. 2012)...........................................................................10, 11

*In re Omnivision Techs., Inc.*,
559 F. Supp. 2d 1036 (N.D. Cal. 2008) ...............................................................14

*In re PaineWebber Ltd. P'ships Litig.*,
147 F.3d 132 (2d Cir. 1998)..............................................................................16

*Police & Fire Ret. Sys. of City of Detroit v. IndyMac MBS, Inc.*,
721 F.3d 95 (2d Cir. 2013), cert. dismissed, 135 S. Ct. 42 (2014) ........................12

*In re Prudential Sec. Inc. Ltd. P'ships Litig.*,
163 F.R.D. 200 (S.D.N.Y. 1995) .....................................................................17, 21

*Pub. Emps.' Ret. Sys. of Miss. v. Merrill Lynch & Co.*,
No. 08-CV-10841 ...............................................................................................4

*In re Residential Capital, LLC, et al.*,
No. 12-bk-12020 (Bankr. S.D.N.Y. 2012)..............................................................9

*Teachers' Ret. Sys. of La. v. ACLN Ltd.*,
No. 01 Civ. 11814 (LAP), 2004 WL 2997957 (S.D.N.Y. Dec. 27, 2004) .............22, 23

*In re Telik, Inc. Sec. Litig.*,
576 F. Supp. 2d 570 (S.D.N.Y. 2008).................................................................14, 17

iv

*UFCW Local 1776 v. Eli Lilly & Co.*,
   620 F.3d 121 (2d Cir. 2010)..................................................................................24

*Wal-Mart Stores, Inc. v. Dukes*,
   131 S. Ct. 2541, 180 L. Ed. 2d 374 (2011)...........................................................22

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
   396 F.3d 96 (2d Cir. 2005)........................................................................16, 19, 20

*In re Warner Chilcott Ltd. Sec. Litig.*,
   No. 06 Civ. 11515 (WHP), 2008 WL 5110904 (S.D.N.Y. Nov. 20, 2008)............20

*Weinberger v. Kendrick*,
   698 F.2d 61 (2d Cir. 1983).....................................................................................21

*In re Wells Fargo Mortgage-Backed Certificates Litig.*,
   No. 09-CV-1376-LHK (PSG) (N.D. Cal.)..............................................................15

*In re WorldCom, Inc. Sec. Litig.*,
   388 F. Supp. 2d 319 (S.D.N.Y. 2005)....................................................................14

v

Lead Plaintiff, New Jersey Carpenters Health Fund (the "Lead Plaintiff"), respectfully submit this memorandum of law in support of its unopposed motion for:  (i) certification of the proposed Underwriter Settlement Class for purposes of the Settlement with the Underwriter Defendants[1]; (ii) preliminary approval of the $235 million Underwriter Settlement and Plan of Allocation ("Underwriter Settlement"); (iii) preliminary approval of the Plan of Allocation for the previously approved $100 million ResCap Settlement[2]; iv) approval of the form and manner of notice to the putative Underwriter Class and the ResCap Class; and (iv) the scheduling of a hearing (the "Settlement Hearing") on final approval of the $235 million Underwriter Settlement, the Plan of Allocation for $100 million ResCap Settlement and Lead Counsel's motion for an award of attorneys' fees and reimbursement of litigation expenses

## I.      INTRODUCTION

The achievement of the $335 million global cash settlement of this mortgage backed securities class action, including the $235 million proposed Underwriter Settlement and the previously approved $100 million ResCap Settlement (the "Settlement") marks the end of six years of intense litigation of complex and novel issues before both the District Court and the Second Circuit.  Indeed, it is this unique litigation history that strongly supports preliminary approval of the proposed Underwriter Settlement and the Plan of Allocation for the $335 million in Settlement funds as well as the Notices regarding the same, since the terms of all of these agreements were only accomplished after years of hard fought litigation as well as a multi-year mediation conducted by the well-respected mediator Judge Daniel Weinstein (Ret.).  There is no

---

[1] Goldman, Sachs & Co. ("Goldman Sachs"), Citigroup Global Markets Inc. ("CITI") and UBS Securities LLC ("UBS") (collectively, the "Underwriter Defendants").

[2] The $100 million Settlement with the issuer, Defendant Residential Accredit Loans, Inc. and  its affiliates as well as the Individual Defendants (Bruce J. Paradis, Kenneth M. Duncan, Davee L. Olson, Ralph T. Flees, Lisa R. Lundsten, James G. Jones, David M. Bricker, and James N. Young) ("ResCap Defendants")  was approved by the District Court on October 8, 2013 ("ResCap Settlement").

question that at the time of settlement the parties understood the risks of continued litigation and that the terms of the proposed Underwriter Settlement were highly beneficial to the Class in light of those risks.

From the very outset of this case in 2008, the risks attendant with prosecuting this case were clear. The most elemental legal issues relating to class claims under the Securities Act of 1933, including standing and class certification, were completely untested with respect to mortgage backed securities. This reality led to the unusual circumstance in 2008 of only a single law firm seeking appointment as lead counsel under the Private Securities Litigation Reform Act. What followed over the next three years seemed to justify the reticence of other law firms to prosecute this case. In 2010, the District Court granted the Defendants' motion to dismiss in part, eliminating fifty-five Offerings from the case based on a purported lack of standing and leaving only four RALI Offerings in the case. This dismissal resulted in motions to intervene by institutional investors who purchased some of the dismissed Offerings and separate motions to dismiss when the intervention motions were granted. In 2011, however, the District Court denied Lead Plaintiff's motion for class certification in its entirety. Lead Plaintiff filed a Rule 23(f) petition to the Second Circuit. The Second Circuit granted Lead Plaintiff's petition and a full appeal of the denial of class certification followed. Ultimately, the Second Circuit affirmed the denial of class certification, but did so without prejudice to further motion practice.

Lead Plaintiff quickly pursued this possibility – requesting permission from the District Court to conduct additional discovery relating to class certification issues and to make a modified motion for class certification. After receiving permission from the District Court, Lead Plaintiff filed a renewed motion for class certification based on an additional 750,000 pages of documents, four 30(b)(6) depositions of Defendants, and a modified class definition. The

2

District Court granted Lead Plaintiff's motion for class certification, but *sua sponte* limited the certified class to initial purchasers only – a class definition it expanded slightly upon the request of Lead Plaintiff to include those purchasers within the first ten trading days of each offering.

