UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| New Jersey Carpenters Health Fund, *et al.*,<br><br>      Plaintiffs,<br><br>      v.<br><br>Residential Capital, LLC, *et al.*,<br><br>      Defendants. | No. 08-cv-8781 (KPF) |

**STIPULATION AND AGREEMENT OF SETTLEMENT**

This Stipulation and Agreement of Settlement dated as of February 11, 2015 (the "Stipulation" or the "Settlement"), is made and entered into by and among (i) New Jersey Carpenters Health Fund ("Lead Plaintiff") and the Named Plaintiffs (as defined below), on behalf of themselves and each Settlement Class Member (as defined below), by and through their counsel, and (ii) Citigroup Global Markets Inc. ("Citigroup"), Goldman, Sachs & Co. ("GS&Co."), and UBS Securities LLC ("UBS" and, together with Citigroup and GS&Co., the "Underwriter Defendants"), by and through their counsel, and is submitted pursuant to Rule 23 of the Federal Rules of Civil Procedure.

The Settlement is intended by the Settling Parties (as defined below) to fully, finally, and forever compromise, settle, release, resolve, discharge, and dismiss with prejudice the Litigation (as defined below), all Released Claims (as defined below), and all Released Underwriter Defendants Claims (as defined below) as against all Released Parties (as defined below), upon and subject to the terms and conditions stated in this Stipulation and final approval of the Court.

**WHEREAS**:

A.     All terms with initial capitalization shall have the meanings ascribed to them in Paragraph 1 below or as otherwise defined herein.

B.     On September 22, 2008, Lead Plaintiff commenced the Litigation by filing a complaint styled *New Jersey Carpenters Health Fund v. RALI Series 2006-QO1, et al.*, Index No. 2008/602727 (the "State Court Complaint"), in the New York State Supreme Court, New York County.  The State Court Complaint asserted claims under Sections 11, 12(a)(2), and 15 of the Securities Act of 1933 (the "Securities Act") for alleged misstatements and omissions in the Offering Materials for 13 offerings of mortgage asset-backed pass-through certificates.

C.     On October 14, 2008, the Litigation was removed to the Court.

D.     On November 12, 2008, notice of the Litigation was published pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA"), notifying eligible purchasers of the certificates about their right to move for appointment as lead plaintiff.  On June 30, 2009, the Court appointed the New Jersey Carpenters Health Fund as lead plaintiff and approved Cohen Milstein Sellers & Toll PLLC as lead counsel.

E.     On May 18, 2009, Lead Plaintiff and the Original Named Plaintiffs filed a Consolidated First Amended Securities Class Action Complaint styled *New Jersey Carpenters Health Fund, et al. vs. Residential Capital, LLC, et al.*, No. 08-cv-8781 (S.D.N.Y.) (the "First Amended Complaint"), with the Court.  The defendants named in the First Amended Complaint included the ResCap Defendants, the Individual Defendants, Ally Securities, the Underwriter Defendants, and the Dismissed Underwriter Defendants.  The First Amended Complaint asserted claims under Sections 11, 12(a)(2), and 15 of the Securities Act for alleged misstatements and

omissions in the Offering Materials for 59 offerings of mortgage asset-backed pass-through certificates (11 of which were previously identified in the State Court Complaint).

F.     On July 17, 2009, the Defendants moved to dismiss the First Amended Complaint (the "First Motions to Dismiss").

G.     On March 31, 2010, the Court granted in part and denied in part the First Motions to Dismiss (the "First Motion to Dismiss Order").  The Court found that Lead Plaintiff and the Original Named Plaintiffs had standing to assert claims only in connection with the four offerings as to which they purchased certificates (the "Four Offerings").  The Court dismissed for lack of standing all claims arising from the 55 other offerings as to which Lead Plaintiff and the Original Named Plaintiff did not purchase certificates.   As a result, the Dismissed Underwriter Defendants were dismissed from the Litigation.

H.     On May 26, 2010, the ResCap Defendants, the Individual Defendants, Ally Securities, and the Underwriter Defendants answered the First Amended Complaint.

I.     Between June 10, 2010 and July 30, 2010, the Intervenor Plaintiffs and Mississippi Public Employees' Retirement System ("MissPERS") moved to intervene (the "Motions to Intervene") in the Litigation to represent purchasers of certificates from seven offerings (the Court had held in the First Motion to Dismiss Order that Lead Plaintiff and the Original Named Plaintiffs lacked standing to pursue claims arising from six of those offerings).  On December 22, 2010, the Court granted the Motions to Intervene, restoring to the Litigation claims arising from those six offerings as to which the Court had held that Lead Plaintiff and the Original Named Plaintiffs lacked standing, including claims against Deutsche Bank Securities Inc. ("DBSI") as an underwriter for two of those offerings.

J.      On August 16, 2010, Lead Plaintiff and the Original Named Plaintiffs moved to certify a putative class of purchasers of certificates issued in the Four Offerings, to certify Lead Plaintiff and the Original Named Plaintiffs as class representatives, and to appoint Lead Counsel as class counsel (the "First Class Certification Motion").

K.      On January 3, 2011, Plaintiffs filed the Consolidated Second Amended Securities Class Action Complaint ("Second Amended Complaint"), which, *inter alia*, added the claims of the Intervenor Plaintiffs.

L.      On January 18, 2011, the Court denied the First Class Certification Motion (the "First Class Certification Order").  While the Court found that the proposed class satisfied each factor of Rule 23(a) of the Federal Rules of Civil Procedure, including numerosity, commonality, adequacy, and typicality, it found pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure that individual issues of investor knowledge predominated and that a class action was not the superior method of adjudication, thus precluding class certification.

M.      On January 24, 2011, Lead Plaintiff and the Original Named Plaintiffs petitioned the United States Court of Appeals for the Second Circuit (the "Second Circuit"), pursuant to Rule 23(f) of the Federal Rules of Civil Procedure, for permission to appeal the First Class Certification Order.  On February 29, 2011, the Second Circuit granted that petition.

N.      On January 25, 2011, the ResCap Defendants, the Individual Defendants, Ally Securities, the Underwriter Defendants, and DBSI moved to dismiss the Intervenor Plaintiffs' claims asserted in the Second Amended Complaint and MissPERS from the Litigation (the "Second Motion to Dismiss").

O.      On April 28, 2011, the Court granted in part and denied in part the Second Motion to Dismiss (the "Second Motion to Dismiss Order").  The Court dismissed the Intervenor

Plaintiffs' Section 12(a)(2) claims. The Court further dismissed MissPERS and all claims related to the certificates issued by the RALI Series 2006-QO6 Trust from the Litigation.

      P.      On April 30, 2012, the Second Circuit affirmed the First Class Certification Order without prejudice to further consideration by the Court of class certification.

      Q.      On May 14, 2012, the ResCap Defendants filed voluntary petitions under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of New York, in a proceeding styled *In re Residential Capital, LLC, et al.*, No. 12-bk-12020 (Bankr. S.D.N.Y. 2012).

      R.      On August 6, 2012, Lead Plaintiff and the Original Named Plaintiffs filed a renewed motion for class certification in connection with the Four Offerings (the "Second Class Certification Motion"). The Second Class Certification Motion sought, *inter alia*, certification of a putative class with a restricted temporal scope encompassing only purchases of the certificates made prior to any ratings downgrades of the certificates and excluding the Federal National Mortgage Association and the Federal Home Loan Mortgage Corporation from the class definition.

      S.      On October 15, 2012, the Court granted in part the Second Class Certification Motion and appointed Lead Plaintiff and the Original Named Plaintiffs as class representatives for a class of purchasers who bought certificates that were issued in the Four Offerings on their respective offering dates directly from the issuers (the "Second Class Certification Order").

      T.      On November 5, 2012, Lead Plaintiff and the Original Named Plaintiffs moved for reconsideration of the Second Class Certification Order, seeking to expand the class to include those initial purchasers who bought certificates that were issued in the Four Offerings

from the respective underwriters or their agents no later than ten trading days after those certificates' respective offering dates (the "First Class Definition Modification Motion").

U.     On November 16, 2012, Plaintiffs sought reconsideration of the First Motion to Dismiss Order in light of the Second Circuit's ruling in *NECA-IBEW Health & Welfare Fund v. Goldman, Sachs & Co.*, 693 F.3d 145 (2d Cir. 2012) (the "*NECA* Reconsideration Motion"). The *NECA* Reconsideration Motion sought to reinstate certain claims arising from the 55 offerings that had been dismissed in the First Motion to Dismiss Order.

V.     On November 16, 2012, the Individual Defendants, Ally Securities, the Underwriter Defendants, and DBSI moved, *inter alia*, to dismiss claims asserted by the Intervenor Plaintiffs as barred by the statute of repose set forth in Section 13 of the Securities Act (the "Third Motion to Dismiss").

W.     On January 3, 2013, the Court (i) denied the Third Motion to Dismiss, (ii) denied the *NECA* Reconsideration Motion without prejudice to its renewal following the resolution of the *certiorari* petition pending before the United States Supreme Court in the *NECA* case, (iii) granted the First Class Definition Modification Motion, and (iv) appointed Lead Plaintiff and New Jersey Carpenters Vacation Fund as class representatives of the modified class (the "First Class Definition Modification Order").

X.     On October 31, 2012 and January 18, 2013, the Individual Defendants, Ally Securities, and the Underwriter Defendants petitioned the Second Circuit for permission to appeal the Second Class Certification Order and First Class Definition Modification Order, respectively, pursuant to Rule 23(f) of the Federal Rules of Civil Procedure. On March 26, 2013, the Second Circuit denied those petitions.

Y.      On April 30, 2013, following the United States Supreme Court's denial of the *certiorari* petition in *NECA*, the Court granted in part and denied in part the *NECA* Reconsideration Motion (the "Reinstatement Order"), and reinstated claims arising from 37 offerings that were dismissed from the Litigation in the First Motion to Dismiss Order.

Z.      On May 10, 2013, Plaintiffs filed a Consolidated Third Amended Securities Class Action Complaint (the "Third Amended Complaint"), which named the Individual Defendants, Ally Securities, the Underwriter Defendants, and DBSI as defendants and asserted claims arising from 41 offerings.