The case grew more complicated on May 14, 2012 when Defendant Residential Accredited Loans, Inc. ("RALI"), the entity that issued all of the RALI Certificates and certain of its affiliates filed for bankruptcy protection. In response, Lead Counsel engaged bankruptcy counsel and began litigating in the bankruptcy proceeding. Though not initially invited to participate, Lead Counsel obtained the right to engage in the mediation of the bankruptcy case being conducted by the court appointed mediator, former Bankruptcy Judge Peck. As a result of actively engaging in this mediation process, Lead Counsel secured a $100 million cash settlement for the benefit of the class. This $100 million settlement was approved by Judge Baer on October 8, 2013 and Judge Martin Glenn in the bankruptcy proceeding thereafter.

On November 16, 2012—four years after the commencement of the action—Lead Counsel moved to expand the scope of the case based on recent Second Circuit law pertaining to the issue of standing. On April 30, 2013, this motion was granted – expanding the case to sixteen RALI Offerings. Motions to certify these additional offerings were filed and granted by the District Court. With each certification ruling, Defendants filed Rule 23(f) petitions which Plaintiffs opposed. The Second Circuit denied all of Defendants' Rule 23(f) petitions.

In 2013 and 2014, the fact and expert phases of the case proceeded apace with respect to the remaining Underwriter Defendants, Goldman Sachs, UBS, and CITI (none of whom declared bankruptcy). In fact discovery, over four million pages of documents were produced, 320 nonparty subpoenas served, and sixteen fact depositions were taken focusing on Defendants' due diligence in connection with the RALI Offerings. A number of critical discovery issues were

litigated before Judge Baer and Magistrate Freeman.   After completing fact discovery, Lead Plaintiff served eight expert reports – including reports by a loan underwriting expert who reunderwrote sample loan files, a statistician who opined on the methodology and validity of the loan sample, a damage expert, an expert on investment banking due diligence, and an expert on loss causation issues. Defendants served five expert reports including reports on due diligence, reunderwriting, damages, and loss causation. Following expert depositions, both sides filed summary judgment and *Daubert* motions with this Court.   While litigating this case, the parties simultaneously began mediating the dispute in 2013 before the Honorable Daniel Weinstein (Ret.).   After multiple mediation sessions and numerous calls, meetings, emails and years of litigation, the parties achieved a settlement in principal with the remaining Underwriter Defendants -- agreeing to resolve the claims asserted against them for $235 million in cash.  This result, in combination with the previously approved $100 million ResCap Settlement, provides members of the certified class with a recovery of approximately $30.54 per $1,000 (face value) RALI Certificate – representing one of the highest recoveries among all mortgage-backed securities class actions.[3]

   As a condition of the settlement agreement, Judge Weinstein provided his opinion to the parties that the proposed Plan of Allocation was fair.  As explained more fully below, the Plan of Allocation for distribution of the Underwriter Settlement and ResCap settlement tracks the decisions of the District Court in this case and of the Second Circuit and allocates monies in

---

[3] The $315 million settlement in *Public Employees' Retirement System of Mississippi v. Merrill Lynch & Co.*, No. 08-CV-10841,before Judge Rakoff of the SDNY recovered $15.57 per $1,000 for the class, the $280 million in *Plumbers' & Pipefitters' Local #562 Supplemental Plan & Trust v. J.P. Morgan Acceptance Corporation I, et al,*, No. 08-01713, before Judge Chen of the EDNY  recovered $11.95 per $1,000 for the class, the $95 million settlement in *In re Morgan Stanley Mortgage Pass-Through Certificates Litigation*, , No. 09-0213 .before Judge Forrest of the SDNY recovered $2.63 per $1,000 for the class,  the $340 million settlement in *In re IndyMac Mortgage-Backed Securities Litigation*, No. 09 Civ. 04583, before Judge Kaplan  recovered $14.42 per $1,000 for the class, and the $275 million settlement in *New Jersey Carpenters Vacation Fund v. Royal Bank of Scotland Group*, No. 08 Civ. 5093, in the companion case here which was litigated before the late Judge Baer, but approved by Chief Judge Preska, recovered $16.73 for the certified class.

proportion to the strength of the claims.  The Plan divides potential RALI claimants into three groups: the currently certified class of those who purchased within the first ten trading days of each RALI Offering ("Group 1"); those who lay outside the currently certified class, but whose claims were not dismissed and who purchased prior to the commencement of the lawsuit ("Group 2"), and those whose claims were dismissed or otherwise no longer part of the case ("Group 3").  The claimants in Group 1 received the largest recovery, the claimants in Group 2 received a significantly smaller recovery, and the claimants in Group 3 received the smallest recovery, reflecting the respective strength of their claims.

The legal standard for preliminary approval of a class action settlement turns on whether it appears fair, reasonable and adequate and there is a presumption that a settlement is fair, reasonable and adequate attaches where a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery.  There is no question that presumption applies here after over six years of intense litigation before the District Court and the Second Circuit and years of mediation with Judge Weinstein.  Accordingly, Lead Plaintiff respectfully moves for certification of the Underwriter Settlement Class and approval of the form and manner of distribution of the Class Notice.

Specifically, Lead Plaintiff requests that the Court enter the proposed Order Preliminarily Approving the Settlement and Providing for Notice (the "Preliminary Approval Order"), attached to the Declaration of Joel P. Laitman, dated February 13, 2015 ("Laitman Decl.") as Exhibit A, and to the Stipulation, which, *inter alia*, will:

(i)      certify an Underwriter Settlement Class and preliminarily approve the Underwriter Settlement on the terms set forth in the Stipulation;

5

(ii)    approve the form and content of the Notice of Pendency of Class Action ("Notice") and Summary of Notice of Pendency of Class Action ("Summary Notice"), attached as Exhibits A-1 and A-2 to the Stipulation, respectively;

(iii)    find that the procedures established for distribution of the Notice and publication of the Summary Notice in the manner and form set forth in the Preliminary Approval Order constitute the best notice practicable under the circumstances, and comply with the notice requirements of due process, Rule 23 of the Federal Rules of Civil Procedure, and Section 21 of the Securities Act of 1933 ("Securities Act"), 15 U.S.C. § 77u-4, as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), Pub. L. No. 104-67, 109 Stat. 737; and

(iv)    schedule the Settlement Hearing and establish a schedule and procedures for: disseminating the Notice and publishing the Summary Notice; requesting exclusion from the Underwriting Settlement Class; objecting to the Underwriter Settlement, the Plan of Allocation, Lead Counsel's Motion for Fees and Reimbursement of Litigation Expenses; and submitting papers in support of final approval of the Settlement.