AA.     On June 10, 2013, the Underwriter Defendants answered the Third Amended Complaint.

BB.     On June 25, 2013, Plaintiffs moved to modify the class to encompass the 41 offerings identified in the Third Amended Complaint and to appoint New Jersey Carpenters Health Fund, New Jersey Carpenters Vacation Funds, and Local 74 USWU Welfare Fund as class representatives (the "Second Class Definition Modification Motion").

CC.     On June 28, 2013, the Court preliminarily approved a settlement between Plaintiffs, on behalf of a settlement class, and the ResCap Defendants, Individual Defendants, and Ally Securities (the "ResCap Settlement").

DD.     On August 6, 2013, the Underwriter Defendants and DBSI moved to revisit the First Class Definition Modification Order and the Reinstatement Order (the "*IndyMac* Motion") in light of the Second Circuit's ruling in *Police & Fire Ret. Sys. of City of Detroit v. IndyMac MBS, Inc.*, 721 F.3d 95 (2d Cir. 2013), *cert. dismissed*, 135 S.Ct. 42 (2014).

EE.     On October 8, 2013, the Court issued an order and final judgment, which included a bar order and judgment reduction provision, approving the ResCap Settlement.

FF.     On October 15, 2013, Plaintiffs filed a supplemental memorandum of law in support of the Second Class Definition Modification Motion, in which Plaintiffs sought to expand the class to cover all purchasers who bought certificates on or before October 17, 2007, pursuant or traceable to 22 offerings underwritten by the Underwriter Defendants or DBSI.

GG.     On December 18, 2013, the Court granted in part the *IndyMac* Motion and dismissed DBSI and all claims arising from the offerings underwritten by DBSI from the Litigation.

HH.     On December 27, 2013, the Court granted in part the Second Class Definition Modification Motion (the "Second Class Definition Modification Order"). The Court denied Plaintiffs' request to expand the class definition beyond the definition set forth in the First Class Definition Modification Order except the Court expanded the class to encompass 16 offerings underwritten by the Underwriter Defendants and designated New Jersey Carpenters Health Fund and New Jersey Carpenters Vacation Fund as class representatives. Of the 16 offerings at issue in the Second Class Definition Modification Order, Citigroup underwrote certificates in four of those offerings, GS&Co. underwrote certificates in ten, and UBS underwrote certificates in three. Certain tranches of one of those offerings (RALI Series 2006-QS15) were underwritten by UBS, while others were underwritten by GS&Co.

II.     On January 10, 2014, the Underwriter Defendants petitioned the Second Circuit for permission to appeal the Second Class Definition Modification Order pursuant to Rule 23(f) of the Federal Rules of Civil Procedure. On May 28, 2014, the Second Circuit denied that petition.

JJ.     On October 17, 2014, Plaintiffs moved, *inter alia*, for partial summary judgment and to strike certain of the Underwriter Defendants' proffered expert reports.

KK.     On October 17, 2014, the Underwriter Defendants moved for summary judgment and to exclude in part the testimony of certain of Plaintiffs' proffered experts.

LL.     On or about November 18, 2014, after extensive arm's-length negotiations, on multiple occasions, in person and by exchange of proposals, with the assistance of the Honorable Daniel Weinstein (Retired), Lead Plaintiff and the Underwriter Defendants reached an agreement in principle to settle the Litigation.

MM.     On November 21, 2014, Lead Counsel and counsel for the Underwriter Defendants notified the Court of the agreement in principle to settle the Litigation.

NN.     Plaintiffs and Plaintiffs' Counsel believe that the claims asserted in the Litigation have merit and the evidence developed supports the claims asserted.  Plaintiffs and Plaintiffs' Counsel recognize and acknowledge, however, the expense and length of continued proceedings necessary to prosecute the Litigation against the Underwriter Defendants through trial and appeals.  Plaintiffs and Plaintiffs' Counsel also have taken into account the uncertain outcome and risks in the Litigation (including the potential impact of the judgment reduction provision provided in connection with in the ResCap Settlement), as well as the difficulties, delays, and risks inherent in any complex action such as the Litigation.  Plaintiffs and Plaintiffs' Counsel also are mindful of the inherent problems of proof of, and the possible defenses to, the claims alleged in the Litigation.  Plaintiffs and Plaintiffs' Counsel believe that the Settlement set forth in this Stipulation confers substantial monetary benefits upon the Settlement Class, including those Settlement Class Members who purchased certificates later than ten trading days after the respective offering dates and, therefore, were excluded from the class previously certified by the Court, subject to any further determination by the Court or any appeal.  Based on their

evaluation, Plaintiffs and Plaintiffs' Counsel have determined that the Settlement set forth in this Stipulation is in the best interest of Plaintiffs and the other Settlement Class Members.

OO.    The Underwriter Defendants have denied and continue to deny any fault, liability, or wrongdoing of any kind and that the evidence developed supports in any way the claims asserted.  The Underwriter Defendants also have denied and continue to deny each and all of the claims and contentions alleged by Plaintiffs on behalf of the Settlement Class, including all claims in the Third Amended Complaint.  The Underwriter Defendants have denied and continue to deny, among other things, the allegations that the Offering Materials for, or in connection with the offering or sale of, the Certificates made any misstatements or omissions.  The Underwriter Defendants further have denied and continue to deny that Plaintiffs or any member of the Settlement Class was harmed or suffered any loss as a result of any of the conduct alleged in the Litigation, including all of the conduct alleged in the Third Amended Complaint.

PP.    The Underwriter Defendants are entering into the Settlement to eliminate the burden, expense, uncertainty, distraction, and risk of further litigation.  This Stipulation, whether or not consummated, any proceedings relating to any settlement, or any of the terms of any settlement, whether or not consummated, shall in no event be construed as, or deemed to be evidence of, an admission or concession on the part of any Underwriter Defendant with respect to any claim of any fault or liability or wrongdoing or damage whatsoever, or any infirmity in any defense that the Underwriter Defendants have or could have asserted.

**NOW THEREFORE**, without any admission or concession whatsoever on the part of Plaintiffs or any Settlement Class Member regarding any lack of merit of the claims in the Litigation, and without any admission or concession whatsoever on the part of the Underwriter Defendants of any liability or wrongdoing or lack of merit of their defenses in the Litigation, it is

hereby **STIPULATED AND AGREED**, by and among the Settling Parties, through their respective attorneys, subject to approval of the Court pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, the PSLRA, and other conditions set forth herein, in consideration of the benefits flowing to the Settling Parties from the Settlement, that the Litigation, all Released Claims (as defined below), and all Released Underwriter Defendants Claims (as defined below) shall be fully, finally, and forever compromised, settled, released, resolved, discharged, and dismissed with prejudice against the Released Parties (as defined below), upon and subject to the following terms and conditions:

## I. DEFINITIONS

1.       As used in this Stipulation, the following terms shall have the meanings specified below:

(a)       "Ally Securities" means Residential Funding Securities, LLC d/b/a GMAC RFC Securities and f/k/a Residential Funding Securities Corporation.

(b)       "Alternative Judgment" means a form of final judgment that may be entered by the Court but in a form other than the form of the Order and Final Judgment provided for in this Stipulation.

(c)       "Authorized Claimant" means a Settlement Class Member who submits a timely and valid Proof of Claim Form to the Claims Administrator, in accordance with the requirements established by the Court, that is approved for payment from the Underwriter Defendants Net Settlement Fund.

(d)       "Certificates" means every mortgage asset-backed pass-through certificate that was publicly issued in one of the Offerings.

(e)      "Claim" means a completed and signed Proof of Claim Form submitted to the Claims Administrator in accordance with the instructions on the Proof of Claim Form.

(f)      "Claimant" means a Person that submits a signed Proof of Claim Form to the Claims Administrator seeking to be eligible to share in the proceeds of the Underwriter Defendants Net Settlement Fund.

(g)      "Claims Administrator" means the firm retained by Lead Counsel on behalf of the Settlement Class, subject to approval of the Court, to provide all notices approved by the Court to potential Settlement Class Members and to administer the Settlement.

(h)      "Court" means the United States District Court for the Southern District of New York.

(i)      "Defendants" means the ResCap Defendants, the Individual Defendants, Ally Securities, the Underwriter Defendants, and the Dismissed Underwriter Defendants.

(j)      "Dismissed Underwriter Defendants" means Deutsche Bank Securities, Inc., RBS Securities, Inc. f/k/a Greenwich Capital Markets, Inc. d/b/a RBS Greenwich Capital, Credit Suisse Securities (USA) LLC, Bank of America Corporation as successor-in-interest to Merrill Lynch, Pierce, Fenner & Smith, Inc., JP Morgan Chase, Inc. as successor-in-interest to Bear Stearns & Co., Inc., and Morgan Stanley & Co., Inc.

(k)      "Distribution Order" means the order entered by the Court authorizing and directing that the Underwriter Defendants Net Settlement Fund be distributed, if the Effective Date has occurred, in whole or in part, to Authorized Claimants.

(l)        "Effective Date" means the latest date when all of the conditions set forth in Paragraph 45 below have occurred.

(m)        "Escrow Agent for the Underwriter Defendants Settlement Fund" means Eagle Bank, or a third party financial services company jointly designated by the Settling Parties to receive, hold, invest, and disburse the Underwriter Defendants Settlement Amount under the terms of this Stipulation.

(n)        "Final," when referring to the Order and Final Judgment or any Alternative Judgment, means, (i) in the event that the Court enters the Order and Final Judgment, the expiration of any time for appeal or review of the Order and Final Judgment, or, if any appeal is filed and not dismissed, after the Order and Final Judgment is upheld on appeal in all material respects and is no longer subject to review upon appeal or review by *certiorari* or otherwise, and the time for any petition for reargument, appeal, or review, by *certiorari* or otherwise, has expired, or (ii) in the event that the Court enters an Alternative Judgment and neither Lead Plaintiff nor the Underwriter Defendants elect to terminate the Settlement in its entirety, the date that such Alternative Judgment is no longer subject to appeal or review by *certiorari* or otherwise, and the time for any petition for reargument, appeal or review, by *certiorari* or otherwise, has expired, *provided, however*, that, as to both (i) and (ii) above, any disputes or appeals relating solely to the amount, payment, or allocation of attorneys' fees and Litigation Expenses or the Plan of Allocation shall have no effect on finality for purposes of determining the date on which the Order and Final Judgment or an Alternative Judgment becomes Final.