## II.    BACKGROUND OF THE LITIGATION

This securities class action alleges that Defendants violated Sections 11, 12 and 15 of the Securities Act, 15 U.S.C. §§ 77k, 77l and 77o, in the offer and sale of Residential Accredit Loans, Inc. ("RALI") MBS by issuing to investors materially false and misleading registration statements and prospectuses.  Lead Plaintiff alleges, *inter alia*, that the Offering Documents (*i.e.*, the registration statements, prospectuses, and prospectus supplements) failed to disclose that Defendants had "systematically disregarded" the applicable underwriting guidelines in the origination of mortgage loans underlying the Certificates.  These material misstatements and omissions led to massive downgrades in the ratings for the Certificates and investors being damaged when the value of the Certificates they purchased collapsed.

The case commenced on September 22, 2008 when Lead Plaintiff New Jersey Carpenters Health Fund filed a Securities Class Action Complaint against certain defendants in New York State Supreme Court.  On October 14, 2008, Defendants removed the Action to the United States District Court for the Southern District of New York.  On May 18, 2009, the Lead Plaintiff filed the Consolidated First Amended Securities Class Action Complaint ("First Amended Complaint" or "FAC") on behalf of a class of purchasers of certain RALI mortgage-backed securities.

### A.    First Motion to Dismiss Ruling Limiting the Case to Four RALI Offerings

On July 17, 2009, Defendants moved to dismiss the First Amended Complaint.  On March 31, 2010, the Court granted in part and denied in part, Defendants' motion to dismiss. ("First MTD Order").  In the First MTD Order, the Court found that Lead Plaintiff adequately alleged violations of the Securities Act against the Defendants for the four RALI Offerings in which the Lead Plaintiff purchased securities.  The Court dismissed all fifty-five other Offerings from the case on standing grounds.

### B.    Motions By Other Institutional Plaintiffs To Intervene

Between June 10, 2010 and July 30, 2010, the Intervenor Plaintiffs[4] and Mississippi Public Employees' Retirement System ("MissPERS") moved to intervene (the "Motions to Intervene") in the Litigation to represent purchasers of certificates from seven Offerings (the Court had held in the First Motion to Dismiss Order that Lead Plaintiff and the Original Named Plaintiffs lacked standing to pursue claims arising from six of those Offerings).

Subsequently, the parties commenced discovery in advance of Lead Plaintiff moving for class certification.  On August 16, 2010, after subpoenaing dozens of entities for trading records, reviewing thousands of pages of documents produced by the Defendants, and employing an

---

[4] Police and Fire Retirement System of the City of Detroit, Midwest Operating Engineers Pension Trust Fund, Iowa Public Employees' Retirement System and Orange County Employees Retirement System (collectively, the "Intervenor Plaintiffs").

expert on mortgage backed securities, Lead Plaintiff moved to certify a class of purchasers of the four remaining Offerings in the case, to certify Lead Plaintiff as Class Representative and to appoint Cohen Milstein as Class Counsel (the "First Class Certification Motion").

After full briefing, on December 22, 2010, the District Court issued an Opinion granting the motions to Intervene, restoring six additional Offerings to the action ("Intervenor Offerings").  On January 3, 2011, Lead Plaintiff filed the Consolidated Second Amended Class Action Complaint, which, *inter alia*, added the claims of the Intervenor Plaintiffs to the action.

C.      District Court Denies Class Certification

On January 18, 2011, this Court issued denied class certification with respect to the four original Offerings on the ground that Lead Plaintiff had not met the requirements of Rule 23(b) ("First Class Certification Order").   While the District Court found that Lead Plaintiff had satisfied all of the Rule 23(a) factors, including numerosity, commonality, adequacy and typicality, it found that individual issues of knowledge predominated, thereby precluding class certification.   On January 24, 2011, Lead Plaintiff filed a petition with the Second Circuit, pursuant to Fed. R. Civ. P. 23(f), seeking leave to appeal the First Class Certification Order.

Defendants moved to dismiss the Intervenor Plaintiffs' claims on January 25, 2011, and on April 28, 2011, the Court issued an order granting in part and denying in part Defendants' motion to dismiss the Intervenor Plaintiffs' claims. The Court dismissed the Intervenor Plaintiffs' Section 12(a)(2) claims.  The Court further dismissed MissPERS and all claims related to the Certificates issued by the RALI Series 2006-QO6 Trust from the Litigation.

On April 29, 2011, after full briefing, the Second Circuit granted Lead Plaintiff's Rule 23(f) motion for an interlocutory appeal of the District Court's denial of Lead Plaintiff's motion for class certification.   On May 12, 2011, the Court stayed the Action pending the Second Circuit's ruling on the Rule 23(f) appeal.

8

D.    Denial Of Class Certification Affirmed By Second Circuit, But Further Motion
      Practice Permitted

On April 30, 2012, after full briefing and oral argument, the Second Circuit affirmed the

District Court's denial of Class Certification "without prejudice to further motion practice in the

District Court."  The Second Circuit held that the District Court did not abuse its discretion by

denying class certification but limited its review only to the class definition that the District

Court rejected, and to the record as it stood at the time of the First Class Certification Motion.

In light of the Second Circuit's decision, Lead Plaintiff moved the District Court for

permission to conduct additional discovery, and on May 7, 2012, the District Court granted that

motion, setting an August 6, 2012 deadline for the submission of any additional class

certification motions.  Consequently, Lead Counsel took a 30(b)(6) deposition of each of the

Defendants who underwrote the four Offerings then at issue in the case and reviewed thousands

of additional pages of documents. On August 6, 2012, Lead Plaintiff filed its renewed motion for

class certification as to the four Offerings they purchased (the "Second Class Certification

Motion") based on the additional discovery recently obtained.  Lead Plaintiff also restricted the

temporal scope of the class to encompass only purchases prior to any downgrades of the

Certificates and eliminating Federal National Mortgage Association ("Fannie Mae") and Federal

Home Loan Mortgage Corporation ("Freddie Mac") from the class definition.