(o)        "Final Approval Hearing" or "Settlement Hearing" means the hearing set by the Court under Rule 23(e) of the Federal Rules of Civil Procedure to consider final approval of the Settlement.

(p)     "Gross Global Settlement Fund" means the two hundred thirty-five

million dollar ($235,000,000) Underwriter Defendants Settlement Fund (as reduced by any

partial termination of the Settlement pursuant to Paragraphs 36 and 37 below), together with the

hundred million dollar ($100,000,000) settlement fund from the ResCap Settlement.

(q)     "Individual Defendants" means Bruce J. Paradis, Kenneth M.

Duncan, Davee L. Olson, Ralph T. Flees, Lisa R. Lundsten, James G. Jones, David M. Bricker,

and James N. Young.

(r)     "Intervenor Plaintiffs" means Police and Fire Retirement System of

the City of Detroit, Midwest Operating Engineers Pension Trust Fund, Iowa Public Employees'

Retirement System, and Orange County Employees Retirement System.

(s)     "Lead Counsel" means the law firm of Cohen Milstein Sellers & Toll

PLLC.

(t)     "Lead Plaintiff" mean the New Jersey Carpenters Health Fund.

(u)     "Litigation" means the securities class action currently styled *New

Jersey Carpenters Health Fund, et al. v. Residential Capital, LLC, et al.*, No. 08-cv-8781

(S.D.N.Y.) (KPF).

(v)     "Litigation Expenses" means the reasonable costs and expenses

incurred by counsel for Plaintiffs in connection with commencing and prosecuting the Litigation,

for which Lead Counsel intends to apply to the Court for reimbursement from the Underwriter

Defendants Settlement Fund.  Litigation Expenses may also include reimbursement of Plaintiffs'

reasonable costs and expenses in accordance with 15 U.S.C. § 77z-1(a)(4).

(w)     "Named Plaintiffs" means the Original Named Plaintiffs and the

Intervenor Plaintiffs.

(x)        "Non-Settling Underwriter Defendant" means any Underwriter Defendant that has terminated the Settlement as to itself pursuant to Paragraphs 36 or 37 below.

(y)        "Notice" means the Notice of (I) Pendency of Class Action, (II) Proposed $235 Million Settlement with the Underwriter Defendants, (III) Settlement Hearing, (IV) Plan of Allocation for Distribution of Both the $235 Million Settlement with the Underwriter Defendants and the Previously Approved $100 Million Settlement with the ResCap Defendants, the Individual Defendants, and Ally Securities, and (V) Lead Counsel's Motion for Attorneys' Fees and Reimbursement of Litigation Expenses (substantially in the form attached hereto as Exhibit A-1), which is to be sent to members of the Settlement Class.

(z)        "Notice and Administration Costs" means the costs, fees, and expenses that are incurred by the Claims Administrator in connection with providing notice to the Settlement Class and administering the Settlement.

(aa)        "Notice Order" means the order (substantially in the form attached hereto as Exhibit A) to be entered by the Court, approving dissemination of the Notice, Publication Notice, and Plan of Allocation to the Settlement Class.

(bb)        "Offering Materials" means any and all legal documents by which an issuer offered securities for sale, including, but not limited to registration statements, prospectuses, and prospectus supplements.

(cc)        "Offerings" means the offerings of mortgage asset-backed pass-through certificates by any of the following trusts: RALI Series 2006-QH1, RALI Series 2006-QO1, RALI Series 2006-QO2, RALI Series 2006-QO3, RALI Series 2006-QO5, RALI Series 2006-QO6, RALI Series 2006-QO10, RALI Series 2006-QS7, RALI Series 2006-QS8, RALI Series 2006-QS15, RALI Series 2007-QH1, RALI Series 2007-QH2, RALI Series 2007-QH3,

RALI Series 2007-QH4, RALI Series 2007-QH5, RALI Series 2007-QH6, RALI Series 2006-QO7, RALI Series 2007-QS1, RALI Series 2007-QS2, and RALI Series 2007-QS5.

(dd) "Order and Final Judgment" means the order of final judgment to be entered in the Litigation substantially in the form of Exhibit B attached hereto.

(ee) "Original Named Plaintiffs" means New Jersey Carpenters Vacation Fund and Boilermakers Blacksmith National Pension Trust.

(ff) "Person" means any individual, corporation (including all divisions and subsidiaries), general or limited partnership, association, joint stock company, joint venture, limited liability company, professional corporation, estate, legal representative, trust, unincorporated association, government or any political subdivision or agency thereof, or any other business or legal entity, as well as each of their spouses, domestic partners, heirs, predecessors, successors, representatives, agents, trustees, estates, administrators, executors, or assigns.

(gg) "Plaintiffs" means Lead Plaintiff and the Named Plaintiffs.

(hh) "Plaintiffs' Counsel" means Lead Counsel and the law firm of Zwerling, Schachter & Zwerling, LLP.

(ii) "Plan of Allocation" means the proposed plan for allocating the Underwriter Defendants Net Settlement Fund to Authorized Claimants, which, subject to approval of the Court, shall be substantially in the form described in the Notice.

(jj) "Proof of Claim Form" means the form provided to Settlement Class Members by the Claims Administrator for purposes of submitting a claim, which, subject to approval of the Court, shall be substantially in the form attached hereto as Exhibit A-3.

(kk)        "Publication Notice" or "Summary Notice" means the notice, substantially in the form attached hereto as Exhibit A-2, to be published as set forth in the Notice Order.

(ll)        "Released Claims" means, to the fullest extent permitted by law or equity, any and all past, present, and future claims (including Unknown Claims), cross-claims, counterclaims, third-party claims, allegations, rights, issues, causes of action, controversies, remedies, duties, demands, obligations, actions, judgments, debts, sums of money, suits, contracts, agreements, promises, damages, and liabilities of every kind, nature, and description whatsoever, whether known or unknown, whether based on federal, state, local, statutory, common, or foreign law, or any other law, rule, or regulation, whether at law or in equity, fixed or contingent, choate or inchoate, accrued or unaccrued, liquidated or unliquidated, perfected or unperfected, matured or unmatured, whether direct, derivative, individual, or class in nature, that Plaintiffs or any other Settlement Class Member alleged or which could have been alleged in the Litigation or in any other forum (including, without limitation, any federal or state court, or in any other court, arbitration proceeding, administrative agency, or other forum in the United States or elsewhere) or that in any way arise out of, are based upon, relate to, concern, or are in connection with the Offerings, or the purchase, acquisition, holding, ownership, disposition, or sale of, or other transaction in the Certificates or any interest therein, or that in any way, directly or indirectly, arise out of, are based upon, relate to, concern, or are in connection with the claims, allegations, transactions, facts, circumstances, situations, matters, events, disclosures, statements, occurrences, representations, conduct, acts, or omissions or failures to act described in any of the complaints filed in the Litigation, including the Third Amended Complaint. "Released Claims" include all rights of appeal from any prior decision of the Court in the Litigation. "Released

17

Claims" do not include (i) claims of any Settlement Class Member against any Non-Settling Underwriter Defendant, or (ii) claims arising out of, based upon, relating to, concerning, or in connection with the interpretation or enforcement of the terms of the Settlement.

(mm)    "Released Parties" means the Released Underwriter Defendant Parties and the Released Plaintiff Parties.

(nn)    "Released Plaintiff Parties" means Plaintiffs, Plaintiffs' Counsel, and each and every Settlement Class Member (regardless of whether that Person actually submits a Proof of Claim Form, seeks or obtains a distribution from the Underwriter Defendants Net Settlement Fund, is entitled to receive a distribution under the Plan of Allocation approved by the Court, or has objected to the Settlement, Plan of Allocation, the Final Order and Judgment or any Alternative Judgment, and/or Lead Counsel's motion for attorneys' fees and request for reimbursement of Litigation Expenses), and any of their respective spouses, domestic partners, heirs, predecessors, successors, representatives, agents, trustees, estates, administrators, executors, or assigns.

(oo)    "Released Underwriter Defendants Claims" means, to the fullest extent permitted by law or equity, any and all past, present, and future claims (including Unknown Claims), cross-claims, counterclaims, third-party claims, allegations, rights, issues, causes of action, controversies, remedies, duties, demands, obligations, actions, judgments, debts, sums of money, suits, contracts, agreements, promises, damages, and liabilities of every kind, nature, and description whatsoever, whether known or unknown, whether based on federal, state, local, statutory, common, or foreign law, or any other law, rule, or regulation, whether at law or in equity, fixed or contingent, choate or inchoate, accrued or unaccrued, liquidated or unliquidated, perfected or unperfected, matured or unmatured, whether direct, derivative,

individual, or class in nature, that the Settling Underwriter Defendants, or any of them, asserted, or could have asserted, against any of the Released Plaintiff Parties that arise out of, are based upon, relate to, concern, or are in connection with the commencement, prosecution, settlement, or resolution of the Litigation. "Released Underwriter Defendants Claims" do not include (i) claims of any Non-Settling Underwriter Defendant, or (ii) claims arising out of, based upon, relating to, concerning, or in connection with the interpretation or enforcement of the terms of the Settlement.

(pp)     "Released Underwriter Defendant Parties" means (i) the Settling Underwriter Defendants; (ii) each of the Settling Underwriter Defendants' respective past or present parents, subsidiaries, affiliates, divisions, successors, and predecessors; (iii) each of the respective past or present officers, directors, employees, partners, members, principals, attorneys, advisors, trustees, administrators, fiduciaries, consultants, representatives, accountants and auditors, insurers, and assigns, of the foregoing in (i) and (ii) in their capacities as such; and (iv) any Person which is or was related to or affiliated with any of the Settling Underwriter Defendants or in which any of the Settling Underwriter Defendants has or had a controlling interest.