E.    ResCap Defendants File For Bankruptcy

On May 14, 2012, the ResCap Defendants filed voluntary petitions under Chapter 11 of

the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of New

York, in a proceeding styled *In re Residential Capital, LLC, et al.*, No. 12-bk-12020 (Bankr.

S.D.N.Y. 2012).   Lead Counsel retained bankruptcy counsel, filed proofs of claim, and

advocated for and received a place in the multi-party negotiations taking place amongst

9

Residential Capital and dozens of secured and unsecured creditors before Bankruptcy Judge Peck (Ret.).  After days of marathon mediation sessions, Lead Counsel secured a settlement for the Class of $100 million for settling claims against various ResCap entities and the Individual Defendants who were employees of the ResCap entities.

F.   Certification of a Truncated Class Granted

On October 15, 2012, the Court granted in part the Second Class Certification Motion (the "Second Class Certification Order").  The Court, however, *sua sponte* further limited the Class definition to those purchasers who bought the securities on the date of offering directly from the issuers.  On November 5, 2012, Lead Plaintiff sought reconsideration of the Second Class Certification Order seeking to expand the Class to include those who purchased certificates on the offering date or up to ten trading days thereafter, which defendants opposed.

On November 16, 2012, Lead Plaintiff sought reconsideration of the Court's prior decision dismissing claims as to those offerings in which no Lead Plaintiff purchased securities in light of *NECA-IBEW Health & Welfare Fund v. Goldman, Sachs & Co*., 693 F.3d 145 (2d Cir. 2012) ("*NECA-IBEW*"), which held, in part, that a plaintiff in certain circumstances had class standing to assert claims on behalf of purchasers that purchased securities in offerings in which the named plaintiff did not purchase securities.  As a result, Plaintiffs' reconsideration motion sought to reinstate claims with respect to the fifty-five Offerings at issue in the First Amended Complaint that had been previously been dismissed.  That same day, November 16, 2012, Defendants filed motions to dismiss claims asserted by the Intervenor Plaintiffs as barred by the statute of repose set forth in Section 13 of the Securities Act (the "Third Motion to Dismiss").

G.   Second Motion to Dismiss (Intervenor Claims) Denied And Modification of Class Granted

On January 3, 2013, after full briefing, the District Court denied Defendants' motion to dismiss the Intervenor Offerings.  In the same Order, the District Court denied Lead Plaintiff's motion for reconsideration under *NECA-IBEW* without prejudice for renewal following a determination by the Supreme Court on whether or not to grant *certiorari* in *NECA-IBEW*.  The District Court, also in the same Order, granted Lead Plaintiff's application for modification of the class definition (the "Amended Second Class Certification Order").  The Court expressly modified the class definition to include initial purchasers that bought the securities directly from the underwriters or their agents no later than ten trading days after the applicable offering date and affirmed the appointment of the New Jersey Carpenters Funds as Class Representatives.

H.    Defendants Rule 23(f) Petitions Denied

On October 31, 2012 and January 18, 2013, Defendants petitioned the Second Circuit for permission to appeal the District Court's Second Class Certification Order and Amended Second Class Certification Order pursuant to Fed. R. Civ. P. 23(f).  After full briefing, the Second Circuit denied both petitions on March 26, 2013.

I.    Motion For Reconsideration Expanding Case to 14 Offerings Granted

On April 30, 2013, following the U.S. Supreme Court's denial of the *certiorari* petition in *NECA-IBEW*, the Court granted Lead Plaintiff's motion for reconsideration of the Court's decision on the First Motion to Dismiss.  After this decision, fourteen of the Fifteen Original Offerings were restored to the case ("Fourteen Remaining Offerings").

On May 10, 2013, Lead Plaintiff filed the Consolidated Third Amended Securities Class Action Complaint ("Third Amended Complaint"), which asserted claims on behalf of forty-one Offerings. On June 25, 2013, Lead Plaintiff filed a motion to modify the class to encompass the forty-one Offerings identified in the Third Amended Complaint and to appoint New Jersey

Carpenters Health Fund, New Jersey Carpenters Vacation Funds, and Local 74 USWU Welfare Fund as Class Representatives (the "Second Class Definition Modification Motion").

    J.    <u>Judge Baer Preliminarily Approves $100 Million Settlement with ResCap Defendants</u>

On June 28, 2013, the Court preliminarily approved the $100 million settlement between Lead Plaintiff, on behalf of a settlement class, and the ResCap Defendants, Individual Defendants, and Ally Securities (the "ResCap Settlement", defined above) which, as described above, was reached after days of multiparty mediation within the context of the ResCap bankruptcy under the auspices of Judge Peck.

    K.    <u>Additional Motions to Modify Class Filed</u>

On August 6, 2013, the Underwriter Defendants and DBSI moved to revisit the First Class Definition Modification Order and the Reinstatement Order (the "*IndyMac* Motion") in light of the Second Circuit's ruling in *Police & Fire Retirement System of City of Detroit v. IndyMac MBS, Inc*., 721 F.3d 95 (2d Cir. 2013), cert. dismissed, 135 S. Ct. 42 (2014).   On October 7, 2013, the Court issued an order and final judgment, which included a bar order and judgment reduction provision, approving the ResCap Settlement.

On October 15, 2013, Lead Plaintiff filed a supplemental  brief in support of the Second Class Definition Modification Motion, in which Lead Plaintiff sought to expand the class to cover all purchasers who bought certificates on or before October 17, 2007, pursuant or traceable to twenty-two Offerings underwritten by the Underwriter Defendants or Deutsche Bank.   On December 18, 2013, the Court granted in part the *IndyMac* Motion and dismissed Deutsche Bank and all claims arising from the Offerings underwritten by Deutsche Bank from the Litigation.

    L.    <u>Class Definition Modified</u>

On December 27, 2013, after full briefing and oral argument, the District Court granted in part Lead Plaintiff's Second Class Certification Motion.  The Court denied Lead Plaintiff's request to expand the class definition beyond the definition set forth in the First Class Definition Modification Order except the Court expanded the class to encompass sixteen Offerings underwritten by the Underwriter Defendants and designated New Jersey Carpenters Health Fund and New Jersey Carpenters Vacation Fund as Class Representatives.  Of the sixteen Offerings at issue in the Second Class Definition Modification Order, CITI underwrote certificates in four of those Offerings, Goldman Sachs underwrote certificates in ten, and UBS underwrote certificates in three.  Certain tranches of one of those Offerings (RALI Series 2006-QS15) were underwritten by UBS, while others were underwritten by Goldman Sachs.