(qq)     "ResCap Defendants" means Residential Capital, LLC f/k/a Residential Capital Corporation, Residential Funding Company, LLC f/k/a Residential Funding Corporation, and Residential Accredit Loans, Inc.

(rr)     "Settlement" means this Stipulation and Agreement of Settlement and the settlement contained herein.

(ss)     "Settlement Class" means all Persons who purchased or otherwise acquired interests in the Certificates on or before the date when a claim concerning those

19

Certificates was first asserted in the Litigation. Excluded from the Settlement Class are those Persons who have filed a timely and valid request for exclusion in accordance with the requirements set forth in the Notice, it being understood and agreed that those Persons who have filed individual actions to separately pursue claims against the Underwriter Defendants relating to the Certificates or the Offerings are nevertheless required to file a timely and valid request for exclusion in order to be excluded from the Settlement Class. Also excluded from the Settlement Class are the Underwriter Defendants.

     (tt)          "Settlement Class Member" means any Person that is a member of the Settlement Class.

     (uu)          "Settling Parties" means (i) Plaintiffs on behalf of themselves and each Settlement Class Member, and (ii) the Settling Underwriter Defendants.

     (vv)          "Settling Underwriter Defendants" means (i) each Underwriter Defendant that does not terminate the Settlement as to itself pursuant to Paragraphs 36 or 37 below, and (ii) any Underwriter Defendant that has terminated the Settlement as to itself pursuant to Paragraph 36 below but had such termination retracted or voided as provided for in the Supplemental Agreement (as defined in Paragraph 36 below).

     (ww)          "Stipulation" means this Stipulation and Agreement of Settlement.

     (xx)          "Tax Expenses" means any expenses and costs incurred in connection with the payment of Taxes (including, without limitation, expenses of tax attorneys and/or accountants and other advisors and expenses relating to the filing or failure to file all necessary or advisable tax returns).

(yy)     "Taxes" means any taxes due and payable with respect to the income earned by the Underwriter Defendants Settlement Fund, including any interest or penalties thereon.

(zz)     "Third Amended Complaint" means the Consolidated Third Amended Securities Class Action Complaint — the operative complaint in the Litigation — which was filed on May 10, 2013.

(aaa)     "Underwriter Defendants" means Citigroup Global Markets Inc., Goldman, Sachs & Co., and UBS Securities LLC.

(bbb)     "Underwriter Defendants' Counsel" means the law firms of Fried, Frank, Harris, Shriver & Jacobson LLP and Paul, Weiss, Rifkind, Wharton & Garrison LLP.

(ccc)     "Underwriter Defendants Net Settlement Fund" means the Underwriter Defendants Settlement Fund (as reduced by any partial termination of the Settlement pursuant to Paragraphs 36 and 37 below) less:  (i) any Taxes and Tax Expenses; (ii) any Notice and Administration Costs; and (iii) any attorneys' fees and Litigation Expenses awarded by the Court.

(ddd)     "Underwriter Defendants Settlement Amount" means the aggregate of two hundred thirty-five million dollars ($235,000,000), as reduced by any partial termination of the Settlement pursuant to Paragraphs 36 and 37 below, paid by the Settling Underwriter Defendants, severally and not jointly, according to the confidential allocation terms determined by the Underwriter Defendants.

(eee)     "Underwriter Defendants Settlement Fund" means the Underwriter Defendants Settlement Amount paid by the Settling Underwriter Defendants plus any interest earned thereon.

(fff)       "Underwriter Defendants Settlement Fund Escrow Account" means an escrow account mutually agreeable to the Settling Parties and, subject to the Court's supervisory authority, under the control of Lead Counsel, which is established and maintained with the Escrow Agent for the Underwriter Defendants Settlement Fund, and into which the Underwriter Defendants Settlement Amount shall be deposited.

(ggg)       "Unknown Claims" means any and all claims that any Released Plaintiff Party does not know or suspect to exist in his, her, or its favor at the time of the release of the Released Claims, and any and all claims that any Settling Underwriter Defendant does not know or suspect to exist in his, her, or its favor at the time of the release of the Released Underwriter Defendants Claims, which if known to him, her, or it might have affected his, her, or its decision(s) with respect to the Settlement, including, but not limited to, his, her, or its decision to object or not to object to the Settlement or not exclude himself, herself, or itself from the Settlement Class.  With respect to any and all Released Claims and Released Underwriter Defendants Claims, the Settling Parties stipulate and agree that, upon the Effective Date, each of the Plaintiffs and the Settling Underwriter Defendants shall expressly waive, and each of the Released Plaintiff Parties shall be deemed to have, and by operation of the Order and Final Judgment or any Alternative Judgment shall have, expressly waived and relinquished any and all provisions, rights, and benefits conferred by any law of any state or territory of the United States or any other jurisdiction, or principle of common law that is similar, comparable, or equivalent to California Civil Code § 1542, which provides:

> **A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.**

Any Released Plaintiff Party or Settling Underwriter Defendant may hereafter discover facts, legal theories, or authorities in addition to or different from those which he, she, or it now knows or believes to be true with respect to the subject matter of the Released Claims and the Released Underwriter Defendants Claims, but Plaintiffs and the Settling Underwriter Defendants shall expressly, fully, finally, and forever settle and release, and each Released Plaintiffs Party shall be deemed to have settled and released, and upon the Effective Date and by operation of the Order and Final Judgment or any Alternative Judgment shall have settled and released, fully, finally, and forever, any and all Released Claims and Released Underwriter Defendants Claims as applicable, known or unknown, suspected or unsuspected, contingent or noncontingent, whether or not concealed or hidden, which have existed or now or will exist, upon any theory of law or equity, including, but not limited to, conduct which is negligent, reckless, intentional, with or without malice, or a breach of any duty, law, or rule, without regard to the subsequent discovery or existence of such different or additional facts, legal theories, or authorities.  The Settling Parties acknowledge, and each Released Plaintiff Party by operation of law shall be deemed to have acknowledged, that the inclusion of "Unknown Claims" in the definition of Released Claims and Released Underwriter Defendants Claims was separately bargained for and was a key and material element of the Settlement.

## I.  CERTIFICATION OF SETTLEMENT CLASS

1.      Solely for purposes of the Settlement and for no other purpose, the Settling Parties stipulate and agree to:  (i) certification of the Settlement Class pursuant to Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure; (ii) appointment of Lead Plaintiff as the representative for the Settlement Class; and (iii) appointment of Lead Counsel as counsel for the Settlement Class pursuant to Rule 23(g) of the Federal Rules of Civil Procedure.

2.      In the event the Settlement is terminated, or the Effective Date for any reason does not occur, certification of the Settlement Class shall be nullified and voided, the Litigation shall proceed as thought the Settlement Class had never been certified, and none of the Settling Parties or any other Person shall suggest in the Litigation that any inference of any kind should be drawn from the Settlement Class proposed in the Settlement.

## II.  RELEASE OF CLAIMS

3.      Upon the Effective Date, each and every one of the Released Plaintiff Parties shall be deemed by operation of law to have fully, finally, and forever released, relinquished, waived, discharged, and dismissed each and every one of the Released Claims against each and every one of the Released Underwriter Defendant Parties, with prejudice and on the merits, and shall forever be barred and enjoined from commencing, instituting, prosecuting, or maintaining any or all such Released Claims against each and every one of the Released Underwriter Defendant Parties in any forum of any kind, whether directly or indirectly, whether on their own behalf or otherwise.  By entering into the Settlement, Plaintiffs represent and warrant that they have not assigned, hypothecated, conveyed, transferred, or otherwise granted or given any interest in the Released Claims, or any of them, to any other Person.  All Released Plaintiff Parties shall be bound by the terms of the releases set forth in this Stipulation whether or not they submit a valid and timely Proof of Claim Form, take any other action to obtain recovery from the Underwriter Defendants Settlement Fund, or seek, or actually receive a distribution from the Underwriter Defendants Net Settlement Fund.

4.      Upon the Effective Date, each and every one of the Settling Underwriter Defendants shall be deemed by operation of law to have fully, finally, and forever released, relinquished, waived, discharged, and dismissed each and every one of the Released Underwriter Defendants Claims, against each and every one of the Released Plaintiff Parties and shall forever

24

be barred and enjoined from commencing, instituting, prosecuting, or maintaining any or all such Released Underwriter Defendants Claims against each and every one of the Released Plaintiff Parties in any forum of any kind, whether directly or indirectly, whether on their own behalf or otherwise.  By entering into the Settlement, the Settling Underwriter Defendants represent and warrant that they have not assigned, hypothecated, conveyed, transferred, or otherwise granted or given any interest in the Released Underwriter Defendants Claims, or any of them, to any other Person.

5.      Notwithstanding any of the foregoing, none of the Settling Parties release any claims relating to the enforcement of the Settlement.

6.      The releases and waivers contained in this Section were separately bargained for and are essential elements of this Stipulation and the Settlement.

7.      Nothing in this Stipulation shall release or alter the contractual rights, if any, under the terms of any written agreement (i) between or among the Underwriter Defendants, or (ii) between the Underwriter Defendants, on the one hand, and the ResCap Defendants and/or Ally Securities, on the other hand, which governs the Offerings and/or the Underwriter Defendants' underwriting of any of the Certificates.  The releases and waivers contained in this Section do not release or limit any rights or claims for contribution or indemnity between the Underwriter Defendants, on the one hand, and the ResCap Defendants and/or Ally Securities, on the other hand.

## III.  THE SETTLEMENT CONSIDERATION

8.      The allocated shares of Underwriter Defendants Settlement Amount are to be paid by the Settling Underwriter Defendants, severally and not jointly, according to the confidential allocation terms determined by the Underwriter Defendants.  No Underwriter Defendants will be

liable for any portion of the Underwriter Defendants Settlement Amount not paid by any other Underwriter Defendant, nor for any interest accruing on such unpaid amount. In consideration of the terms of the Settlement, each Settling Underwriter Defendant shall cause its confidentially allocated share of the Underwriter Defendants Settlement Amount to be deposited into the Underwriter Defendants Settlement Fund Escrow Account within fifteen (15) calendar days after entry of the Notice Order by the Court. Within five (5) business days after signing this Stipulation, Lead Counsel shall provide the Underwriter Defendants' Counsel wiring instructions and the payee's Form W-9 for the Underwriter Defendants Settlement Fund Escrow Account and any other documents reasonably required by the Settling Underwriter Defendants to process the funding of the Underwriter Defendants Settlement Amount.