M.      Third Rule 23(f) Petition Fully Briefed and Decided

On January 10, 2014, the Underwriter Defendants petitioned the Second Circuit for permission to appeal the Second Class Definition Modification Order pursuant to Rule 23(f) of the Federal Rules of Civil Procedure.  On May 28, 2014, the Second Circuit denied that petition.

N.      Fact Discovery Completed

During the years of motion process described above, the parties also completed full fact discovery, including the review of over four million pages of documents, the service of 320 nonparty subpoenas, and taking sixteen depositions relating to sixteen RMBS Offerings in addition to gathering and closely examining thousands of loan files (a process which included hiring experts to review a statistically significant sample of the over 38,000 loan files at issue).

O.      Expert Discovery Completed

After the completion of fact discovery, the parties engaged in full expert discovery, which involved Lead Plaintiff submitting eight expert reports (including reports from experts in statistics, a loan origination expert who reunderwrote a sample of the more than 38,000 loans at

13

issue; an expert on investment banking due diligence; two experts on loss causation issues; and an expert on damages), Defendants submitting five expert reports (expert reports on damages, due diligence, and loss causation expert); and a total of sixteen expert depositions.

       P.      Summary Judgment and *Daubert* Motions Filed

On October 17, 2014, Lead Plaintiff and Defendants both submitted papers in support of summary judgment and to strike certain proffered expert reports submitted by the other side.

## III.    SETTLEMENT NEGOTIATIONS

The settlement was negotiated under the auspices of the Honorable Daniel Weinstein (Ret), a former judge and one of the most experienced and respected mediators in the country. On or around June 21, 2013, Lead Counsel began mediation with Defendants. After the submission of mediation statements and supplemental mediation statements, multiple days of mediation over a period of four months and after numerous conference calls and emails, the Settling Parties reached a definitive agreement in principle on November 18, 2014 with respect to the Settlement Amount of $235 million and related terms. On November 21, 2014 Lead Counsel and Underwriter Defendants' Counsel notified the District Court and Second Circuit of the agreement in principle to settle the Action.

       A.      Plan of Allocation

Lead Counsel constructed a plan of allocation based on the strength of claims in the case at the time of settlement.[5] Specifically, the proposed plan of allocation divides both the Underwriter Settlement and ResCap settlement into three groups – Group 1 (reserved for

---

[5] *See, e.g. In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 580 (S.D.N.Y. 2008) ("A reasonable plan may consider the relative strength and values of different categories of claims."); *In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319 (S.D.N.Y. 2005) (approving plan of allocation that provided no recovery for certain class members who had purchased predating the Class Period); *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1045 (N.D. Cal. 2008) ("It is reasonable to allocate the settlement funds to class members based on … strength of their claims on the merits."); *In re Enron Corp. Sec.*, MDL No. 1446, 2008 U.S. Dist. LEXIS 84656 (S.D. Tex. Sept. 8, 2008) (plan of allocation approved that provided only 10% of the settlement fund to claims that included weaker claims on the merits and securities not even asserted in the complaint but added to the settlement.).

14

members of the currently certified class), Group 2 (reserved for those purchasers outside of the currently certified class whose claims remained in the case and who purchased prior to the date of First Suit), and Group 3 (reserved for claims dismissed from or otherwise no longer in the case).  As described in the Global Settlement Plan of Allocation included in the attached Notice, approximately 88.182% of the settlement funds are allocated to Group 1 claimants, 10.455% are allocated to Group 2 claimants, and 1.364% allocated to Group 3 claimants.  This approach has been approved in a number of mortgage-backed securities settlements.[6]  In fact, this exact same approach – with the exact same percentages attached to the same three general groups – was utilized in the accompanying Harborview settlement and approved of by Chief Judge Preska. *See N.J. Carpenters Vacation Fund v. Royal Bank of Scotland Grp., PLC*, No. 08 Civ. 5093 (Dkt. 282, S.D.N.Y. Nov. 4, 2014).  Moreover, Judge Weinstein independently reviewed the proposed Plan of Allocation as a condition of settlement and found it fair.

## IV.   ARGUMENT

### A.   The Proposed Settlement Warrants Preliminary Approval

In reviewing a proposed Settlement by the parties prior to final approval, the Court should preliminarily certify the Underwriter Settlement Class for purposes of the Settlement and to issue notice under Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure.  The proposed Underwriter Settlement Class consists of:

> All Persons who purchased or otherwise acquired interests in the Certificates on or before the date when a claim concerning those Certificates was first asserted in the Litigation.  Excluded from the Settlement Class are those Persons who have filed a timely and valid request for exclusion in accordance with the requirements set forth

---

[6] *See generally In re Lehman Bros. Mortgage-Backed Sec. Litig.*, No. 08-cv-6762, 09MD2017 (LAK) (S.D.N.Y.) (21% of settlement fund to dismissed tranches at discounted rate); *Maine State Ret. Sys. v. Countrywide Fin. Corp.*, No. 10-cv-00302-MRP (MANx) (C.D. Cal.) (approving settlement and overruling class member who objected to plan of allocation which allocated money to class members in different buckets depending on the strength of their claims); *In re Wells Fargo Mortgage-Backed Certificates Litig.*, No. 09-CV-1376-LHK (PSG) (N.D. Cal.) (12% allocated to dismissed tranches).

15

in the Notice, it being understood and agreed that those Persons who have filed individual actions to separately pursue claims against the Underwriter Defendants relating to the Certificates or the Offerings are nevertheless required to file a timely and valid request for exclusion in order to be excluded from the Settlement Class. Also excluded from the Settlement Class are the Underwriter Defendants.

*See* Stipulation and Agreement of Settlement ¶1(ss).