9.     Other than the obligation of a Settling Underwriter Defendant to pay or cause to be paid its confidentially allocated share of the Underwriter Defendants Settlement Amount into the Underwriter Defendants Settlement Fund Escrow Account as provided for in Paragraph 8 above, each Underwriter Defendant shall have no obligation to make any other payment pursuant to this Stipulation. The interest earned on the Underwriter Defendants Settlement Fund shall be for the benefit of the Settlement Class upon the Effective Date.

### IV.  USE OF THE UNDERWRITER DEFENDANTS SETTLEMENT FUND

10.     The Underwriter Defendants Settlement Fund shall be used to pay: (i) Taxes and Tax Expenses; (ii) Notice and Administration Costs; and (iii) any attorneys' fees and Litigation Expenses awarded by the Court. The balance remaining in the Underwriter Defendants Settlement Fund, *i.e.*, the Underwriter Defendants Net Settlement Fund, shall be distributed to Authorized Claimants as provided below. All costs and expenses incurred by or on behalf of Plaintiffs and the other members of the Settlement Class shall be paid from the Underwriter Defendants Settlement Fund as awarded by the Court. In no event shall the Settling Underwriter

Defendants or any other Released Underwriter Defendant Parties bear any further or additional responsibility for any such costs or expenses beyond payment of the Underwriter Defendants Settlement Amount.

11.     After (i) the Order and Final Judgment becomes Final, and (ii) entry by the Court of a Distribution Order, the Underwriter Defendants Net Settlement Fund will be distributed to Authorized Claimants in accordance with the terms of such Distribution Order and a Plan of Allocation that Plaintiffs will submit to the Court for approval, which may take into consideration, *inter alia*, the Court's prior order limiting the previously certified class to those who purchased certificates no later than ten trading days after each of the respective offering dates.

12.     Except as provided herein or pursuant to orders of the Court, the Underwriter Defendants Net Settlement Fund shall remain in the Underwriter Defendants Settlement Fund Escrow Account prior to the distribution.   All funds held by the Escrow Agent for the Underwriter Defendants Settlement Fund shall be deemed to be in the custody of the Court and shall remain subject to the jurisdiction of the Court until such time as the funds shall be distributed or returned pursuant to the terms of this Stipulation and/or further order of the Court. The Escrow Agent for the Underwriter Defendants Settlement Fund shall invest any funds in the Underwriter Defendants Settlement Fund Escrow Account in instruments backed by the full faith and credit of the United States (or a mutual fund invested solely in such instruments) and shall collect and reinvest all interest accrued thereon.   All risks related to the investments of the Underwriter Defendants Settlement Fund shall be borne by the Underwriter Defendants Settlement Fund.

13.     The Settling Parties agree that the Underwriter Defendants Settlement Fund is intended to be a Qualified Settlement Fund within the meaning of Treasury Regulation § 1.468B-1 and that Lead Counsel, as administrator of the Underwriter Defendants Settlement Fund within the meaning of Treasury Regulation § 1.468B-2(k)(3), shall be solely responsible for filing or causing to be filed all informational and other tax returns as may be necessary or appropriate (including, without limitation, the returns described in Treasury Regulation § 1.468B-2(k)) for the Underwriter Defendants Settlement Fund.   Such returns shall be consistent with this Paragraph and in all events shall reflect that all Taxes on the income earned on the Underwriter Defendants Settlement Fund shall be paid out of the Underwriter Defendants Settlement Fund as provided by Paragraph 14 below.   Lead Counsel shall also be solely responsible for causing payment to be made from the Underwriter Defendants Settlement Fund of any Taxes and Tax Expenses owed with respect to the Underwriter Defendants Settlement Fund.   Upon written request, the Settling Underwriter Defendants will provide to Lead Counsel the statement described in Treasury Regulation § 1.468B-3(e).   Lead Counsel, as administrator of the Underwriter Defendants Settlement Fund within the meaning of Treasury Regulation § 1.468B-2(k)(3), shall timely make such elections as are necessary or advisable to carry out this Paragraph, including, as necessary, making a "relation back election," as described in Treasury Regulation § 1.468B-1(j), to cause the Qualified Settlement Fund to come into existence at the earliest allowable date, and shall take or cause to be taken all actions as may be necessary or appropriate in connection therewith.

14.     All Taxes (including any interest or penalties) and Tax Expenses shall be considered to be a cost of administration of the Settlement and shall be paid out of the Underwriter Defendants Settlement Fund. The Released Underwriter Defendant Parties shall not

have any liability or responsibility for any such Taxes or Tax Expenses. Lead Counsel, or its agents, shall timely and properly file all information and other tax returns necessary or advisable with respect to the Underwriter Defendants Settlement Fund and the distributions and payments therefrom, including, without limitation, the tax returns described in Treasury Regulation § 1.468B-2(k), and, to the extent applicable, Treasury Regulation § 1.468B-2(l). Such returns shall be consistent with the terms hereof and in all events shall reflect that all such Taxes (including any interest or penalties) on the income earned by the Underwriter Defendants Settlement Fund shall be paid out of the Underwriter Defendants Settlement Fund, subject to the limitations set forth in this Paragraph. Lead Counsel, or its agents, shall also timely pay Taxes and Tax Expenses, subject to the limitations set forth in this Paragraph, out of the Underwriter Defendants Settlement Fund, and are authorized to withdraw, without prior order of the Court, from the Underwriter Defendants Settlement Fund amounts necessary to pay Taxes and Tax Expenses. The Settling Parties agree to cooperate with each other, and their tax attorneys and accountants, to the extent reasonably necessary to carry out the terms of this Stipulation. The Underwriter Defendants and the Released Underwriter Defendant Parties shall have no responsibility or liability for the acts or omissions of Lead Counsel or its agents, as described herein.

15. The Settlement is not a claims-made settlement. As of the Effective Date, neither the Settling Underwriter Defendants nor any other Person who paid any portion of the Underwriter Defendants Settlement Amount on any of their behalf, shall have any right to the return of the Underwriter Defendants Settlement Fund or any portion thereof irrespective of the number of Claims filed, the collective amount of losses of Authorized Claimants, the percentage of recovery of losses, or the amounts to be paid to Authorized Claimants from the Underwriter

Defendants Net Settlement Fund.  If any portion of the Underwriter Defendants Net Settlement Fund remains following distribution pursuant to Paragraph 11 above and is of such an amount that in the opinion of Lead Counsel and the Claims Administrator it is not cost effective or efficient to redistribute the amount to the Settlement Class, then in such event, Lead Counsel shall seek an order from the Court:  (i) approving the recommendation that any further re-distribution is not cost effective or efficient; and (ii) ordering the contribution of the balance of the Underwriter Defendants Net Settlement Fund to one or more nonsectarian, not-for-profit, 501(c)(3) organizations.  Lead Counsel's motion shall identify one or more proposed charitable recipients.  The proposed recipients shall be independent of Lead Counsel so that Lead Counsel does not derive a direct or indirect benefit from the selection of such organization as the recipient of a charitable contribution.

16.    The Claims Administrator shall discharge its duties under Lead Counsel's supervision and subject to the jurisdiction of the Court.  The Underwriter Defendants and the Released Underwriter Defendant Parties shall have no responsibility whatsoever for the administration of the Settlement, and shall have no liability whatsoever to any Person, including, but not limited to, the Settlement Class Members, in connection with any such administration. Lead Counsel shall cause the Claims Administrator to mail the Notice and Proof of Claim to those members of the Settlement Class who may be identified through reasonable effort.  Lead Counsel will cause to be published the Summary Notice pursuant to the terms of the Notice Order or whatever other form or manner might be ordered by the Court.

17.    Lead Counsel may pay up to five million dollars ($5,000,000) from the Underwriter Defendants Settlement Fund Escrow Account, without further approval from the Settling Underwriter Defendants or further order of the Court, for reasonable Notice and

Administration Costs actually incurred.   Such costs and expenses shall include, without limitation, the actual costs of publication, printing, and mailing the Notice and the Publication Notice, reimbursements to nominee owners for forwarding the Notice to their beneficial owners, the administrative expenses actually incurred and fees reasonably charged by the Claims Administrator in connection with searching for Settlement Class Members and providing notice and processing the submitted Proof of Claim Forms, and the reasonable fees, if any, of the Escrow Agent for the Underwriter Defendants Settlement Fund.   To the extent that Notice and Administration Costs exceed five million dollars ($5,000,000), they may be paid only pursuant to further order of the Court.

18.     The finality of the Settlement shall not be conditioned on any ruling by the Court concerning the Plan of Allocation or any award of attorneys' fees or reimbursement of Litigation Expenses.   Any order or proceeding relating to a request for approval of the Plan of Allocation, or any appeal from any order relating thereto or reversal or modification thereof, shall not operate to terminate the Settlement or affect or delay the Effective Date or the effectiveness or finality of the Order and Final Judgment or any Alternative Judgment and the release of the Released Claims.   There shall be no distribution of any of the Underwriter Defendants Settlement Fund to any Settlement Class Member until the Plan of Allocation is approved and such order of approval is affirmed on appeal and/or is no longer subject to review by appeal or *certiorari*, and the time for any petition for rehearing, appeal, or review, by *certiorari* or otherwise, has expired.