The settlement of complex class action litigation is favored by public policy and strongly encouraged.[7]  Approval of a proposed settlement is within the district court's discretion, to be exercised in accordance with public policy strongly favoring pretrial settlement of class actions.[8]

"Review of a proposed class action settlement generally involves a two-step process: preliminary approval and a 'fairness hearing.'  First, the court reviews the proposed terms of settlement and makes a preliminary determination on the fairness, reasonableness and adequacy of the settlement terms." *In re Initial Pub. Offering Sec. Litig.*, 226 F.R.D. 186, 191 (S.D.N.Y. 2005).  During this first step, a court must consider whether the settlement warrants preliminary approval, providing notice to the proposed class and the scheduling of a final settlement hearing. In the second step, after notice of the proposed settlement has been provided to the class and a hearing has been held to consider the fairness and adequacy of the proposed settlement, the court considers whether the settlement warrants "[f]inal approval." *Id.* at 200 n.71

As explained by Judge Sweet:

In considering preliminary approval, courts make a preliminary evaluation of the fairness of the settlement, prior to notice.  Where the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the range of possible

---

[7] *See Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116-17 (2d Cir. 2005) ("We are mindful of the strong judicial policy in favor of settlements, particularly in the class action context.  The compromise of complex litigation is encouraged by the courts and favored by public policy.") (citations and internal quotation marks omitted).

[8] *In re Interpublic Sec. Litig.*, Nos. 02 Civ. 6527 (DLC), 03 Civ. 1194 (DLC), 2004 WL 2397190, at *7 (S.D.N.Y. Oct. 26, 2004); *see also In re PaineWebber Ltd. P'ships Litig.*, 147 F.3d 132, 138 (2d Cir. 1998).

approval, preliminary approval is granted.   Once preliminary approval is bestowed, the second step of the process ensues. . . . [9]

In essence, the Court should determine if the settlement is "sufficiently fair, reasonable and adequate to justify notice to those affected and an opportunity to be heard."[10]   The terms of the Underwriter Settlement here are well "within the range of possible approval." *Initial Pub. Offering*, 243 F.R.D. at 87

In addition, the Underwriter Settlement was negotiated at arm's-length by counsel well-informed of the issues after six years of litigation who possess extensive experience in complex securities litigation.  Moreover, the Settlement was achieved under the auspices of former Judge Daniel Weinstein, one of the most respected mediators in the country and approved of by the sophisticated institutional investors who serve as Lead Plaintiff and Class Representatives in the case.  These factors further support approval of the Settlement.[11]

At the time the settlement agreement was reached, after six years of litigation and completing fact and expert discovery, Lead Plaintiff and Class Counsel had a thorough understanding of the strengths and weaknesses of the claims of the Underwriter Settlement Class and the potential obstacles to recovery.  Although Lead Plaintiff and Lead Counsel believe that the claims asserted in the Action are meritorious, continued litigation against the Underwriter Defendants posed significant risks that made any recovery for the Underwriter Class uncertain.

---

[9] *In re NASDAQ Market-Makers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y. 1997) (citations omitted); *see also In re Initial Pub. Offering Sec. Litig.*, 243 F.R.D. 79, 87 (S.D.N.Y. 2007).

[10] *NASDAQ*, 176 F.R.D. at 102 (citation omitted); *In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 163 F.R.D. 200, 209 (S.D.N.Y. 1995) ("The Court's function now is to ascertain whether there is any reason to notify the class members of the proposed settlement and to proceed with a fairness hearing.") (citation and internal quotation marks omitted).

[11] *See D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) (a "mediator's involvement in . . . settlement negotiations helps to ensure that the proceedings were free of collusion and undue pressure"); *Telik,* 576 F. Supp. 2d at 576 (the use of an experienced mediator "in the settlement negotiations strongly supports a finding that they were conducted at arm's-length and without collusion."); *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 462 (S.D.N.Y. 2004) (the participation of sophisticated institutional investor lead plaintiffs in the settlement process supports approval of settlement).

From the outset, Lead Counsel and Lead Plaintiff appreciated the unique and significant risks inherent in this litigation. At the time of the initial filing, there was little established precedent for MBS litigation, and no court had sustained claims under the federal securities laws for purchasers of RMBS securities.  Likewise, no court at that time had certified an RMBS class or accepted plaintiffs' damages theories arising from such claims.

While Lead Plaintiff believe its claims are strong, they were aware of the limited precedent that existed for RMBS-specific class litigation, and how that limited precedent could influence motions for summary judgment, not to mention at trial and on appeal. Lead Plaintiff also faced numerous affirmative defenses to the claims at issue, including statute of limitations and that Lead Plaintiff and the Underwriter Class had "actual knowledge" of the false and misleading statements at the time they purchased the securities. While Lead Plaintiff defeated these arguments, and others, at the motion to dismiss and class certification stage, they would doubtless be brought up again at trial.

Lead Plaintiff also anticipated that Defendants would assert that the evidence did not support a finding that the Offering Documents contained any false statements. For example, Defendants asserted a "due diligence" defense and Lead Plaintiff expected that Defendants would continue to contend that they conducted appropriate reviews and analyses of the character and quality of loans prior to the loans being securitized in the Offerings. Even assuming that Lead Plaintiff prevailed at trial in establishing untrue statements and omissions in the Offering Documents, Defendants would still have the opportunity to persuade the Court, or the jury, that the statutory damages pursuant to Section 11 of the Securities Act should be reduced or eliminated because a portion, or all, of the losses are attributable to causes other than the

misstatements or omissions.[12]  Defendants here would likely aggressively contend that any losses were caused by factors other than untrue statements in the Offering Documents, such as the downturn in the economy and the housing market. Given that the timing of the price declines at issue coincided with the national economic downturn, Defendants' "negative causation" defense was an argument that would likely have to be resolved through extensive expert testimony at trial.[13] The proposed Underwriter Settlement of $235,000,000.00, when viewed in the context of these risks and the uncertainties involved with any litigation, is extremely beneficial to the Underwriter Settlement Class.

In sum, the Underwriter Settlement was negotiated at arm's-length, by counsel who are experienced in complex securities litigation and who were acting in an informed manner. The Action was actively prosecuted for six years, beginning at a time when there was little or no precedent in the MBS area. As discussed above, Lead Counsel conducted substantial investigations and discovery during this time and, accordingly, are well-informed as to the operative facts and potential risks of the Action. Under these circumstances, a presumption of fairness attaches to the proposed Settlement.[14]

B.    Notice to the Class Should Be Approved

As outlined in the Preliminary Approval Order, Lead Plaintiff will notify Underwriter Settlement Class and ResCap Settlement Class members of the Underwriter Settlement by mailing the Notice to all Settlement Class Members who can be identified with reasonable

---

[12] Under Section 11, recoverable damages are based on the difference between the purchase price of the security and the value of the security on the date the lawsuit was filed, subject to reduction for "negative causation."