### V.  ATTORNEYS' FEES AND LITIGATION EXPENSES

19.     Lead Counsel will apply to the Court for an award of attorneys' fees in an amount not to exceed 20.75% of the Gross Global Settlement Fund of three hundred thirty-five million dollars ($335,000,000) (or sixty-nine million five hundred twelve thousand five hundred dollars

($69,512,500)), net of Court-approved Litigation Expenses, plus interest at the same rate and for the same time period as earned by the Gross Global Settlement Fund and for reimbursement of Litigation Expenses not to exceed five million five hundred thousand dollars ($5,500,000), plus interest at the same rate and for the same time period as earned by the Gross Global Settlement Fund. The amounts the Court awards and reimbursements will be paid exclusively out of the Gross Global Settlement Fund, it being expressly agreed that 70.15% of the aggregate attorneys' fees awarded and Litigation Expenses reimbursed shall be deemed paid from the Settlement and 29.85% deemed paid from the ResCap Settlement (in proportion to the principal amounts of the respective settlement funds). The Settling Underwriter Defendants will take no position concerning Lead Counsel's motion for attorneys' fees and reimbursement of Litigation Expenses.

20. Lead Counsel will determine and distribute any award of attorneys' fees and/or reimbursement of Litigation Expenses among Plaintiffs' Counsel in a manner in which Lead Counsel, in its sole discretion, believes reflects the contributions of such counsel to the prosecution and settlement of the Litigation with the Settling Underwriter Defendants and the benefits conferred on the Settlement Class. The Underwriter Defendants and the Released Underwriter Defendant Parties shall have no responsibility for, and no liability with respect to, the attorneys' fees or Litigation Expenses that the Court may award in the Litigation or the allocation of the attorneys' fees and/or Litigation Expenses between or among Plaintiffs' Counsel in connection with the Litigation or any other Person who may assert some claim thereto.

21. Any attorneys' fees and Litigation Expenses that are awarded by the Court shall be paid to Lead Counsel, as ordered, promptly after the Court enters an order awarding such

attorneys' fees and Litigation Expenses.  In the event that the Effective Date does not occur, or the order granting Lead Counsel's motion for an award of attorneys' fees and reimbursement of Litigation Expenses is reversed or modified by a final, non-appealable order, or the Settlement is terminated or canceled for any reason, and in the event that attorneys' fees and/or Litigation Expenses have been paid out of the Underwriter Defendants Settlement Fund to any extent, then, within twenty (20) business days from receiving notice from the Underwriter Defendants' Counsel or from a court of appropriate jurisdiction, (i) Lead Counsel shall inform the Underwriter Defendants' Counsel how such attorneys' fees and Litigation Expenses were allocated among Plaintiffs' Counsel, and (ii) Plaintiffs' Counsel shall each refund to the Underwriter Defendants Settlement Fund the attorneys' fees and/or Litigation Expenses that they received, plus interest thereon at the same rate as would have been earned had those sums remained in the Underwriter Defendants Settlement Fund Escrow Account.

22.     The procedure for and amounts of any award of attorneys' fees and reimbursement of Litigation Expenses, and the allowance or disallowance by the Court thereof, shall not be a condition of the Settlement.  Lead Counsel shall request that their motion for an award of attorneys' fees and reimbursement of Litigation Expenses be considered by the Court separately from the Court's consideration of the fairness and adequacy of the Settlement.  Any order or proceedings relating to such motion, or any appeal from any order relating thereto or reversal or modification thereof, shall not operate to terminate the Settlement or affect the release of the Released Claims or the Released Underwriter Defendants Claims.  The finality of the Settlement shall not be conditioned on any ruling by the Court concerning Lead Counsel's motion for an award of attorneys' fees and reimbursement of Litigation Expenses.

## VI.  CLAIMS ADMINISTRATOR

23.     The Claims Administrator, subject to the supervision, direction, and approval of Lead Counsel and the Court, shall administer and calculate the Claims submitted by Settlement Class Members, oversee distribution of the Underwriter Defendants Net Settlement Fund, and perform all claims administration procedures necessary or appropriate in connection therewith. The Underwriter Defendants and the Released Underwriter Defendant Parties shall have no liability, obligation, or responsibility for the Notice, administration or processing of claims or of the Settlement, or disbursement of the Underwriter Defendants Net Settlement Fund, including without limitation, determinations as to the validity of any Proof of Claim, the amounts of claims, distributions of the Underwriter Defendants Net Settlement Fund, or any loss incurred by the Escrow Agent for the Underwriter Defendants Settlement Fund or the Claims Administrator.

24.     The Claims Administrator shall receive Claims and administer them according to the Plan of Allocation as proposed by Lead Plaintiff and approved by the Court, or according to such other plan of allocation the Court approves.  The proposed Plan of Allocation is appended to the Proof of Claim Form attached hereto as Exhibit A-3.

25.     The allocation of the Underwriter Defendants Net Settlement Fund among Authorized Claimants is a matter separate and apart from the proposed Settlement between the Settling Parties, and any decision by the Court concerning the Plan of Allocation shall not affect the validity or finality of the proposed Settlement.  The Plan of Allocation is not a necessary term of this Stipulation, and it is not a condition of the Settlement that any particular plan of allocation be approved by the Court.  Lead Plaintiff and Lead Counsel may not cancel or terminate the Settlement (or this Stipulation) based on this Court's or any appellate court's ruling with respect to the Plan of Allocation or any plan of allocation in the Litigation.  The Underwriter Defendants and the Released Underwriter Defendant Parties shall have no responsibility or liability

whatsoever for allocation of the Underwriter Defendants Net Settlement Fund and the Settling Underwriter Defendants shall not object to the Plan of Allocation proposed by Lead Plaintiff.

26.    Lead Counsel shall be responsible for supervising the administration of the Settlement and disbursement of the Underwriter Defendants Net Settlement Fund.    The Underwriter Defendants and the Released Underwriter Defendant Parties shall have no liability, obligation, or responsibility whatsoever for the administration of the Settlement or disbursement of the Underwriter Defendants Net Settlement Fund.    The Released Underwriter Defendant Parties shall not review, contest, or object to any Proof of Claim Form or any decision of the Claims Administrator or Lead Counsel with respect to accepting or rejecting any Proof of Claim Form or Claim for payment by a Settlement Class Member.

27.    All Proof of Claim Forms must be received by the date set by the Court in the Notice Order and specified in the Notice, unless by order of the Court or the reasonable discretion of Lead Counsel, late-filed Proof of Claim Forms are accepted.  Any Settlement Class Member who fails to submit a Proof of Claim Form so as to be received by such date shall be barred from receiving any distribution from the Underwriter Defendants Net Settlement Fund or any other payment in connection with the Settlement, but shall in all other respects be bound by all proceedings, determinations, orders, releases, and judgments in the Litigation, including the terms of this Stipulation and the Settlement, and will be permanently barred and enjoined from bringing any action, claim, or other proceeding of any kind against any Released Underwriter Defendant Party arising out of, based upon, relating to, concerning, or in connection with any and all of the Released Claims.  A Proof of Claim Form shall be deemed submitted when actually received by the Claims Administrator.

28.     Each Claimant shall be deemed to have submitted to the jurisdiction of the Court with respect to the Claimant's Claim, including, but not limited to, the releases provided for in the Order and Final Judgment or any Alternative Judgment, and the Claim will be subject to investigation and discovery that shall be limited to that Claimant's status as a Settlement Class Member and the validity and amount of the Claimant's Claim. No discovery shall be allowed on the merits of the Litigation or the Settlement in connection with the processing of Proof of Claim Forms.

29.     Lead Counsel will apply to the Court, with reasonable notice to the Settling Underwriter Defendants, for a Distribution Order, *inter alia*:   (i) approving the Claims Administrator's administrative determinations concerning the acceptance and rejection of the Claims submitted; (ii) approving payment of any outstanding administration fees and expenses associated with the administration of the Settlement from the Underwriter Defendants Settlement Fund Escrow Account; and (iii) if the conditions set forth in Paragraph 45 below have occurred, directing payment of the Underwriter Defendants Net Settlement Fund to Authorized Claimants.

30.     Payment pursuant to the Distribution Order from the Underwriter Defendants Net Settlement Fund shall be final and conclusive against any and all Settlement Class Members. All Settlement Class Members whose Claims are not approved by the Court shall be barred from participating in distributions from the Underwriter Defendants Net Settlement Fund, but otherwise shall be bound by all of the terms of this Stipulation and the Settlement, including the terms of the Order and Final Judgment or any Alternative Judgment and the releases provided for therein, and will be permanently barred and enjoined from bringing any action against any and all Released Underwriter Defendant Parties concerning any and all of the Released Claims.

31.     All proceedings with respect to the administration, processing, and determination of Claims and the determination of all controversies relating thereto, including disputed questions of law and fact with respect to the validity of Claims, shall be subject to the jurisdiction of the Court.

## VII.  REQUESTS FOR EXCLUSION

32.     A Settlement Class Member requesting exclusion from the Settlement Class shall be required to provide the following information to the Claims Administrator:  (i) name; (ii) address; (iii) telephone number; (iv) identity and original face value of the Certificates purchased (or otherwise acquired) or sold; (v) prices or other consideration paid or received for such Certificates; (vi) the date of each purchase or sale transaction; (vii) proper evidence of the transactions; (viii) a statement that the Person wishes to be excluded from the Settlement Class in *New Jersey Carpenters Health Fund, et al. v. Residential Capital LLC, et al.*, No. 08-cv-8781 (S.D.N.Y.) (KPF); and (ix) identity of all legal actions and claims (if any) that the Person requesting exclusion has brought against any of the Underwriter Defendants relating to any of the Certificates.  Unless otherwise ordered by the Court, any Settlement Class Member who does not submit a timely and valid request for exclusion as provided by this Section shall be bound by the Settlement.  Plaintiffs shall request that the deadline for receiving requests for exclusion be twenty-eight (28) business days prior to the Final Approval Hearing.

33.     The Claims Administrator shall scan and send electronic copies of all requests for exclusion in PDF format (or such other format as shall be agreed) to the Underwriter Defendants' Counsel and to Lead Counsel not more than three (3) business days after the Claims Administrator receives such a request, and in any event at least twenty-five (25) business days prior to the Final Approval Hearing.  As part of the motion papers in support of the Settlement, Lead Counsel will cause to be provided a list of all Persons who have requested exclusion from

the Settlement Class, and shall cause to be certified that all requests for exclusion received by the Claims Administrator have been copied and provided to the Underwriter Defendants' Counsel.