[13] *See, e.g., In re Giant Interactive Grp., Inc., Sec. Litig.*, 279 F.R.D. 151, 161-62 (S.D.N.Y. 2011) (approving settlement where the litigation risks included a "credible defense of 'negative causation'").

[14] *See Wal-Mart*, 396 F.3d at 116 (A "presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery.") (quoting Manual for Complex Litigation, Third § 30.42 (1995)); *In re Marsh & McLennan Cos. Sec. Litig.*, No. 04 Civ. 8144 (CM), 2009 WL 5178546, at *4 (S.D.N.Y. Dec. 23, 2009) (same).

19

effort.[15]   The proposed Preliminary Approval Order further requires Lead Plaintiff to cause the Notice to be sent to Underwriter and ResCap Settlement Class members at their last known address and to identifiable nominees for Underwriter and ResCap Settlement Class members.

The form and manner of providing notice to the Settlement Class satisfy the requirements of due process, Rule 23, and the Private Securities Litigation Reform Act, 15 U.S.C. § 77u-4. The Notice and Summary Notice "fairly apprise the prospective members of the class of the terms of the proposed settlement[s] and of the options that are open to them in connection with the proceedings." *Wal-Mart*, 396 F.3d at 114 (citation and internal quotation marks omitted). The manner of providing notice, which includes individual notice by mail to all Underwriter and ResCap Settlement Class members who can be reasonably identified, represents the best notice practicable under the circumstances and satisfies the requirements of due process and Rule 23.[16]

### C.   Certification of the Class for Settlement Purposes is Appropriate

In reviewing a proposed settlement by the parties prior to final approval, the Court should certify the class for purposes of the settlement under Fed. R. Civ. P. 23(a) and (b)(3).  Previously the Court certified a class of purchasers in sixteen RALI Offerings and appointed New Jersey Carpenters Vacation Fund and New Jersey Carpenters Health Fund as Class Representatives. The proposed Settlement Class expands the number of offerings to twenty (including four Offerings previously dismissed or dropped from the case) and broadens the time period to encompass the scope of the Settlement and related releases.   The Second Circuit has long

---

[15] The Notice will advise the Underwriter and ResCap Settlement Class Members of (i) the pendency of the Underwriter Settlement class action; (ii) the essential terms of the Underwriter Settlement; (iii) information regarding Lead Plaintiff's  Motion for Fees and Reimbursement of Expenses; and (iv) the Plan of Allocation for both the Underwriter and ResCap Settlements.  The Notice also will provide specifics on the date, time and place of the Settlement Hearing and set forth the procedures for objecting to the Underwriter Settlement, the Plan of Allocation, and the motions for attorneys' fees and reimbursement of expenses.

[16] *See In re Warner Chilcott Ltd. Sec. Litig.*, No. 06 Civ. 11515 (WHP), 2008 WL 5110904, at *3 (S.D.N.Y. Nov. 20, 2008); *Global Crossing*, 225 F.R.D. at 448-49.

acknowledged the propriety of certifying a class solely for purposes of a class action settlement.[17]  "[S]ettlement classes are favored when there is little or no likelihood of abuse, and the settlement is fair and reasonable and under the scrutiny of the trial judge." *Prudential*, 163 F.R.D. at 205. (quoting *In re Beef Indus. Antitrust Litig.*, 607 F.2d 167, 174 (5th Cir. 1979)).

A settlement class, like other certified classes, must satisfy all the requirements of Rule 23(a) and (b).[18]   In certifying the Sixteen Offering Class, the Court has already found that class treatment is appropriate and the standards of Rule 23 have been met in addition to appointing class representatives.  Here, the proposed Settlement Class meets all the requirements of Rule 23, there is no likelihood of abuse of the class action device in this Settlement context, and the settlement is fair, reasonable, and subject to the Court's approval.   As explained *infra*, certification is appropriate because the Settlement Class meets all the requirements of Rule 23(a) and Rule 23(b)(3).

### 1.   The Class Satisfies the Requirements of Rule 23(a)

Certification is appropriate under Rule 23(a) if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.  Fed. R. Civ. P. 23(a).

#### a.   *Numerosity*

---

[17] *See In re Am. Int'l Grp. Inc. Sec. Litig.*, 689 F.3d 229, 238–39 (2d Cir. 2012); *Weinberger v. Kendrick*, 698 F.2d 61, 73 (2d Cir. 1983); *Marsh*, 2009 WL 5178546, at *8.

[18] *See Denney v. Deutsche Bank AG*, 443 F.3d 253, 270 (2d Cir. 2006).  Nevertheless, the manageability concerns of Rule 23(b)(3) are not at issue.  *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 593 (1997) ("Whether trial would present intractable management problems . . . is not a consideration when settlement-only certification is requested . . .").

Class certification under Rule 23(a)(1) is appropriate where a class contains so many members that joinder of all would be "impracticable."  Fed. R. Civ. P. 23(a)(1).  Numerosity is presumed when a class consists of forty members or more. *See Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995).  The Court has already found numerosity with respect to the Offerings previously certified.  Accordingly, it is indisputable that numerosity is satisfied with the addition of purchasers in four more Offerings now included in the Settlement Class and the temporal expansion of the class.[19]

b. *Commonality*

What matters "to class certification . . . is . . .  the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation."  *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551, 180 L. Ed. 2d 374 (2011). As was held recently in this case when certifying the Sixteen Offering Class, "Defendants' compliance with underwriting guidelines and due diligence requirements and nondisclosure of adverse information, will generate common answers apt to drive the resolution of the litigation."[20]   As, the "addition of new offerings … does not disturb this analysis," the Settlement Class meets the commonality requirement.  [21]

c. *Typicality*

Rule 23(a)(3) requires that the claims of the class representatives be "typical" of the claims of the class.  Fed. R. Civ. P. 23(a)(3).  The focus of the typicality inquiry is not the plaintiff's behavior, but rather the defendants' actions. *See Teachers' Ret. Sys. of La. v. ACLN Ltd.*, No. 01 Civ. 11814 (LAP), 2004 WL 2997957, at *4 (S.D.N.Y. Dec. 27, 2004).  The critical

---

[19] *See, e.g., N.J. Carpenters Health Fund v. Residential Capital, LLC*, Nos. 08 Civ. 5093 (HB), 08 Civ. 8781(HB), 2013 U.S. Dist. LEXIS 180913, at *18 (S.D.N.Y. Dec. 27, 2013).  ("Here, where the classes have been expanded, Plaintiffs plainly meet numerosity requirements.").