## VIII.  MOTION FOR NOTICE ORDER

34.     Plaintiffs, by and through Lead Counsel, shall submit this Stipulation together with its exhibits to the Court and shall move for the Court's approval to enter a Notice Order (substantially in the form annexed hereto as Exhibit A) setting a date for a Final Approval Hearing.

## IX.  MOTION FOR ENTRY OF FINAL JUDGMENT

35.     The Settlement is expressly conditioned upon, among other things, the entry of an Order and Final Judgment substantially in the form attached hereto as Exhibit B.  Plaintiffs, by and through Lead Counsel, shall move for entry of the Order and Final Judgment, including, among other things, the releases, Bar Order (as set forth in Paragraph 14 of the Order and Final Judgment), and judgment reduction provision as provided for therein.

## X.  WAIVER OR TERMINATION

36.     Simultaneously herewith, Plaintiffs, by and through Lead Counsel, and the Underwriter Defendants are executing a "Supplemental Agreement" setting forth certain conditions under which each Underwriter Defendant may terminate the Settlement as to itself, at its sole and absolute discretion, if potential Settlement Class Members who meet certain criteria exclude themselves from the Settlement Class.  The Supplemental Agreement shall not be filed with the Court unless and until a dispute among the parties to the Supplemental Agreement concerning its interpretation or application arises, in which event it shall be filed and maintained with the Court under seal.  For this limited purpose, the terms and conditions of the Supplemental Agreement may be disclosed to the Court and shall otherwise be kept confidential

and shall not be disclosed to any other Person, unless ordered by the Court or as otherwise required by law or regulation.

37.    Lead Plaintiff shall have the right to terminate the Settlement in its entirety and each of the Underwriter Defendants shall have the right to terminate the Settlement as to itself by providing written notice of its election to do so to the others within thirty (30) calendar days of the date on which:  (i) the Court declines to enter the Notice Order in any material respect; (ii) the Court refuses to grant final approval to the Settlement or any material part of it; (iii) the Court declines to enter the Order and Final Judgment in any material respect; (iv) the Order and Final Judgment is vacated, modified, or reversed in any material respect; (v) an Alternative Judgment is vacated, modified, or reversed in any material respect; or (vi) the Effective Date otherwise does not occur.  Each Underwriter Defendant may also terminate the Settlement as to itself pursuant to Paragraph 36 above.  Lead Plaintiff may also terminate the Settlement pursuant to Paragraph 39 below.  The foregoing list is not intended to limit or impair the Settling Parties' rights under the law of contracts of the State of New York with respect to this Stipulation.  In the event the Settlement is terminated, the provisions of Paragraphs 38 and 40–44 shall survive termination.

38.    If an Underwriter Defendant elects to terminate the Settlement as to itself pursuant to (i) the Supplemental Agreement, or (ii) Paragraph 37 above, this Stipulation shall become null and void and of no further force and effect as to, and only as to, that particular Underwriter Defendant (which shall be converted automatically from a Settling Underwriter Defendant to a Non-Settling Underwriter Defendant), and may not be introduced as evidence or referred to in any action or proceeding against the Non-Settling Underwriter Defendant by any Person, but the provisions of this Paragraph and Paragraphs 40–44 shall survive such

termination. For the avoidance of doubt, if any such partial termination occurs, the Settlement shall remain in full force and effect as to any Settling Underwriter Defendant that does not terminate the Settlement as to itself pursuant to the Supplemental Agreement or Paragraph 37 above.

39.     Lead Plaintiff shall also have the option and right in its sole, absolute, and unqualified discretion, to terminate the Settlement in the event that the Settling Underwriter Defendants do not pay the Underwriter Defendants Settlement Amount into the Underwriter Defendants Settlement Fund Escrow Account by the deadline contained in Paragraph 8 above. If Lead Plaintiff wishes to terminate the Settlement pursuant to this Paragraph it must provide written notice of its intent to terminate to all other Settling Parties within ten (10) calendar days after expiration of this deadline; if, thereafter, the Settling Underwriter Defendants fail to pay or cause to be paid any unpaid portion of the Underwriter Defendants Settlement Amount within fourteen (14) calendar days of the Settling Underwriter Defendants' receipt of such written notice, the Settlement shall be deemed terminated.

40.     Except as otherwise provided herein, in the event the Settlement is terminated in its entirety or if the Effective Date fails to occur for any reason, the Plaintiffs and the Underwriter Defendants shall be deemed to have reverted *nunc pro tunc* to their respective status in the Litigation as of November 18, 2014, and, except as otherwise expressly provided, Plaintiffs and the Underwriter Defendants shall proceed in all respects as if this Stipulation and any related orders had not been entered and without any prejudice in any way from the negotiation, fact, or terms of the Settlement.

41.     Except as otherwise provided herein, in the event the Settlement is partially terminated pursuant to Paragraphs 36 or 37 above, Plaintiffs and the Non-Settling Underwriter

Defendants shall be deemed to have reverted *nunc pro tunc* to their respective status in the Litigation as of November 18, 2014, and, except as otherwise expressly provided, Plaintiffs and the Non-Settling Underwriter Defendants shall proceed in all respects as if this Stipulation and any related orders had not been entered and without any prejudice in any way from the negotiation, fact, or terms of the Settlement.

42.     In the event that the Settlement is terminated, in whole or in part, pursuant to the terms of this Stipulation (including the Supplemental Agreement), all Notice and Administration Costs properly paid or incurred, including any related fees, shall not be returned or repaid to those Underwriter Defendants which caused any portion of the Underwriter Defendants Settlement Amount to be deposited into the Underwriter Defendants Settlement Fund Escrow Account.

43.     Except as otherwise provided herein, in the event the Settlement is terminated in its entirety or if the Effective Date fails to occur for any reason, the balance of the Underwriter Defendants Settlement Fund, less any Notice and Administration Costs paid or incurred and less any Taxes and Tax Expenses paid, incurred, or owing, shall be refunded to those Underwriter Defendants which caused any portion of the Underwriter Defendants Settlement Amount to be deposited into the Underwriter Defendants Settlement Fund Escrow Account, including interest accrued thereon, within ten (10) business days.

44.     Except as otherwise provided herein, in the event of a termination of the Settlement by fewer than all of the Underwriter Defendants, the Non-Settling Underwriter Defendants shall be refunded their confidentially allocated share of the Underwriter Defendants Settlement Amount, less any Notice and Administration Costs paid or incurred and less any Taxes and Tax Expenses paid, incurred, or owing, as divided pro rata amongst the Underwriter

Defendants, that such Non-Settling Underwriter Defendants caused to be deposited into the Underwriter Defendants Settlement Fund Escrow Account, including interest accrued thereon, within ten (10) business days.

## XI.  EFFECTIVE DATE OF SETTLEMENT

45.     The Effective Date of the Settlement shall be the latest date when all of the following shall have occurred:

(a)     the Settling Underwriter Defendants no longer have right under Paragraph 36 above to terminate the Settlement, or if the Settling Underwriter Defendants do have such right, they have given written notice to Lead Counsel that they will not exercise such right;

(b)     Lead Plaintiff no longer has any right under Paragraph 39 to terminate the Settlement, or if Lead Plaintiff does have such right, it has given written notice to the Underwriter Defendants' Counsel that they will not exercise such right;

(c)     entry of the Notice Order;

(d)     approval by the Court of the Settlement following notice to the Settlement Class and a hearing in accordance with Rule 23 of the Federal Rules of Civil Procedure;

(e)     entry of the Order and Final Judgment, substantially in the form annexed hereto as Exhibit B, or entry of any Alternative Judgment if, following entry of such Alternative Judgment, neither Lead Plaintiff nor the Settling Underwriter Defendants elect to terminate the Settlement; and

(f)     the Order and Final Judgment or any Alternative Judgment has become Final.

## XII.  NO ADMISSION OF WRONGDOING

46.     Except as provided in Paragraph 47 below, this Stipulation, whether or not consummated, and any negotiations, proceedings, or agreements relating to this Stipulation, the

42

Settlement, and any matters arising in connection with settlement negotiations, proceedings, or agreements, shall not be offered or received against any or all of the Underwriter Defendants or the Released Parties for any purpose, and in particular:

(a)     do not constitute, and shall not be offered or received against the Underwriter Defendants or the Released Underwriter Defendant Parties as evidence of, or construed as, or deemed to be evidence of any presumption, concession, or admission by the Underwriter Defendants or the Released Underwriter Defendant Parties with respect to the truth of any fact alleged by Plaintiffs or any other Settlement Class Member or the validity of any claim that has been or could have been asserted in the Litigation or in any litigation or other proceeding, including but not limited to the Released Claims, or of any liability, damages, negligence, fault, or wrongdoing of the Underwriter Defendants or the Released Underwriter Defendant Parties;

(b)     do not constitute, and shall not be offered or received against the Underwriter Defendants or the Released Underwriter Defendant Parties as evidence of a presumption, concession, or admission of any fault, misstatement, or omission with respect to any statement or written document approved or made by the Underwriter Defendants or the Released Underwriter Defendant Parties, or against the Underwriter Defendants, the Released Underwriter Defendant Parties, Plaintiffs, or any other member of the Settlement Class as evidence of any infirmity in the claims or defenses that have been or could have been asserted in the Litigation;

(c)     do not constitute, and shall not be offered or received against the Underwriter Defendant or the Released Parties, as evidence of a presumption, concession, or admission with respect to any liability, damages, negligence, fault, infirmity, or wrongdoing, or

in any way referred to for any other reason against any of the Underwriter Defendants or the Released Parties, in any other civil, criminal, or administrative action or proceeding, other than such proceedings as may be necessary to effectuate the provisions of this Stipulation;

(d)     do not constitute, and shall not be construed against the Underwriter Defendants or the Released Parties, as an admission or concession that the consideration to be given hereunder represents the amount which could be or would have been recovered after trial; and

(e)     do not constitute, and shall not be construed as or received in evidence as an admission, concession, or presumption against Plaintiffs or any other Settlement Class Member that any of their claims are without merit or infirm, that a class should not be certified, or that damages recoverable under the Third Amended Complaint would not have exceeded the Settlement Amount.