[20] *N.J. Carpenters Health Fund*, 2013 U.S. Dist. LEXIS 180913, at *19. (internal citations omitted).

[21] *Id.* at *20.

22

question is whether the proposed class representatives and the class can point to the same "common course of conduct" by defendants to support a claim for relief. *Id.* at *5. Here, this Court "previously held that typicality was satisfied" and noted that the "proposed [additional] Offerings" did not change the analysis or result.[22] The same rationale applies here as the same alleged course of conduct by the Underwriter Defendants caused the injuries to Lead Plaintiff, and the members of the Underwriter Settlement Class, and liability for this conduct is predicated on the same legal theories.

    d.  *Adequate Representation*

Rule 23(a)(4), the requirement of adequacy, is satisfied when "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). A district court must inquire whether "1) plaintiff's interests are antagonistic to the interest of other members of the class and 2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation." *In re Flag Telecomm. Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 35 (2d Cir. 2009) (citation omitted). "In order to defeat a motion for certification [any conflict of interest] must be fundamental." *Id.* (citation and internal quotation marks omitted). This Court already found the Class Representatives for the Sixteen Offering Class and Cohen Milstein adequate representatives of the class and there is no reason they cannot serve as Class Representatives and Class Counsel for the settlement class.[23]

    2.  The Class Representatives' Claims Satisfy the Prerequisites of Rule 23(b)(3)

      a.  *Common Legal and Factual Questions Predominate*

---

[22] *N.J. Carpenters Health Fund*, 2013 U.S. Dist. LEXIS 180913, at *20.

[23] *See N.J. Carpenters Health Fund*, 2013 U.S. Dist. LEXIS 180913, at *21-*22 (adequacy for Sixteen Offering Class satisfied as "I have already held that New Jersey Carpenters Funds are adequate representatives and the proposed RALI Offerings do not change my analysis.").

"Class-wide issues predominate if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof."[24]   Here, this Court previously found, on multiple occasions – culminating in the certification of the Sixteen Offering Class, that "while individualized analysis may arise, particularly with respect to certain affirmative defenses, class-wide issues predominate."[25]   For the Underwriter Settlement Class, of course, these affirmative defenses, including the "knowledge" defense, do not interfere with predominance because there will be no need for individualized trials on the issue of "knowledge" or any other affirmative defense.   Therefore, the Underwriter Settlement Class fulfills Rule 23(b)(3)'s predominance requirement.

b.   *A Class Action is Superior to Other Methods of Adjudication*

Rule 23(b)(3) sets forth the following non-exhaustive factors to be considered in making a determination of whether class certification is the superior method of litigation: "(A) the class members' interests in individually controlling the prosecution . . . of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by . . . class members; (C) the desirability . . . of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action."   *See* Fed. R. Civ. P. 23(b)(3).

As this Court previously found on multiple occasions, "classwide treatment is the superior method for adjudicating the issues raised in these cases."[26]   That is even more true for the Settlement Class because, as the Supreme Court explained in *Amchem*, "[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case,

---

[24] *UFCW Local 1776 v. Eli Lilly & Co.*, 620 F.3d 121, 131 (2d Cir. 2010) (citation and quotation marks omitted).

[25] *N.J. Carpenters Health Fund*, 2013 U.S. Dist. LEXIS 180913, at *23.

[26] *N.J. Carpenters Health Fund*, 2013 U.S. Dist. LEXIS 180913, at *25.

if tried, would present intractable management problems . . . for the proposal is that there be no trial." 521 U.S. at 620. Accordingly, the requirements of Rule 23(b)(3) are satisfied.

## V.   PROPOSED SCHEDULE OF EVENTS

Lead Plaintiff proposes the following schedule:

| Event | Proposed Date/Deadline |
|---|---|
| **Publish Notice of Settlement and Begin Mailing Long Form Notice to Class Members** | 30 calendar days after Preliminary Approval Order is entered |
| **Deadline to File Requests for Exclusion from Settlement** | 28 calendar days before Final Approval Hearing |
| **Deadline to File Motion for Final Approval of Settlement and for Reimbursement of Litigation Expenses** | 28 calendar days before Final Approval Hearing |
| **Objections to Final Approval and Reimbursement of Litigation Expenses** | 14 calendar days before Final Approval Hearing |
| **Reply to Objections, if any** | 7 calendar days before Final Approval Hearing |
| **Final Settlement Approval Hearing in District Court** | To be determined by the Court |

## VI.   CONCLUSION

Lead Plaintiff respectfully request that the Court grant this unopposed motion. A proposed Preliminary Order is being submitted herewith.

25

Dated:  New York, New York
February 13, 2015

**COHEN MILSTEIN SELLERS
 & TOLL PLLC**


By: _____ /s/ *Joel P. Laitman* _____
    Joel P. Laitman
    Christopher Lometti
    Michael B. Eisenkraft
    Richard Speirs
    Daniel B. Rehns
    Kenneth M. Rehns
   88 Pine Street, Fourteenth Floor
   New York, New York 10005
   Telephone: (212) 828-7797
   Facsimile: (212) 828-7745
   jlaitman@cohenmilstein.com
   clometti@cohenmilstein.com
   rspeirs@cohenmilstein.com
   meisenkraft@cohenmilstein.com
   drehns@cohenmilstein.com
   krehns@cohenmilstein.com


    Steven J. Toll
    S. Douglas Bunch
   1100 New York Avenue NW, Suite 500 West
   Washington, D.C. 20005
   Telephone: (202) 408-4600
   Facsimile: (202) 408-4699
   stoll@cohenmilstein.com
   dbunch@cohenmilstein.com

26

**CERTIFICATE OF SERVICE**

I hereby certify that on February 13, 2015, I caused the foregoing brief to be electronically filed with the Clerk of the Court using the ECF system which will send notification of such filing to all counsel.

**COHEN MILSTEIN SELLERS
& TOLL PLLC**

*/s/ Michael Eisenkraft*
Michael Eisenkraft
88 Pine Street
Fourteenth Floor
New York, NY 10005
Telephone: (212) 838-7797
Facsimile: (212) 838-7745

1968337.1