47.     The Released Parties may file or refer to this Stipulation, the Order and Final Judgment or any Alternative Judgment, and/or any Proof of Claim Form submitted by a Settlement Class Member to (i) effectuate the liability protection granted thereunder, including, without limitation, to support a defense or counterclaim based on principles of *res judicata*, collateral estoppel, release, good-faith settlement, judgment bar or reduction, or any theory of claim preclusion or issue preclusion or similar defense or counterclaim, or (ii) effectuate the liability protections granted them under any applicable insurance policies.  The Released Parties may file this Stipulation and/or the Order and Final Judgment or any Alternative Judgment in any action that may be brought to enforce the terms of this Stipulation and/or the Order and Final Judgment or any Alternative Judgment.  All Released Parties submit to the jurisdiction of the Court for purpose of implementing and enforcing the Settlement.

## XIII.  MISCELLANEOUS PROVISIONS

48.     The Settling Parties agree that no Settling Party was or is a "prevailing party" in the Litigation.

49.     All of the exhibits attached to this Stipulation, except any Plan of Allocation, to the extent incorporated in those exhibits, are material and integral parts hereof and are fully incorporated by reference as though fully set forth herein.  Notwithstanding the foregoing, in the event that there exists a conflict or inconsistency between the terms of this Stipulation and the terms of any exhibit attached hereto, the terms of this Stipulation shall prevail.

50.     This Stipulation may not be modified or amended, nor may any of its provisions be waived, except by a writing signed by all of the Settling Parties (or their successors-in-interest).

51.     The headings herein are used for the purpose of convenience only and are not meant to have legal effect.

52.     The Settling Underwriter Defendants shall be responsible for service of any notice for which they might be responsible pursuant to the Class Action Fairness Act, 28 U.S.C. § 1715.

53.     Each of the Settling Underwriter Defendants warrants that, as to the payments made or to be made by or on behalf of it at the time of entering into this Stipulation and at the time of such payment that it made or caused or will make or cause to be made pursuant to the terms above, it was not insolvent, nor will the payment required to be made by or on behalf of it render it insolvent, within the meaning of and/or for the purposes of the United States Bankruptcy Code, including but not limited to Sections 101 and 547 thereof.  This representation is made by each of the Settling Underwriter Defendants and not by their counsel.

54.     Neither this Stipulation, the Settlement, nor any act performed or document executed pursuant to or in furtherance of this Stipulation or the Settlement:  (i) is or may be

deemed to be or may be used as an admission or evidence of the validity of any Released Claim or of any wrongdoing or liability of any of the Underwriter Defendants or the Released Underwriter Defendant Parties; (ii) is or may be deemed to be or may be used as an admission or evidence of any fault or omission of any of the Underwriter Defendants or the Released Underwriter Defendant Parties in any civil, criminal, or administrative proceeding in any court, any arbitration proceeding or any administrative agency or other tribunal, other than in such proceedings as may be necessary to consummate or enforce this Stipulation, the Settlement, or the Order and Final Judgment or any Alternative Judgment; or (iii) shall be deemed to release any claims for contribution or indemnity (whether contractual or otherwise), however denominated, arising out of, based upon, or related to the claims and allegations asserted in the Litigation that the Underwriter Defendants or the Released Underwriter Defendant Parties may have against the ResCap Defendants or Ally Securities.

55.     The Settling Parties agree that the terms of the Settlement were negotiated at arm's length in good faith by the Settling Parties, and reflect a settlement that was reached voluntarily based upon adequate information and after consultation with experienced legal counsel.  Moreover, the Settlement is intended to be a final and complete resolution of the Settling Parties' disputes in the Litigation.  Accordingly, the Settling Parties agree not to assert any claim under Rule 11 of the Federal Rules of Civil Procedure or any similar law, rule, or regulation, that the Litigation was brought or defended in bad faith or without a reasonable basis.

56.     The waiver by one Settling Party of any breach of this Stipulation by any other Settling Party shall not be deemed a waiver of any other prior or subsequent breach of this Stipulation.

57.     The administration and consummation of the Settlement as embodied in this Stipulation shall be under the authority of the Court, and the Court shall retain jurisdiction for the purpose of entering orders providing for awards of attorneys' fees and Litigation Expenses to Lead Counsel and enforcing the terms of this Stipulation.

58.     This Stipulation and its exhibits and the Supplemental Agreement constitute the entire agreement among the Settling Parties, and no representations, warranties, or inducements have been made to any Settling Party concerning this Stipulation or its exhibits and the Supplemental Agreement, other than the representations, warranties, and covenants contained and memorialized in such documents.

59.     This Stipulation may be executed in one or more counterparts, including by signature transmitted via facsimile, or by a .pdf/.tif image of the signature transmitted via e-mail. All executed counterparts and each of them shall be deemed to be one and the same instrument.

60.     The Settling Parties and their respective counsel of record agree that they will use their best efforts to obtain all necessary approvals of the Court required by this Stipulation.

61.     Each counsel signing this Stipulation represents that such counsel has authority to sign this Stipulation on behalf of Plaintiffs or the Underwriter Defendants, as the case may be, and that they have the authority to take appropriate action required or permitted to be taken pursuant to this Stipulation to effectuate its terms.

62.     This Stipulation shall be binding upon, and inure to the benefit of, the successors and assigns of the parties hereto, including any and all Released Parties and any corporation, partnership, or other entity into or with which any Settling Party may merge, consolidate, or reorganize.

63.     Notices required by this Stipulation shall be submitted, unless otherwise provided, either by any form of overnight mail, e-mail, facsimile, or in person to each of the signatories below.

64.     The administration, consummation, and enforcement of the Settlement as embodied in this Stipulation shall be under the authority of the Court, and the Settling Parties intend that the Court retain jurisdiction for the purpose of, *inter alia*, entering orders, providing for awards of attorneys' fees and reimbursement of Litigation Expenses, and enforcing the terms of this Stipulation and the Settlement.

65.     The construction, interpretation, operation, effect, and validity of this Stipulation and all documents necessary to effectuate it shall be governed by the internal laws of the State of New York without regard to conflicts of laws, except to the extent that federal law requires that federal law govern.

66.     This Stipulation shall not be construed more strictly against one Settling Party than another merely by virtue of the fact that it, or any part of it, may have been prepared by counsel for one of the Settling Parties, it being recognized that it is the result of arm's-length negotiations between the Settling Parties and all Settling Parties have contributed substantially and materially to the preparation of this Stipulation.  If there is any conflict between the Settling Parties concerning this Stipulation, the Settling Parties agree that, in the first instance, they will engage in non-binding consultation with the mediator, the Honorable Daniel Weinstein (Ret.).

DATED:   New York, New York
         February 11, 2015

**COHEN MILSTEIN SELLERS
& TOLL PLLC**

By: _____
    Joel P. Laitman
    Christopher Lometti
    Michael Eisenkraft
    Richard Speirs
    Daniel B. Rehns
    Kenneth M. Rehns

    88 Pine Street, 14th Fl.
    New York, New York 10005
    Telephone:  (212) 838-7797
    Facsimile:  (212) 838-7745
    jlaitman@cohenmilstein.com

    Steven J. Toll
    Joshua S. Devore
    S. Douglas Bunch

    1100 New York Avenue, N.W.
    Suite 500 West
    Washington, D.C.  20005
    Telephone:  (202) 408-4600
    Facsimile:   (202) 838-4699
    stoll@cohenmilstein.com

*Counsel for New Jersey Carpenters Health Fund,
New Jersey Carpenters Vacation Funds,
Boilermaker Blacksmith National Pension Trust,
Iowa Public Employees' Retirement System,
Orange County Employees Retirement System,
Midwest Operating Engineers Pension Trust
Fund, and the proposed Settlement Class*

**ZWERLING, SCHACHTER**
**& ZWERLING, LLP**

By: *Robin F. Zwerling*

Robin F. Zwerling
Jeffrey C. Zwerling

41 Madison Avenue
New York, New York 10010
Telephone:  (212) 223-3900
Facsimile:  (212) 371-5969
rzwerling@zsz.com

*Counsel for Police and Fire Retirement System of*
*the City of Detroit*

**FRIED, FRANK, HARRIS, SHRIVER**
**& JACOBSON LLP**

By: _____

William G. McGuinness
Israel David
Alfred L. Fatale III

One New York Plaza
New York, New York 10004
Telephone:  (212) 859-8000
Facsimile:  (212) 859-4000
william.mcguinness@friedfrank.com

**PAUL, WEISS, RIFKIND, WHARTON**
**& GARRISON LLP**

Brad S. Karp
Daniel J. Kramer
Richard A. Rosen

1285 Avenue of the Americas
New York, New York 10019
Telephone:  (212) 373-3000
Facsimile:  (212) 373-3990
bkarp@paulweiss.com

*Counsel for the Citigroup Global Markets Inc.,*
*Goldman, Sachs & Co., and UBS Securities LLC*

50

9695878.21

**ZWERLING, SCHACHTER
& ZWERLING, LLP**

By: _____

   Robin F. Zwerling
   Jeffrey C. Zwerling

   41 Madison Avenue
   New York, New York 10010
   Telephone:  (212) 223-3900
   Facsimile:  (212) 371-5969
   rzwerling@zsz.com

*Counsel for Police and Fire Retirement System of
the City of Detroit*

**FRIED, FRANK, HARRIS, SHRIVER
& JACOBSON LLP**

By: *William McGuinness*

   William G. McGuinness
   Israel David
   Alfred L. Fatale III

   One New York Plaza
   New York, New York 10004
   Telephone:  (212) 859-8000
   Facsimile:  (212) 859-4000
   william.mcguinness@friedfrank.com

**PAUL, WEISS, RIFKIND, WHARTON
& GARRISON LLP**

   Brad S. Karp
   Daniel J. Kramer
   Richard A. Rosen

   1285 Avenue of the Americas
   New York, New York 10019
   Telephone:  (212) 373-3000
   Facsimile:  (212) 373-3990
   bkarp@paulweiss.com

*Counsel for the Citigroup Global Markets Inc.,
Goldman, Sachs & Co., and UBS Securities LLC*

50